UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

UNITED STATES OF AMERICA     :

      v.                   :         06-cr-089 (RWR)

NIZAR TRABELSI             :

MOTION TO MODIFY CONDITIONS OF PRETRIAL DETENTION

     Mr. Nizar Trabelsi, the defendant, through undersigned counsel, respectfully moves this Honorable Court to order the United States Marshals Service to lift restrictions imposed as conditions of pretrial detention, including solitary confinement ("total lockdown") with no mail, telephone or visitation privileges, and the requirement that Mr. Trabelsi's hands remain shackled behind his back during legal visits.  In support of this motion, counsel submits the following.

Factual Background

     On November 16, 2007, a grand jury returned a four count superseding indictment charging Mr. Trabelsi with conspiracy to kill United States nationals outside of the United States, in violation of 18 U.S.C. §§ 2332(b)(2) and 1111(a); conspiracy and attempt to use weapons of mass destruction, in violation of 18 U.S.C. §§ 2332a and 2; conspiracy to provide material support and resources to a foreign terrorist organization, in violation of 18 U.S.C. § 2339B; and providing material support and resources to a foreign terrorist organization, in violation of 18 U.S.C. §§ 2339B and 2.  The charges stem from events that allegedly occurred between mid-2000 and June 2002.  On September 13, 2001, Mr. Trabelsi was arrested and detained in Belgium.  He subsequently was convicted of charges there and served a ten year sentence.

Following the completion of his sentence in Belgium, he was detained pending extradition proceedings in relation to this case.  On October 3, 2013, the government of Belgium extradited Mr. Trabelsi to the United States, and Mr. Trabelsi was brought before Magistrate Judge Deborah A. Robinson for an initial appearance in this matter.

Since that date, Mr. Trabelsi has been held without bond.  Although neither Magistrate Judge Robinson, nor this Court has issued any special conditions of confinement and no Special Administrative Measures ("SAMs") pursuant to 28 C.F.R. § 501.3 has been issued, the Marshals have instructed the officials at the Rappahannock Regional jail, where Mr. Trabelsi is detained, to hold him on "total lock down."  Specifically, he is held in solitary confinement with no mail, telephone or visitation privileges.  He is permitted visitation with counsel, but during legal visits he is required to have his hands shackled behind his back.  He is confined to his cell 24 hours a day, with the exception of one hour each week day when he will be taken to an enclosed "recreation" area, the top of which is covered by wire mesh.   He has not yet been permitted this "recreation" time, but has been informed that he will be taken to that area one hour each weekday beginning October 14, 2013.  For the first eight days of his confinement, the lights in his cell remained on 24 hours a day.[1]  On the night of October 10, 2013, the lights were dimmed for several hours for the first time.  However, in the solitary confinement area of the Rappahannock jail, approximately every 30 minutes, Mr. Trabelsi hears a door slammed opened and slammed closed.  Because of these conditions, he has had little to no sleep.  These conditions are affecting him

---

[1] Following the hearing before the Court on October 10, 2013, a representative of the United States Marshals Service confirmed that the lights had not been dimmed at night, as was previously represented to undersigned counsel by an official at the Rappahannock facility.

Following the completion of his sentence in Belgium, he was detained pending extradition proceedings in relation to this case.  On October 3, 2013, the government of Belgium extradited Mr. Trabelsi to the United States, and Mr. Trabelsi was brought before Magistrate Judge Deborah A. Robinson for an initial appearance in this matter.

Since that date, Mr. Trabelsi has been held without bond.  Although neither Magistrate Judge Robinson, nor this Court has issued any special conditions of confinement and no Special Administrative Measures ("SAMs") pursuant to 28 C.F.R. § 501.3 has been issued, the Marshals have instructed the officials at the Rappahannock Regional jail, where Mr. Trabelsi is detained, to hold him on "total lock down."  Specifically, he is held in solitary confinement with no mail, telephone or visitation privileges.  He is permitted visitation with counsel, but during legal visits he is required to have his hands shackled behind his back.  He is confined to his cell 24 hours a day, with the exception of one hour each week day when he will be taken to an enclosed "recreation" area, the top of which is covered by wire mesh.   He has not yet been permitted this "recreation" time, but has been informed that he will be taken to that area one hour each weekday beginning October 14, 2013.  For the first eight days of his confinement, the lights in his cell remained on 24 hours a day.[1]  On the night of October 10, 2013, the lights were dimmed for several hours for the first time.  However, in the solitary confinement area of the Rappahannock jail, approximately every 30 minutes, Mr. Trabelsi hears a door slammed opened and slammed closed.  Because of these conditions, he has had little to no sleep.  These conditions are affecting him

---

[1] Following the hearing before the Court on October 10, 2013, a representative of the United States Marshals Service confirmed that the lights had not been dimmed at night, as was previously represented to undersigned counsel by an official at the Rappahannock facility.

psychologically, and counsel is concerned that the conditions will interfere with his ability to consult with counsel.

