UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | ) | **Criminal No.: 06-089 (RWR)** |
| | ) | |
| **v.** | ) | |
| | ) | |
| **NIZAR TRABELSI,** | ) | |
| **also known as Nizar ben Abdelaziz Trabelsi,** | ) | |
| **also known as "Abu Qâ'Qâ,"** | ) | |
| | ) | |
| **Defendant.** | ) | |

**GOVERNMENT'S MEMORANDUM REGARDING CONDITIONS OF CONFINEMENT**

On October 10, 2013, the Court ordered the parties to submit briefing concerning legal questions that the Court had raised in open court at the status hearing held that day about the defendant's conditions of confinement.   Specially, the Court ordered briefing on the legal authority to place the defendant in administrative segregation and to restrict his outside contact via telephone, mail, and jail visitation.   The United States respectfully files this memorandum in response to the Court's order.

A.      **BACKGROUND**

On April 7, 2006, a federal grand jury in this district returned an indictment, charging the defendant, Nizar Trabelsi, also known as Nizar ben Abdelaziz Trabelsi, also known as "Abu Qâ'Qâ," with Conspiracy to Kill United States Nationals Outside of the United States, in violation of 18 U.S.C. §§ 2332(b)(2) and 1111(a) (Count One); Conspiracy and Attempt to Use Weapons of Mass Destruction, in violation of 18 U.S.C. §§ 2332a and 2 (Count Two); Conspiracy to Provide Material Support and Resources to a Foreign Terrorist Organization, in violation of 18 U.S.C. § 2339B (Count Three), and Providing Material Support and Resources to a Foreign Terrorist Organization, in violation of 18 U.S.C. §§ 2339B and 2 (Count Four).   On November 16, 2007, a

federal grand jury in this district returned a superseding indictment, charging the same offenses. All of the counts in the superseding indictment are listed as Federal crimes of terrorism in 18 U.S.C. § 2332b(g)(5)(B).   Counts One and Two carry a maximum penalty of life imprisonment.

On October 3, 2013, the defendant was extradited to the United States from Belgium.   The defendant had his initial appearance in this Court that same day, before Magistrate Judge Deborah A. Robinson.   The United States orally moved for the defendant's pretrial detention under the Bail Reform Act, 18 U.S.C. § 3141, et seq., advising the Court that this case involves:   (1) crimes of violence and offenses listed in 18 U.S.C. § 2332b(g)(5)(B) (see 18 U.S.C. § 3142(f)(1)(A)); (2) offenses for which the maximum sentence is life imprisonment (see 18 U.S.C. § 3142(f)(1)(B)); and (3) a serious risk that the defendant will flee (see 18 U.S.C. § 3142(f)(2)(A)).   Defense counsel requested that the Court schedule a detention hearing.   The Court set the hearing for October 8, 2013.   Pending the detention hearing, the Court ordered the defendant remanded to the custody of the United States Marshal Service ("USMS").

On October 6, 2013, the United States filed a memorandum and proffer in support of pretrial detention [ECF Docket No. 15].   Additionally, at the status hearing on October 7, 2013, the United States orally proffered that, according to open source reporting, in late 2007 Belgian security services broke up a suspected plot by extremists to free the defendant from prison in Belgium.   At the October 7th status hearing, the defendant orally waived his right to a detention hearing and written factual findings in support of detention and consented to his pretrial detention, which this Court ordered.   Since his initial appearance before the Court on October 3, 2013, the defendant has been in the custody of the USMS and housed in the Rappahannock Regional Jail, a Commonwealth of Virginia detention facility in Stafford, Virginia ("Rappahannock Jail").

On October 10, 2013, the defendant orally moved for a court order, directing the United States to implement special administrative measures ("SAMs"), pursuant to 28 C.F.R. § 501.3.

The defendant contended that the United States lacks legal authority to place the defendant in administrative segregation and to restrict his outside contact via telephone, mail, and jail visitation in the absence of SAMs.   The Court denied the defendant's motion.   The Court directed the parties to provide simultaneous briefing on the government's legal authority to place the defendant in administrative segregation and restrict his outside contact in the absence of SAMs.

## B.   **APPLICABLE LAW**

### (1)   **Authority of the USMS to Place Defendant in Virginia Facility**

Preliminarily, the USMS is "within the Executive Branch of the Federal Government, . . . subject to the supervision and direction of the Attorney General . . . and funded through Department of Justice appropriations."   Pennsylvania Bureau of Correction v. United States Marshals Serv., 474 U.S. 34, 36 n. 1 (1985).   As part of the Executive Branch, federal courts may direct the actions of the USMS only when pursuant to express statutory authority.   Id. at 38-43.

The USMS is vested by statute and regulation with a variety of responsibilities, including the "safe-keeping" of federal prisoners who are detained pretrial.   Title 18, United States Code, Section 4086 provides that:   "United States marshals provide for the safe-keeping of any person arrested, or held under authority of any enactment of Congress pending commitment to an institution."   18 U.S.C. § 4086.   Section 4086 does not specify "the method for such safekeeping," Bethae v. United States, 465 F. Supp. 2d 575, 582 (D.S.C. 2006), nor do the applicable federal regulations.   See 28 C.F.R. § 0.111.   See also Menolascina v. United States, No. 12 C 90, 2013 WL 707920, *2 (N.D. Ill. Feb. 26, 2013) ("These directives [to the USMS] afford the marshals significant discretion to determine how to keep and transport prisoners[.]").

