UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

UNITED STATES OF AMERICA         :

v.                               :        06-CR-089 (RWR)

NIZAR TRABELSI                   :

**DEFENDANT'S RESPONSE TO OCTOBER 16, 2013 MINUTE ORDER**

On October 16, 2013, the Court issued a minute order directing the parties to file supplemental memoranda addressing why each of the contested conditions of detention (solitary confinement, no mail privileges, no telephone privileges, no visitation privileges and the requirement that his hands remained shackled behind his back during legal visits)[1] is or is not

---

[1] At the status hearings held in this matter on October 10 and 18, 2013, counsel also raised concerns regarding other restrictions placed on Mr. Trabelsi, including the lights in his cell remaining on twenty-four hours a day, no or limited access to an outside area, and the failure to provide a Koran written in a language Mr. Trabelsi could read. On several occasions, counsel has spoken to the Deputy Superintendent at the Rappahannock Region Jail where Mr. Trabelsi is being held in order to resolve these issues which are not restrictions imposed by the U.S. Marshal Service and, according to the Deputy Superintendent, Phil Grimes, are not consistent with the policies at the Rappahannock facility. Counsel initially thought the matters were resolved after speaking with the Mr. Grimes, but later learned they were not resolved. Specifically, the U.S. Marshals confirmed with an official at Rappahannock that the lights had not been dimmed. Counsel also learned that Mr. Trabelsi was not permitted an hour outside of his cell each day in the available recreation area, and he had not been given an appropriate Koran. Counsel, along with government counsel, spoke with Mr. Grimes following the October 18th hearing. Mr. Grimes then checked on the issues raised (the lights, the outside recreation area, and the Koran) and later called counsel indicating: (1) he was told that the lights were being dimmed nightly and assured counsel that the lights would continue to be dimmed nightly; (2) there had been some confusion with his staff, but the recreation area now would be made available to Mr. Trabelsi seven (not five) days a week and one of six available areas (either a 10' by 5'2" area or a 9' by 5' area) would be used; and (3) a Koran in the appropriate dialect has been ordered for Mr. Trabelsi. While counsel has no means of communicating with Mr. Trabelsi prior to the next scheduled hearing (October 24, 2013), counsel is hopeful that these matters now, in fact, have been resolved and is not requesting that the Court intervene on these issues at this time.

reasonably related to a legitimate governmental objective. In response, counsel submits the following.

Mr. Trabelsi is held without bond in pretrial detention. He has not been convicted of the charged offenses and retains his constitutional rights. In fact, even convicted prisoners do not forfeit all of their constitutional rights. *See Turner v. Safley*, 482 U.S. 78, 84 (1987) ("Prison walls do not form a barrier separating prison inmates from the protections of the Constitution."); *Wolff v. McDonnell*, 418 U.S. 539, 555-56 (1974) ("There is no iron curtain drawn between the Constitution and the prisons of this country."). A pretrial detainee may be subject "to the restrictions and conditions of the detention facility so long as those conditions and restrictions do not amount to punishment, or otherwise violate the Constitution." *Bell v. Wolfish*, 441 U.S. 520 (1979). *Bell* addressed categorical restrictions on *all* pretrial detainees in a particular facility and addressed only restrictions that did not interfere with constitutional rights other than the right to due process. *Bell*, 441 U.S. at 535 ("In evaluating the constitutionality of conditions or restrictions of pretrial detention that implicate only the protection against deprivation of liberty without due process of law, we think that the proper inquiry is whether those conditions amount to punishment of the detainee."). The restrictions at issue here are not "the restrictions and conditions of the detention facility." The Rappahannock officials usually impose administrative segregation only as punishment for violations of the facility rules and only when established procedures are followed to impose these restrictions. Here, the restrictions were imposed unilaterally by the U.S. Marshals Service (hereinafter "USMS"). As set forth in Mr. Trabelsi's Motion to Modify Conditions of Pretrial Detention, absent a court order or Special Administrative Measures, the USMS lacks authority to impose *individual* restrictions. The

government has cited no authority for the imposition of individual restrictions without due process. Even if the USMS could unilaterally impose such restrictions, here the restrictions amount to punishment and violate Mr. Trabelsi's constitutional rights.

While noting the difficulty in reducing the distinction between punishment and regulatory restraint into a paragraph, the Supreme Court has stated:

> "Whether the sanction involves an affirmative disability or restraint, whether it has historically been regarded as a punishment, whether it comes into play only on a finding of scienter, whether its operation will promote the traditional aims of punishment- retribution and deterrence, whether the behavior to which it applies is already a crime, whether an alternative purpose to which it may rationally be connected is assignable for it, and whether it appears excessive in relation to the alternative purpose assigned are all relevant to the inquiry and may often point in differing directions."

