UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

```
_____
                                  )
UNITED STATES OF AMERICA,         )
                                  )
          v.                      )    Criminal Action No. 06-89 (RWR)
                                  )
NIZAR TRABELSI,                   )
                                  )
          Defendant.              )
_____)
```

<u>MEMORANDUM OPINION AND ORDER</u>

Defendant Nizar Trabelsi moved to compel the government to produce correspondence and documents sent between the United States and Belgium addressing Trabelsi's extradition.  After full briefing and oral argument, the Court issued on May 8, 2015 a memorandum opinion and order granting Trabelsi's motion and directing the government to produce a specific category of correspondence sent between the United States and Belgium.  The government now moves for reconsideration of the Court's May 8, 2015 decision, once again claiming that the requested communications are privileged.  The government also requests *in camera ex parte* review and a preemptive sealing order covering any documents produced to Trabelsi.  Because a portion of the responsive discovery may contain material protected by the opinion work product privilege, and because the government has sufficiently shown that harm to the United States' foreign relations may flow from unfettered production of the requested

correspondence, the government's motion for reconsideration will be denied in part and granted in part.

BACKGROUND

The relevant background can be found in the Court's May 8, 2015 Memorandum Opinion and Order, ECF No. 109. Briefly, Trabelsi was convicted in Belgium of conspiracy, explosives, firearms, and other offenses and sentenced to ten years imprisonment. While Trabelsi was serving his sentence in Belgium, the U.S. government secured an initial indictment and then a superseding indictment charging Trabelsi with conspiracy, weapons, and terrorism offenses. After receiving the U.S. government's formal request for Trabelsi's extradition under the superseding indictment, Belgium issued a decision in November 2011 granting the request. After he completed his sentence in Belgium, Trabelsi was extradited to the United States in October 2013.

In the fall of 2014, Trabelsi filed a motion to dismiss the superseding indictment, alleging that this prosecution violates several provisions of the United States' extradition treaty with Belgium. Immediately following the initial briefing on Trabelsi's motion to dismiss, Trabelsi filed in January of 2015 a motion to compel the government to produce correspondence and documents related to his extradition sent between the United States and Belgium. He alleges that Belgium declined to

extradite him on the initial indictment, and that the government made misrepresentations to Belgium that induced Belgium to extradite him on the superseding indictment.  The government opposed, arguing that the requested documents were not relevant to this case, were not discoverable, and were privileged. Following full briefing and oral argument, the Court issued on May 8, 2015 a memorandum opinion and order ("5/8/15 Order") granting Trabelsi's motion and ordering the government to produce a specific set of correspondence.

The government now moves for reconsideration of the 5/8/15 Order.  The government once again asserts that the requested correspondence is privileged, reiterating several arguments presented in the government's opposition to Trabelsi's motion to compel and presenting several new claims of privilege.  The government requests alternatively that it be permitted to review the responsive documents and then produce for *in camera ex parte* review any material the governments deems to be producible under Brady v. Maryland, 373 U.S. 83 (1963).  The government also requests that any documents ultimately produced to Trabelsi be sealed.  Trabelsi opposes the motion in its entirety.

## DISCUSSION

"[M]otions for reconsideration may be entertained in criminal cases and [courts] have adopted the same standard of review that applies to . . . motions [to alter or amend a

judgment] filed in civil cases pursuant to Rule 59(e) of the
Federal Rules of Civil Procedure." United States v. Cabrera,
699 F. Supp. 2d 35, 40 (D.D.C. 2010). "However, in civil cases
'[t]he standard of review for interlocutory decisions differs
from the standards applied to final judgments under Federal
Rules of Civil Procedure 59(e) and 60(b).'" United States v.
Sunia, 643 F. Supp. 2d 51, 60 (D.D.C. 2009) (quoting Williams v.
Savage, 569 F. Supp. 2d 99, 108 (D.D.C. 2008)).