## Argument

The United States Marshals Services unilaterally has determined that Mr. Trabelsi's pretrial detention shall be in solitary confinement, incommunicado, with access only to counsel.  The Marshals Service lacks the authority to impose such restrictions.  These restrictions constitute unlawful punishment and violate Mr. Trabelsi's constitutional right to due process, interfere with his right to consult with counsel, and deprive him of his First Amendment rights.  *See Bell v. Wolfish*, 441 U.S. 520 (1979) (pretrial detainees may be subjected "to the restrictions and conditions of the detention facility so long as those conditions and restrictions do not amount to punishment, or otherwise violate the Constitution").

The Bail Act authorizes the Court to hold Mr. Trabelsi without bond and impose conditions necessary to assure the safety of the community.  *See* 18 U.S.C. § 3142.  In seeking his pretrial detention, the government sought no special conditions of detention, and the Court imposed none.  *See* Government's Memorandum and Proffer in Support of Detention [Dkt. #15].

Apart from the Bail Act, the only possible authority to impose restrictive measures on an individual prisoner is set forth in 28 U.S.C. § 501.3.  *See United States v. Richard Reid*, 369 F.3d 619, 620-21 (5th Cir. 2004).  These provisions authorize the issuance of Special Administrative Measures (SAMs) that are "reasonably necessary to protect persons against the risk of death or serious bodily injury." 28 U.S.C. § 501.3(a).  In order to do so, the Attorney General or the head of a federal law enforcement agency or

intelligence agency must certify "that there is a substantial risk that a prisoner's communications or contacts with persons could result in death or serious bodily injury to persons, or substantial damage to property that would entail the risk of death or serious bodily injury to persons." *Id.* Officials may place an inmate in administrative detention and limit privileges only "as is reasonably necessary to protect persons against the risk of acts of violence or terrorism." *Id.* If a SAMs is issued, the inmate must receive written notification. *Id.* at § 501.3(b). No SAMs has been issued with regard to Mr. Trabelsi, and there is no basis for such measures.

Even if the Marshals Service could impose restrictions without an order from the Court or a SAMs, there is no factual basis for the restrictions imposed on Mr. Trabelsi. In support of the imposition of "total lockdown," in conversations with undersigned counsel, representatives of the Marshals Service have cited the nature of the charges against Mr. Trabelsi and internet reports that in 2007 a group of individuals were arrested for plotting to help Mr. Trabelsi escape. However, the government has investigated Mr. Trabelsi for more than twelve years, first indicted him more than seven years ago, and was aware of his pending extradition long before he arrived in the United States, but the Attorney General has not issued a SAMs or requested any special conditions of confinement. Moreover, neither Mr. Trabelsi nor anyone else was convicted of any charges in relation to allegations that there was an escape plan -- according to the news reports, the individuals who were arrested were released the following day. These unsubstantiated allegations do not support the restrictions imposed by the Marshals. In fact, while held in Belgium, Mr. Trabelsi had mail, telephone and visitation privileges and had contact with other prisoners. Counsel is

4

aware of no allegations that Mr. Trabelsi's communications or contacts with other prisoners over the course of his more than twelve years of confinement in Belgium placed anyone at risk of harm.

## Conclusion

For the foregoing reasons, Mr .Trabelsi respectfully requests that the Court grant this motion and compel the Marshal Service to (1) lift the requirement that he be on "total lockdown";  (2) permit him to have the same mail, telephone and visitation privileges as other pretrial detainees; and (3) lift the requirement that his hands remain shackled behind his back during legal visits.

Respectfully submitted,
A.J. KRAMER
FEDERAL PUBLIC DEFENDER

_____
MARY MANNING PETRAS
Assistant Federal Public Defender
625 Indiana Avenue, N.W.
Suite 550
Washington, D.C. 2000
(202) 208-7500