The decision of where to house a federal prisoner is within the discretion of the USMS. Saunders v. United States, 502 F. Supp. 2d 493, 496 (E.D. Va. 2007); Bethae, 465 F. Supp. 2d at 583.   Indeed, under 18 U.S.C. §§ 4002 and 4013, the USMS has discretion to contract with state

and local correctional facilities to house federal prisoners.   See, e.g., Cooper v. United States

Marshals Service, No. 3:09-cv-18, 2010 WL 925794 (E.D. Tenn. March 9, 2010) (describing

contractual arrangement between USMS and Knox County Sheriff's Department); Saunders, 502

F. Supp. 2d at 494-95 (same: Western Tidewater Regional Jail in Virginia).

In this instance, the USMS exercised its discretion to house the defendant pending trial in

the Rappahannock Jail, pursuant to a pre-existing contractual arrangement between the USMS and

that facility.   Based on the foregoing, there can be no dispute that the USMS had, and continues to

have, the legal authority to exercise its discretion in this manner.

### (2)       Authority of Virginia Facility to Establish Conditions of Confinement

As a Commonwealth of Virginia detention facility, the Rappahannock Jail must adhere to

certain minimum standards in accordance with Virginia state law and regulations.   Chapter 40,

Title 6, of the Virginia Administrative Code, sets forth numerous provisions regarding the

minimum standards for Virginia jails, such as the Rappahannock Jail.   The specific Virginia

regulations pertinent to the Court's inquiry are set forth below.

With respect to administrative segregation, Virginia regulations provide that:   "Written

policy, procedure, and practice shall provide for administrative segregation of inmates who pose a

security threat to the facility or other inmates and for inmates requiring protective custody."   6

VA Admin. Code § 15-40-990.   "Administrative segregation" is defined under Virginia law as "a

form of separation from the general population when the continued presence of the inmate in the

general population would pose a serious threat to life, property, self, staff or other inmates, or to

the security or orderly running of the facility.   Inmates pending investigation for trial on a

criminal act or pending transfer can also be included."   Id., § 15-40-10.   Inmates who remain in

administrative segregation for 15 days must undergo a documented assessment by medical

personnel every 15 days.   Id., § 15-40-1030.

4

With respect to restrictions on telephone usage, Virginia regulations provide that: "Written policy, procedure, and practice shall ensure inmates have reasonable access to telephone facilities, except where safety and security considerations are documented." 6 VA Admin. Code § 15-40-660.

With respect to restrictions on access to mail, Virginia regulations provide that: "All general correspondence may be opened, examined, and censored by authorized personnel as per the USPS Administrative Support Manual, Section 274.96." 6 VA Admin. Code § 15-40-640. Virginia regulations also provide for the seizure of mail contraband. Id., § 15-40-650.

With respect to restrictions on jail visitations, Virginia regulations provide that: "Written policy, procedure, and practice shall ensure maximum visiting opportunities limited only by facility schedules, space, personnel constraints and inmate disciplinary status. Attorneys shall be permitted to have confidential visits with their clients." 6 VA Admin. Code § 15-40-680.

Thus, in the absence of SAMs and pursuant to Virginia law, the Rappahannock Jail has the legal authority to place the defendant in administrative segregation and restrict his outside contact via telephone, mail, and jail visitation.

Although not directly responsive to the Court's inquiry, the United States notes that Virginia law concerning these types of conditions of confinement are comparable to federal regulations governing inmates in the custody of the Bureau of Prisons. For example, federal regulations provide that the Bureau of Prisons may place an inmate in administrative detention, removed from the general prison population, "when necessary to ensure the safety, security, and orderly operation of correctional facilities, or protect the public." 28 C.F.R. § 541.22(a). Federal regulations also provide for restrictions on an inmate's outside contact via telephone, mail, and visitation. Id., § 540.2, et seq.

Finally, conditions of confinement that are reasonably related to a detention facility's legitimate objectives of maintaining safety and security do not amount to unconstitutional punishment.   <u>See</u>, <u>e.g.</u>, <u>Orth v. Balaam</u>, No. 11-16182, 2013 WL 2940373, *2 (9th Cir. June 17, 2013) (quoting <u>Bell v. Wolfish</u>, 441 U.S. 520, 540 (1979) ("[r]estraints that are reasonably related to the institution's interest in maintaining jail security do not, without more, constitute unconstitutional punishment, even if they are discomforting.")).

Respectfully submitted,

RONALD C. MACHEN JR.
UNITED STATES ATTORNEY


By:
/s/_____
JONATHAN M. MALIS
Assistant United States Attorney
D.C. Bar Number 454-547
United States Attorney's Office
555 4th Street, N.W.
Washington, D.C. 20530
Phone: (202) 252-7806
Jonathan.M.Malis@usdoj.gov



/s/_____
OPHER SHWEIKI
Assistant United States Attorney
D.C. Bar Number 458-776
United States Attorney's Office
555 4th Street, N.W.
Washington, D.C. 20530
Phone: (202) 252-1751
Opher.Shweiki@usdoj.gov



/s/_____
MARA KOHN
Trial Attorney
South Dakota Bar Number 2281

United States Department of Justice
950 Pennsylvania Avenue, N.W.
Washington, D.C. 20530
Phone: (202) 532-4592
Mara.Kohn2@usdoj.gov


## CERTIFICATE OF SERVICE

A copy of the foregoing was served via the Court's Electronic Case Filing system on counsel for the defendant on this 14th day of October, 2013.

/s/_____
JONATHAN M. MALIS
Assistant United States Attorney