*Bell*, 441 U.S. at 537-38 (citing *Kennedy v. Mendoza-Martinez*, 372 U.S. 144, 168-69 (1963)). The Court noted that "[a]bsent a showing of an expressed intent to punish on the part of detention facility officials," the determination of whether a particular restriction constitutes punishment "generally will turn on 'whether an alternative purpose to which [the restriction] may rationally be connected is assignable for it, and whether it appears excessive in relation to the alternative purpose assigned [to it]." *Id*. at 538 (citations omitted). "[I]f a restriction or condition is not reasonably related to a legitimate goal -- if it is arbitrary or purposeless -- a court permissibly may infer that the purpose of the governmental action is punishment that may not constitutionally be inflicted . . . ." *Id*. at 539.

Here, the government has suggested that the "alternative purpose" is security. Under the circumstances of this case, the restrictions imposed are an exaggerated, "excessive," response to these concerns. The USMS has ordered that Mr. Trabelsi be held on "total lockdown" with no

3

access to mail, telephone, or visitation. This is not a measured response to safety concerns, but an exaggerated reaction to the charged offenses and unsubstantiated internet reports. Government counsel in this matter has made no attempt to argue that these extreme measures are necessary, but rather defers to the decision by the USMS to impose these restrictions. In conversations with undersigned counsel, the representatives of the Marshals Service have indicated that the measures were imposed based on the charges against Mr. Trabelsi and internet reports that in 2007 a group of individuals were arrested for plotting to free Mr. Trabelsi from a prison in Belgium. The charges are alleged to have occurred more than twelve years ago, and although they are very serious, there are numerous prisoners held in the United States and in the Rappahannock facility where Mr. Trabelsi is detained, who are charged with equally serious or even more serious offenses -- for example, individuals accused of committing murders. These prisoners are routinely held securely without being held in solitary confinement, and without losing mail, telephone or visitation privileges. With regard to the alleged escape plot noted by the USMS, the internet reports upon which the USMS is relying do not allege that Mr. Trabelsi had anything to do with any alleged plot, and the reports indicate only that a number of individuals were arrested and then released the following day. There are no statements in the report that claim there exists any actual evidence of any such plot and no one was ever so much as charged with such a plot.[2]

---

[2] The government has cited *Peoples v. CCA Detention Centers*, 422 F.3d 1090, 1006 (10th Cir. 2005), for the proposition that a "[p]retrial detainee's escape threat was [a] legitimate, non-punitive reason for administrative segregation." Government's Opposition to Defendant's Motion to Modify Conditions of Pre-Trial Detention [Dkt. #21] at 3. However, the court in *Peoples* was referring to the defendant's own plot to escape and held that a "*substantiated* escape threat," *id.* (emphasis added), was a legitimate reason. Here, there is no substantiated threat, only an unsubstantiated allegation that did not even allege Mr. Trabelsi was involved in a plot.

The fact that the ban on communications is a total ban with only an exception for legal visits further demonstrates that these conditions are an exaggerated response to any potential security concern.  By comparison, in cases in which the government has determined that security concerns were so severe as to require the issuance of Special Administrative Measures (SAMs) pursuant to 28 C.F. R. § 501.3(a), the Attorney General has restricted prisoners' communications, but not put a total ban on communication.  *See, e.g., United States v. Moussaoui*, 591 F.3d 263 (4th Cir. 2010) (SAMs permitted unmonitored consular communications and mail, monitored visits and telephone calls with immediate family and monitored mail with others).

There is indisputable evidence that the restrictions imposed by the USMS are extreme and excessive:  Mr. Trabelsi was securely held for twelve years in Belgium without such extreme measures.  Undersigned counsel has spoken with one of the lawyers who represented Mr. Trabelsi in Belgium.  This lawyer confirmed that over the course of the twelve years that he was incarcerated in Belgium, there were times during which Mr. Trabelsi was held in what was essentially solitary confinement, but not always and not most recently.  The lawyer also confirmed that Mr. Trabelsi had mail, telephone and visitation privileges throughout the twelve years he was incarcerated.  He was held in a number of different prisons in Belgium.  In some facilities, non-legal visits were held in a room with a glass partition between Mr. Trabelsi and the visitor, but legal visits have always been in an open room.  Mr. Trabelsi was not required to remain shackled during legal visits.  Most recently, Mr. Trabelsi's non-legal visits also were contact visits -- in an open room with no partition -- and Mr. Trabelsi was not required to be shackled during the visits.  During the twelve years he was detained in Belgium, Mr. Trabelsi affirmatively demonstrated that he can be securely detained while in the general population of a

prison facility and that there is no security risk in giving him the same mail, telephone and visitation privileges as other detainees.  Under these circumstances, the restrictions placed on Mr. Trabelsi by the Marshals -- the same restrictions affirmatively used for punishment within the Rappahannock facility -- are not reasonably related to the need for security, and thus constitute punishment.