"[R]econsideration of an interlocutory decision is available
under the standard 'as justice requires.'" Judicial Watch v.
Dep't of Army, 466 F. Supp. 2d 112, 123 (D.D.C. 2006) (citations
omitted).

> That standard asks whether reconsideration is
> warranted under the totality of the circumstances,
> including such factors as whether the court has
> patently misunderstood a party, has made a decision
> outside the adversarial issues presented to the court
> by the parties, has made an error not of reasoning,
> but of apprehension, or where a controlling or
> significant change in the law or facts has occurred
> since the submission of the issue to the court.

United States v. McCallum, 885 F. Supp. 2d 105, 115 (D.D.C.
2012), aff'd, 721 F.3d 706 (D.C. Cir. 2013) (internal quotation
marks and citation omitted). "Motions for reconsideration are
committed to the sound discretion of the trial court." Judicial
Watch, Inc. v. U.S. Dep't of Energy, 319 F. Supp. 2d 32, 34
(D.D.C. 2004) (citing Firestone v. Firestone, 76 F.3d 1205, 1208
(D.C. Cir. 1996)).

The moving party bears the burden "to show that reconsideration is appropriate and that harm or injustice would result if reconsideration were denied." United States v. Hemingway, 930 F. Supp. 2d 11, 13 (D.D.C. 2013). However, "a losing party may not use a . . . motion [for reconsideration] to raise new issues that could have been raised previously." Kattan by Thomas v. District of Columbia, 995 F.2d 274, 276 (D.C. Cir. 1993). "'[W]here litigants have once battled for the court's decision, they should neither be required, nor without good reason permitted, to battle for it again.'" Hoffman v. District of Columbia, 681 F. Supp. 2d 86, 90 (D.D.C. 2010) (quoting Singh v. George Wash. Univ., 383 F. Supp. 2d 99, 101 (D.D.C. 2005)); see also New York v. United States, 880 F. Supp. 37, 38 (D.D.C. 1995) (stating that a motion for reconsideration is "not simply an opportunity to reargue facts and theories upon which a court has already ruled").

In its motion for reconsideration, the government argues that the communications subject to production under the 5/8/15 Order are protected by several privileges, including the attorney-client, work product, and deliberative process privileges. The government requests that, in the event that the government must produce documents responsive to the 5/8/15 Order, the Court permit the government to produce for *in camera ex parte* review only those documents the government deems to be

Brady material.  Finally, in the event that any correspondence
is ultimately produced to Trabelsi, the government requests that
the documents and all information contained in them be subject
to a sealing order.

I.    CLAIMS OF PRIVILEGE

Generally, "[t]he common law -- as interpreted by United
States courts in the light of reason and experience -- governs a
claim of privilege[.]"  Fed. R. Evid. 501.  "Although Rule 501
manifests a congressional desire to provide the courts with the
flexibility to develop rules of privilege on a case-by-case
basis, . . . the Supreme Court has been 'disinclined to exercise
this authority expansively[.]'"  In re Lindsey, 158 F.3d 1263,
1268 (D.C. Cir. 1998) (quoting Univ. of Pa. v. EEOC, 493 U.S.
182, 189 (1990)).  "[E]xceptions to the demand for every man's
evidence are not lightly created nor expansively construed, for
they are in derogation of the search for truth."  United States
v. Nixon, 418 U.S. 683, 710 (1974).  Additionally, "[i]t is the
manifest duty of the courts to vindicate [constitutional]
guarantees [afforded to criminal defendants], and to accomplish
that it is essential that all relevant and admissible evidence
be produced."  Id. at 711.  Further, as the D.C. Circuit has
recognized, "openness in government has always been thought
crucial to ensuring that the people remain in control of their

government." <u>In re Lindsey</u>, 158 F.3d at 1274 (internal quotation omitted).