As the Court in *Bell* recognized, "pretrial detainees, who have not been convicted of any crimes, retain at least those constitutional rights that . . . are enjoyed by convicted prisoners." *Bell*, 441 U.S. at 546.  In addition to constituting punishment, the restrictions at issue here violate Mr. Trabelsi's constitutional rights beyond his right to due process.  The total restriction on his access to mail, telephone and visitation violates his First Amendment rights.  *See Pell v. Procunier,* 417 U.S. 817, 822 (1974) (prison inmate "retains those First Amendment rights that are not inconsistent with his status as a prisoner or with legitimate penological objectives of the corrections system.").  The administrative segregation unit where Mr. Trabelsi is held is administered under conditions that are causing Mr. Trabelsi to be sleep deprived -- the activity in this unit causes him to be awakened at least every half hour.  This unit is not designed for long-term detention, but rather is used for short term administrative punishment.  Holding Mr. Trabelsi under these conditions, in solitary confinement, incommunicado, is causing negative psychological effects.  In turn, these effects will interfere with Mr. Trabelsi's ability to consult with counsel and prepare his defense.  *See United States v. Mikhel*, 552 F.3d 961, 963-64 (9th Cir. 2009) (ordering government to modify SAMs that interfered with effective assistance of counsel).  This is particularly true because the pretrial phase of this case is likely to be lengthy given that the government has and will disclose more than 30,000 pages of discovery.

Restrictions on the constitutional rights of convicted defendants have been upheld if they are "'reasonably related' to legitimate penological interests" and are not "an 'exaggerated response' to those concerns." *Turner*, 482 U.S. at 87 (citations omitted).  In *Turner,* the Court set forth four factors to consider when determining the reasonableness of prison regulations imposed on convicted defendants, directing courts to consider:  (1) whether there is a "'valid, rational connection'" between the regulation and a legitimate government interest;  (2) whether there are "alternative means of exercising the right that remain open to the prison inmates";  (3) "the impact accommodation of the asserted constitutional right will have on guards and other inmates, and on the allocation of prison resources generally"; and (4) "the absence of ready alternatives." *Turner*, 482 U.S. at 89-91.  The restrictions at issue here violate Mr. Trabelsi's constitutional rights and are not reasonably related to a legitimate governmental objective.

Here, there is no rational connection between the interest in maintaining security and the imposition of solitary confinement with no access to mail, telephone or visitation privileges because, as set forth above, Mr. Trabelsi has been detained for twelve years without these restrictions, without incident.  The USMS has left Mr. Trabelsi with no alternative means to exercise his First Amendment rights because it has banned all communications, and the deterioration of his mental state will, over time, leave him with no ability to consult with counsel. Over the last twelve years while held in Belgium, Mr. Trabelsi has demonstrated that holding him under the same conditions as other pretrial detainees -- a ready alternative to the restrictions imposed by the Marshals -- will not have any impact on the guards or other inmates.

The cases in which courts have upheld restrictions such as those at issue here do not compare to the circumstances of this case because here there is both no evidence that Mr.

7

Trabelsi will use contact with fellow prisoners or outside communications to disrupt the security of the institution, and affirmative evidence (the last twelve years of his confinement) that he will not do so.  *Cf. Basciano v. Lindsay*, 530 F.Supp. 2d 435 (E.D.N.Y. 2008) (restrictions imposed because defendant solicited murder and composed hit list while incarcerated); *United States v. El Hage*, 213 F.3d 74, 81-2 (2d Cir. 2000) (government maintained that restrictions were necessary to prevent defendant from communicating with and facilitating terrorist acts by unconfined co-conspirators and government supported assertions with "ample evidence").  There simply is no reason to believe that Mr. Trabelsi, who did not use his visitation, mail, or telephone privileges or his contact with other evidence during the last twelve years to disrupt prison security, would now do so.

<u>Conclusion</u>

For the foregoing reasons, the reasons set forth in Mr. Trabelsi's Motion to Modify Conditions of Pretrial Detention, the reasons set forth in Defendant's Response to Government's Memorandum Regarding Conditions of Confinement, and such other reasons as may be presented at a hearing on this issue, Mr. Trabelsi respectfully requests that this Honorable Court grant his Motion to Modify Conditions of Pre-Trial Detention.

Respectfully submitted,

A. J. KRAMER
FEDERAL PUBLIC DEFENDER

/s/
_____

MARY MANNING PETRAS
Assistant Federal Public Defender
625 Indiana Avenue, N.W.
Suite 550
Washington, D.C.  20004
(202) 208-7500 ext. 109
Mary_Petras@fd.org