The government once again argues that the requested communications are generally "privileged" and were prepared with the expectation of confidentiality.  Govt.'s Mot. for Reconsideration, ECF No. 112 at 5.  The government asserts that the responsive correspondence "focuses on communications . . . that . . . are entitled to treaty-based and common law protections[,]" <u>id.</u> at 3, and should be protected in its entirety.  Additionally, the government asserts that disclosure of the relevant documents will have a chilling effect on "the United States' many essential extradition and mutual assistance relationships with other countries," <u>id.</u>, and that "the Kingdom of Belgium has registered its serious concerns," <u>id.</u> at 4.

> Here, the government does not allege that the court
> misunderstood the parties' arguments or considered an
> issue not presented by the parties, or that there was
> an intervening change in controlling law.  At best,
> the government appears to be making a second attempt
> to cite relevant law and facts in support of an
> argument that has already been rejected on the merits.

<u>United States v. Hemingway</u>, 930 F. Supp. 2d 11, 13 (D.D.C. 2013).  As was discussed in the 5/8/15 Order, the government cannot simply say that documents as a whole are "ordinarily privileged," Govt.'s Mot. for Reconsideration at 5, and are exempt from discovery without providing some recognized legal support for this claim.  <u>See</u> 5/8/15 Order at 11–13.

Expectations of confidentiality, even those shared by a foreign sovereign, and "anticipation of the nondisclosure of . . . candid communications," Govt.'s Mot. for Reconsideration at 4, are not enough to establish a legally recognizable privilege.[1] Thus, reconsideration of the government's general privilege and confidentiality arguments is not warranted.

The government also argues that the requested correspondence is protected by three legally recognized privileges, which the government has now uncovered through its review of documents potentially responsive to the 5/8/15 Order. The government highlights three "traditional legal privileges" that purportedly protect the documents from disclosure -- attorney-client privilege, work product privilege, and deliberative process privilege.  Govt.'s Mot. for Reconsideration at 4, 6-9.

A.   Attorney-Client Privilege

The government first argues that the correspondence responsive to the 5/8/15 Order is protected by attorney-client privilege.  "The attorney-client privilege protects [certain] confidential communications made between clients and their

---

[1]    The government also seems to assert that the requested communications are protected by Belgian law and should therefore be exempt from disclosure.  See Govt.'s Mot. for Reconsideration at 5.  The government does not, however, explain why a foreign sovereign's law should shield the relevant correspondence from discovery in a U.S. federal court.

attorneys[.]" In re Lindsey, 158 F.3d at 1267. The purpose of
this privilege "is to encourage full and frank communication
between attorneys and their clients and thereby promote broader
public interests in the observance of law and administration of
justice." Upjohn Co. v. United States, 449 U.S. 383, 389
(1981). The attorney-client privilege applies to communications
between an attorney acting in her capacity as a professional
legal adviser and the client. See In re Lindsey, 158 F.3d at
1270 ("[O]nly communications that seek 'legal advice' from 'a
professional legal adviser in his capacity as such' are
protected." (quoting 8 John Henry Wigmore, Evidence in Trials at
Common Law § 2292, at 554 (McNaughton rev. 1961))). In other
words,

> the privilege applies only if the person to whom the
> communication was made is "a member of the bar of a
> court" who "in connection with th[e] communication is
> acting as a lawyer" and the communication was made
> "for the purpose of securing primarily either (i) an
> opinion on law or (ii) legal services or (iii)
> assistance in some legal proceeding."

Id. (quoting In re Sealed Case, 737 F.2d 94, 98-99 (D.C. Cir.
1984)). The party asserting the attorney-client privilege has
the "burden of proving that the communications are protected."
Id. Further, when attempting to invoke the attorney-client
privilege, a party must prove each required element of the
privilege and "[a] blanket assertion of the privilege will not
suffice." Id.

Disclosure of a client's communications to third parties ordinarily "waives the protection of the [attorney-client] privilege[]." Id. at 1282.  However, the "common interest" doctrine of the attorney-client privilege continues to offer the protections of the privilege to third-party disclosures in which the "communications between a lawyer and two or more clients [were] regarding a matter of common interest." In re Sealed Case, 29 F.3d 715, 719 (D.C. Cir. 1994) (citing In re Auclair, 961 F.2d 65, 69 (5th Cir. 1992)).  The common interest doctrine is applicable only after a party has first shown an established attorney-client relationship, and only where the same attorney represents both of the clients. See Chesapeake Bay Found., Inc. v. U.S. Army Corps of Eng'rs, 722 F. Supp. 2d 66, 74 (D.D.C. 2010).

Here, the government argues -- citing In re Lindsey -- that the relevant communications, "which [were] made pursuant to the terms of a formal agreement obligating the countries to assist one another with extraditions, are protected under the common interest doctrine of the attorney-client privilege." Govt.'s Mot. for Reconsideration at 6.  The government asserts that "many communications between extradition partners . . . provide the requesting country with advice concerning the legal requirements of the requested country" and are therefore "properly shielded by the common interest doctrine." Id.  The

government also cites to the Declaration of Kenneth J. Harris ("Harris Declaration"), Ex. 1, Govt.'s Mot. for Reconsideration, which includes general descriptions of the extradition relationship between the United States and Belgium and the types of assistance rendered by their respective authorities.

Beyond blanket assertions of attorney-client privilege and general descriptions of inter-governmental assistance, see, e.g., Harris Declaration at 4-5 (discussing how attorneys working for the U.S. Department of Justice's Office of International Affairs ("OIA") both give advice to and receive guidance from attorneys for foreign governments), the government does not squarely address which actors serve as the "attorneys" and which entities serve as the "clients" in this case.  At best, it appears that the government is arguing that U.S. and Belgian officials provided legal advice and assistance to one another regarding Trabelsi's extradition, rendering U.S. and Belgian officials as both the "attorneys" and the "clients."[2]

No authority cited by the government establishes that this privilege contemplates this type of mutual governmental assistance as an attorney-client relationship.  The United

---

[2]    In other words, an OIA attorney may at any given time during the extradition process be "representing" the United States, the Kingdom of Belgium, and Belgian officials, while both the OIA attorney and the United States are simultaneously "represented by" those same Belgian officials.

States and Belgium are, in the government's words, "extradition partners" -- their attorneys often "solicit and receive advice" from one another as they work together to effectuate an extradition.  See Harris Declaration at 4.  The government fails to cite to any case recognizing the existence of an attorney-client relationship in this type of circumstance.  The government also fails to cite any case supporting the proposition that the mere fact that the governmental actors sending and receiving this information are attorneys is sufficient to establish an attorney-client relationship. Additionally, although communications between an attorney and a qualifying U.S. governmental client may in some cases be covered by attorney-client privilege, see, e.g., In re Lindsey, 158 F.3d at 1269-70, the government points to no case that extends this privilege to communications between an attorney working for the U.S. government and a foreign official.

In the absence of any case law or other legal authority recognizing this type of inter-governmental assistance relationship as one between an attorney and a client, and in light of the general rule that privileges "are not lightly created nor expansively construed," United States v. Nixon, 418 U.S. at 710, the Court declines to expand the existing scope of the attorney-client privilege.  Because the government has failed to demonstrate a qualifying attorney-client relationship,

the government is not entitled to withhold any of the responsive correspondence under the cloak of the attorney-client privilege.

B.   <u>Work Product Privilege</u>

The government also argues that the relevant correspondence is protected by the work product privilege.  Though the work product privilege is most frequently invoked in the civil context, the attorney work-product doctrine applies to criminal as well as civil litigation.  <u>See</u> <u>United States v. Clemens</u>, 793 F. Supp. 2d 236, 244 (D.D.C. 2011) (citing <u>United States v. Nobles</u>, 422 U.S. 225, 236 (1975)).  The work product privilege "promotes the adversary process by insulating an attorney's litigation preparation from discovery."  <u>United States v. Deloitte LLP</u>, 610 F.3d 129, 139-40 (D.C. Cir. 2010).  However, "not 'all written materials obtained or prepared by an adversary's counsel with an eye toward litigation are necessarily free from discovery in all cases.'"  <u>Clemens</u>, 793 F. Supp. 2d at 244 (quoting <u>Hickman v. Taylor</u>, 329 U.S. 495, 511 (1947)).  Instead, "attorney work-product is discoverable if the party seeking discovery can make a sufficient showing of necessity."  <u>Id.</u> (internal quotation omitted).  Qualifying work product "is protected from discovery unless 'the one who would invade that privacy' carries the burden of 'establish[ing] adequate reasons to justify production through a subpoena or

court order.'"  Deloitte LLP, 610 F.3d at 135 (quoting
Hickman, 329 U.S. at 512).

There are two types of work product that may be subject to
discovery -- "fact" and "opinion."  "Where relevant and non-
privileged facts remain hidden in an attorney's file and where
production of those facts is essential to the preparation of
one's case, discovery may properly be had."  Hickman, 329 U.S.
at 511.  "A party can discover fact work product upon showing a
substantial need for the materials and an undue hardship in
acquiring the information any other way."  Dir., Office of
Thrift Supervision v. Vinson & Elkins, LLP, 124 F.3d 1304, 1307
(D.C. Cir. 1997).  As was discussed in the 5/8/15 Order,
Trabelsi has demonstrated a substantial need for the requested
correspondence, as it may expose the government duplicity he
claims in support of his motion to dismiss the indictment.
Trabelsi has also shown it is impossible to obtain the requested
correspondence in another manner.  Thus, the work product
privilege may not shield any fact work product contained within
the requested correspondence.

Opinion work product, though, enjoys greater protection.
As the D.C. Circuit has recognized in the civil context,
"opinion work product[] 'is virtually undiscoverable.'"
Deloitte LLP, 610 F.3d at 135 (quoting  Dir., Office of Thrift
Supervision v. Vinson & Elkins, LLP, 124 F.3d at 1307).

"Discovery of 'opinion' work product is therefore permissible only where a party has made 'a far stronger showing of necessity and unavailability by other means' than would otherwise be sufficient for discovery of 'fact' work product." Clemens, 793 F. Supp. 2d at 244 (quoting Upjohn, 499 U.S. at 402).

Trabelsi has made a strong showing of both necessity and unavailability of the requested correspondence -- "correspondence . . . sent between the United States and Belgium . . . addressing the charges in the initial and superseding indictments and whether the Extradition Treaty between the United States and Belgium may or may not permit extradition." 5/8/15 Order at 13-14. "Trabelsi has sufficiently demonstrated that there is a reasonable probability that production of the requested materials could alter the outcome of the instant criminal prosecution; that is, correspondence reflecting that Belgium granted extradition based on misrepresentations of the charged offenses could support Trabelsi's motion to dismiss the indictment." Id. at 10. Opinion work product may, in many cases, be protected. However, if the work product at issue demonstrates potential violations of an extradition treaty in a way that might warrant dismissal of the superseding indictment, the privilege must give way. The government cannot shield what would otherwise be Brady material behind claims of opinion work product privilege. Accordingly, the government may prepare a

privilege log, along with both redacted and unredacted copies of the relevant correspondence, to submit to the Court for *in camera* review.[3]

C.   Deliberative Process Privilege

The government also asserts that the requested correspondence is protected from discovery by the deliberative process privilege.  "Since the beginnings of our nation, executive officials have claimed a variety of privileges to resist disclosure of information the confidentiality of which they felt was crucial to fulfillment of the unique role and responsibilities of the executive branch of our government."  In re Sealed Case, 121 F.3d 729, 736 (D.C. Cir. 1997).[4]  The deliberative process privilege "allows the government to withhold documents and other materials that would reveal advisory opinions, recommendations[,] and deliberations comprising part of a process by which governmental decisions and policies are formulated."  Id. at 737 (internal quotation

---

[3]    The D.C. Circuit has recognized that *in camera* review may be used "to determine whether [a document] is entirely work product."  Deloitte LLP, 610 F.3d at 139.

[4]    Although the deliberative process privilege occasionally arises in criminal cases, it is most commonly invoked in civil FOIA cases.  See Nancy Hollander & Barbara E. Bergman, Everytrial Criminal Defense Resource Book § 27:9 (Thomson Reuters) (2013).  "Because the deliberative process privilege often arises in the FOIA context, courts deciding deliberative process issues in non-FOIA contexts regularly rely on FOIA cases for their analyses."  Id.

omitted).  The purpose of this privilege is to "'prevent injury to the quality of agency decisions' by allowing government officials freedom to debate alternative approaches in private." Id. (quoting NLRB v. Sears, Roebuck & Co., 421 U.S. 132, 151 (1975)).  Given the privilege's purpose of promoting and "protect[ing] creative debate and candid consideration of alternatives *within* an agency," the deliberative process privilege protects "inter- and intra-agency communications" from disclosure.  Jordan v. U.S. Dep't of Justice, 591 F.2d 753, 772 (D.C. Cir. 1978) (emphasis added).

The deliberative process privilege is not absolute; rather, it is "relative to the need demonstrated for the information." Northrop Corp. v. McDonnel Douglas Corp., 751 F.2d 395, 404 (D.C. Cir. 1984).  "The deliberative process privilege is a qualified privilege and can be overcome by a sufficient showing of need.  This need determination is to be made flexibly on a case-by-case, ad hoc basis."  In re Sealed Case, 121 F.3d at 737.  This privilege also "does not shield documents that simply state or explain a decision the government has already made or protect material that is purely factual, unless the material is so inextricably intertwined with the deliberative sections of documents that its disclosure would inevitably reveal the government's deliberations."  Id.  Further, "the deliberative process privilege does not protect documents in their entirety;

if the government can segregate and disclose non-privileged

. . . information with a document, it must." <u>Loving v. Dep't of

Defense</u>, 550 F.3d 32, 38 (D.C. Cir. 2008) (citing <u>Army Times

Publ'g Co. v. Dep't of Air Force</u>, 998 F.2d 1067, 1071 (D.C. Cir.

1993)).

The government argues that the requested correspondence

sent between the United States and Belgium "reflect[s] the

deliberative process of government officials" and is therefore

insulated from discovery.  Govt.'s Mot. for Reconsideration at

7-8.  The government again cites Federal Rule of Criminal

Procedure 16(a)(2) as support for its argument.  <u>See</u> Govt.'s

Mot. for Reconsideration at 6.  However, the 5/8/15 Order

explicitly rejected the assertion that the relevant

communications are "internal government documents" captured by

this rule.  <u>See</u> 5/8/15 Order at 12 n.1.  The Court has already

ruled that the requested correspondence is not the type of

intra- or inter-agency communication that is protected by the

deliberative process privilege, <u>see</u> <u>id.</u> at 12, and the Court

will not offer the government yet another chance to argue that

point.  Even if these were the types of communications protected

by the deliberative process privilege, the privilege "can be

overcome by a sufficient showing of need."  <u>In re Sealed Case</u>,

121 F.3d at 737.  As is particularly relevant here, "where there

is reason to believe the documents sought may shed light on

government misconduct, 'the privilege is routinely denied,' on the grounds that shielding internal government deliberations in this context does not serve 'the public's interest in honest, effective government.'" Id. at 738 (quoting Texaco Puerto Rico, Inc. v. Dep't of Consumer Affairs, 60 F.3d 867, 885 (1st Cir. 1995)).

Thus, the government cannot withhold correspondence responsive to the 5/8/15 Order under the deliberative process privilege or Federal Rule of Criminal Procedure 16(a)(2).

II.  REQUEST FOR IN CAMERA EX PARTE REVIEW

The government requests that, if it is in fact required to produce any portion of the requested correspondence, the government be permitted to submit documents to the Court for *in camera ex parte* review.

"At any time [a] court may, for good cause, deny, restrict, or defer discovery or inspection, or grant other appropriate relief." Fed. R. Crim. P. 16(d)(1).  The Supreme Court has recognized that *in camera* review for Brady material can "serve [a defendant]'s interest without destroying the [government]'s need to protect the confidentiality of those involved[.]" Pennsylvania v. Ritchie, 480 U.S. 39, 61 (1987).  The use of *in camera ex parte* review for Brady material has also been employed, in certain circumstances, by other circuits.  See, e.g., United States v. Mehanna, 735 F.3d 32, 65-66 (1st Cir.

2013), cert. denied, 135 S. Ct. 49 (2014) (affirming the district court's denial of a defendant's motion to compel issued after the district court reviewed, for potential Brady material, the government's in camera submission).  Similarly, the D.C. Circuit has itself employed in camera ex parte review in the criminal context.  See, e.g., United States v. Yunis, 867 F.2d 617, 624 (D.C. Cir. 1989) (discussing the Circuit's in camera ex parte review of classified information).

Here, the government argues that in camera ex parte review "would more effectively balance between the concerns arising from the confidentiality of the requested documents and the concerns alleged by the defense for access to those materials." Govt.'s Mot. for Reconsideration at 13.  The government asserts that substantial damage to the United States' relationship with Belgium, as well as to the United States' foreign relations with other extradition partners, might flow from traditional production of the requested correspondence.  The government also notes Belgium's explicit objection to production of the requested correspondence and concerns regarding access to correspondence sent with an expectation of confidentiality. Although the United States' and Belgium's concerns alone do not constitute sufficient grounds for withholding the relevant correspondence, they certainly weigh in favor of in camera ex parte review.  In light of the potential harm to the United

States' foreign relations with Belgium and other nations posed
by unfettered disclosure, as well as the need to balance the
government's expressed interests with Trabelsi's interest in
obtaining the requested correspondence, *in camera ex parte*
review is appropriate in this case.

The government further requests that it be permitted to
review the responsive correspondence for <u>Brady</u> material and then
produce to the Court for *in camera ex parte* review only those
materials the government deems necessary.  The government
asserts that the Court's 5/8/15 Order "departs from the ordinary
course of criminal discovery," Govt.'s Mot. for Reconsideration
at 11, and argues that the government should be entrusted with
the responsibility of determining whether any portion of the
requested correspondence qualifies as <u>Brady</u> material.

The government's continued resistance to producing the
requested correspondence raises concerns regarding full
compliance with the 5/8/15 Order.  The government has thus far
refused to acknowledge that correspondence containing
misrepresentations regarding Trabelsi's extradition and
prosecution under the superseding indictment may constitute
<u>Brady</u> material.  Indeed, in its reply to Trabelsi's opposition
to the instant motion, the government continues to argue that
the correspondence subject to the 5/8/15 Order "cannot
constitute exculpatory material under Brady[.]"  Govt.'s Reply

to Def.'s Opp'n to Govt.'s Mot. for Reconsideration, ECF No. 114 at 13.  If there is any merit to the argument that tricking Belgium into believing the superseding indictment states an extraditable offense should support dismissing the charges, then correspondence proving the trickery would surely qualify as "evidence favorable to [the] accused" under Brady, 373 U.S. at 87.  Given the government's continuing assertion that the requested correspondence is not Brady material, the government will not be permitted to limit its production to only those materials that it deems could be Brady.

In light of the potential harm that might flow from open production of the correspondence between the United States and Belgium, and in part to ensure that the government does not attempt to further shield the relevant correspondence, the Court will permit the government to submit all correspondence responsive to the 5/8/15 Order for *in camera ex parte* review.

III. REQUEST FOR SEALING ORDER

The government further requests that any documents ultimately produced to Trabelsi -- as well as any information contained within the documents -- be subject to a sealing order. "'[T]he decision as to access (to judicial records) is one best left to the sound discretion of the trial court, a discretion to be exercised in light of the relevant facts and circumstances of the particular case.'"  United States v. Hubbard, 650 F.2d 293,

316-17 (D.C. Cir. 1980) (quoting Nixon v. Warner Commc'ns, Inc., 435 U.S. 589, 599 (1977)).  In Hubbard, the D.C. Circuit expressed a number of factors that courts should consider to determine whether a document should be sealed.

> The Hubbard factors include: (1) the need for public access to the documents at issue; (2) the extent of previous public access to the documents; (3) the fact that someone has objected to disclosure, and the identity of that person; (4) the strength of any property and privacy interests asserted; (5) the possibility of prejudice to those opposing disclosure; and (6) the purposes for which the documents were introduced during the judicial proceedings.

In re Application of United States of Am. for an Order of Nondisclosure Pursuant to 18 U.S.C. § 2705(B) for Grand Jury Subpoena # GJ2014031422765, 41 F. Supp. 3d 1, 7 n.4 (D.D.C. 2014) (citing Hubbard, 650 F.2d at 317-22).

The discovery process is not normally a public one, and there has been no previous public access to the requested correspondence.  Here, the materials at issue are not sought to prove Trabelsi's guilt or innocence, but rather to bolster Trabelsi's arguments that the superseding indictment and the instant prosecution violate the United States' extradition treaty with Belgium.  Further, both the United States and Belgium object to public disclosure of this inter-governmental correspondence, which was prepared with an expectation that all communications would remain confidential.  The government asserts that public disclosure of the relevant documents will

have a detrimental impact on the United States' relationship with Belgium, and that public disclosure may jeopardize the United States' cooperative extradition relationships with other foreign sovereigns.

In light of all the circumstances, including the government's representations regarding the potential harm to the relationship between the United States and its foreign allies, as well as the Kingdom of Belgium's objection to public disclosure of its extradition-related communications with the United States, the government's request will be granted.  If the Court ultimately directs the government to produce to Trabelsi any documents, the production will be subject to the conditions outlined in the order below.

## CONCLUSION AND ORDER

The government's repeated general claims of privilege do not merit reconsideration, and several of the government's specific privilege claims fail.  However, the government has sufficiently established that the requested correspondence may contain privileged opinion work product.  Additionally, the government has established a compelling interest in protecting the requested correspondence from open and public disclosure at this stage.  Thus, it is hereby

ORDERED that the government's motion [112] for reconsideration be, and hereby is, DENIED IN PART AND GRANTED IN

PART.   The government shall produce to the Court by no later than September 11, 2015 at 5:00 p.m. for *in camera ex parte* review all correspondence responsive to the Court's May 8, 2015 Order.   The government may submit, if appropriate, a privilege log consistent with this opinion along with both redacted and unredacted copies of the allegedly privileged materials.   The Court will then determine which correspondence, if any, should be produced to Trabelsi.   It is further

ORDERED that if, following *in camera ex parte* review, the Court directs the government to produce to Trabelsi any correspondence, the produced correspondence will be subject to the following conditions: 1) Any filings by any filer that either attach the produced correspondence or discuss the information contained within the produced correspondence must be filed under seal.   2) Any discussions or arguments before the Court regarding the contents of the produced correspondence must be conducted in a sealed proceeding.   3) Any of the produced correspondence designated by the government as "Protected Material" will also be subject to the restrictions included in the Protective Order, ECF No. 18.   It is further

ORDERED that the parties appear on Tuesday, September 29, 2015 at 10:00 a.m. in Courtroom 9 for a hearing on Trabelsi's motion [70] to dismiss.

SIGNED this 3rd day of September, 2015.


_____/s/_____
RICHARD W. ROBERTS
Chief Judge