# **EXHIBIT 1**

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

UNITED STATES OF AMERICA   :

v.   :   06-CR-089 (RWR)

NIZAR TRABELSI   :

## MOTION TO COMPEL MODIFICATION OF RESTRICTIONS INTERFERING WITH SIXTH AMENDMENT RIGHT TO COUNSEL

Mr. Nizar Trabelsi, through undersigned counsel, respectfully moves this Honorable Court to compel the government to modify conditions of his detention that are interfering with his Sixth Amendment right to counsel. Specifically, the following provisions interfere with Mr. Trabelsi's right to the assistance of counsel: (1) the requirement that he remain handcuffed during meetings with counsel; (2) the requirement that he remain handcuffed while reviewing the more than 48,000 pages of discovery produced by the government; and (3) the restriction limiting his "outside recreation" to a 5 foot by 5 foot by 9 foot triangular area inside 20-foot concrete walls.

### Factual Background

On September 13, 2001, Mr. Trabelsi was arrested in Brussels, Belgium, and charged with criminal conspiracy, attempt to detonate an explosive in order to destroy property or buildings where the perpetrator had to assume humans were present, illegal firearms possession, and membership in a private militia. He subsequently was convicted and sentenced to a ten year term of incarceration.

On November 7, 2006, a grand jury returned a four count superseding indictment in this matter, charging Mr. Trabelsi with conspiracy to kill United States nationals outside of the United States, in violation of 18 U.S.C. §§ 2332(b)(2) and 1111(a); conspiracy and attempt to use weapons of mass destruction, in violation of 18 U.S.C. §§ 2332a and 2; conspiracy to provide material support and resources to a foreign terrorist organization, in violation of 18 U.S.C. § 2339B; and providing material support and resources to a foreign terrorist organization, in violation of 18 U.S.C. §§ 2339B and 2. A superseding indictment, charging the same offenses was returned on November 16, 2007. The charged offenses arise out of the same alleged conduct that formed the basis for Mr. Trabelsi's convictions in Belgium.

Following the completion of his sentence in Belgium, Mr. Trabelsi was extradited to the United States and brought before the court for his initial appearance in this matter on October 3, 2013. At that time, upon the government's motion, Magistrate Judge Debra A. Robinson ordered Mr. Trabelsi held without bond, pending a detention hearing. On October 7, 2013, Mr. Trabelsi waived his right to a detention hearing, and this Court ordered him held without bond pending trial.

Mr. Trabelsi has been held in administrative segregation (solitary confinement) at the Rappahannock Regional Jail since his arrival in the United States. The United States Marshals Service initially held Mr. Trabelsi on "total lockdown" with no mail, telephone or visitation privileges. Mr. Trabelsi, through counsel contested these restrictions. *See* Motion to Modify Conditions of Pretrial Detention [Dkt. #19]. Before the Court ruled on Mr. Trabelsi's motion, on November 1, 2013, the Acting Attorney General issued Special Administrative Measures ("SAMs"), which provide for very limited mail, telephone and visitation privileges. The SAMs

severely restricts Mr. Trabelsi's communications and contacts with other persons. The SAMs, however, does not require the restrictions at issue here: handcuffs during legal meetings, handcuffs while reviewing discovery materials, and "outside recreation" limited to one very small designated area. Rather, these restrictions have been imposed by the authorities at the Rappahannock facility.

Over the last three months, the government has been producing discovery, but due to the complexity of the investigation that led to the charges and the nature of the case, the government has not yet completed producing the materials it has identified as discoverable and does not expect to do so for several months. More than 48,000 pages of discovery have been produced thus far, but these documents are written almost entirely in French (some are in Dutch) and only approximately 7,000 pages have been translated into English. In order to prepare for trial, counsel needs Mr. Trabelsi, who unlike counsel, can read all of the French documents, to review these materials and discuss them with counsel. The officials at the Rappahannock facility have agreed to permit Mr. Trabelsi to use a computer at the facility to review the materials which counsel provided to the facility on disks. However, the computer has been made available to Mr. Trabelsi only for a couple of hours a week and during this time Mr. Trabelsi is required to remain handcuffed. Some of the guards have refused to loosen the handcuffs sufficiently for Mr. Trabelsi to use the keyboard, and even when the handcuffs are loosened, navigating through the thousands of pages of documents and trying to take notes is not possible, particularly given the limited time during which the computer is available to Mr. Trabelsi. Without Mr. Trabelsi's ability to review the discovery, counsel will not be able to adequately prepare for trial.

Since Mr. Trabelsi has been at the Rappahannock facility, counsel has visited him on a

number of occasions. Each time, the officials at the facility have required that he remain handcuffed during the meeting. Mr. Trabelsi has some of the discovery (more than fifty reports of statements allegedly made by Mr. Trabelsi while in Belgian custody) in his cell and has been able to take notes regarding these statements while in his cell. He has been able to bring these materials to meetings with counsel, but sorting through his notes and documents while shackled interferes with his ability to consult with counsel and is significantly delaying an already time-consuming process of reviewing these materials and preparing for trial.

Mr. Trabelsi now has been in solitary confine for more than four months. During this time counsel has noted that the conditions of his confinement have negatively affected his mental health. This deterioration, at times, has interfered with counsel's ability to consult with Mr. Trabelsi. *See Hutchinson v. Florida*, 677 F.3d 1097 (11th Cir. 2012) (Barkett, J., concurring) ("[T]he psychological effects of spending extended periods in solitary confinement -- commonly known as SHU syndrome -- may impair an inmate's mental capabilities to the extent that his active participation in litigation becomes impossible.") (citing Craig Haney, *Mental Health Issues in Long-term Solitary and "Supermax" Confinement*, 49 Crime & Delinq. 124, 130-141 (2003) (describing the SHU syndrome and the long-term effects of solitary confinement on prison inmates)).

Apart from court appearances and legal visits, the only possible relief from his cell that Mr. Trabelsi has been offered is one hour of "outdoor recreation" per day. However, this "outdoor recreation" is available only in a cell that is a 5 foot by 5 foot by 9 foot triangular area inside approximately 20-foot concrete walls, with a cement floor and a wire mesh ceiling that permits a view of the sky through the mesh. Apart from the mesh ceiling, this cell is not

4

significantly different than Mr. Trabelsi's cell and provides no relief from the effects of solitary confinement.[1] Because the pre-trial preparation in this matter is expected to take numerous months, without some relief from these conditions, Mr. Trabelsi's mental state is likely to continue to deteriorate, prevent him from being able to consult with counsel, and may lead to his incompetency to proceed.

Undersigned counsel has spoke with the Deputy Superintendent of the Rappahannock facility, who represented that the restrictions at issue here are standard restrictions for individuals held in administrative segregation and are necessary for security purposes because Mr. Trabelsi has been identified as a "high profile, high risk" inmate. For the reasons set forth below these restrictions unreasonably infringe on Mr. Trabelsi's right to counsel and are an exaggerated response to the prison's concerns.

## Argument

Mr. Trabelsi has not been convicted of the charged offenses and retains his constitutional rights. A pretrial detainee may be subject "to the restrictions and conditions of the detention facility so long as those conditions and restrictions do not amount to punishment, or otherwise violate the Constitution." *Bell v. Wolfish*, 441 U.S. 520 (1979). The restrictions at issue here "otherwise violate the Constitution" by infringing on Mr. Trabelsi's Sixth Amendment rights.

With regard to convicted prisoners, the Supreme Court has held that "when a prison regulation impinges on inmates' constitutional rights, the regulation is valid if it is reasonably related to legitimate penological interests." *Turner v. Safley*, 482 U.S. 78, 89 (1987); *see also*

---

[1] Because this cell provides no relief, Mr. Trabelsi has declined the opportunity for this "outdoor recreation." Undersigned counsel was given an opportunity to view the "outdoor recreation" cell and confirms that it provides no relief.

5

*Pell v. Procunier,* 417 U.S. 817, 822 (1974) (prison inmate "retains those First Amendment rights that are not inconsistent with his status as a prisoner or with legitimate penological objectives of the corrections system."). Restrictions on the constitutional rights of convicted defendants violate the constitution if the restrictions are an "exaggerated response" to legitimate concerns. *Turner,* 482 U.S. at 87 (citations omitted). In *Turner,* the Court set forth four factors to consider when determining the reasonableness of prison regulations imposed on convicted defendants, directing courts to consider: (1) whether there is a "'valid, rational connection'" between the regulation and a legitimate government interest; (2) whether there are "alternative means of exercising the right that remain open to the prison inmates"; (3) "the impact accommodation of the asserted constitutional right will have on guards and other inmates, and on the allocation of prison resources generally"; and (4) "the absence of ready alternatives." *Turner,* 482 U.S. at 89-91.

Here, the legitimate government interest that the Rappahannock officials have identified is the security of the facility. The measures at issue however constitute an exaggerated response to the claimed potential threat. According to the Rappahannock officials, Mr. Trabelsi has been designated a "high risk, high profile" inmate due to the charges against him and an allegation that he attempted to escape while detained in Belgium. Mr. Trabelsi, of course, is presumed innocent of the charged offenses, and the evidence at trial will demonstrate that he is not guilty. Moreover, Mr. Trabelsi was arrested on September 13, 2001, and has been detained since that date. During the twelve years he was detained in Belgium, he did not make any escape attempt or otherwise harm or endanger anyone. More than five years ago, Mr. Trabelsi was convicted of verbally threatening a prison guard, but that incident did not involve physical contact and was no

different than numerous incidents that occur in prisons throughout this country -- incidents that do not result in long-term solitary confinement. Moreover, Mr. Trabelsi never made any escape attempt. There is no evidence that Mr. Trabelsi was ever involved in any escape plot, and no one has ever been charged with such a plot. Most significantly, while detained in Belgian, Mr. Trabelsi was not required to wear shackles during legal meetings and had greater freedom within the prison facility. *See* Exhibit 1 (Memorandum from Director General of Belgian Prisons, permitting Mr. Trabelsi "access to a personal courtyard" and "access to the gym and work-out area with inmates who are selected by management in accordance with the directives determined by management").

The restrictions imposed leave Mr. Trabelsi with no alternative means of adequately consulting with counsel and preparing for trial. Without Mr. Trabelsi's ability to review the more than 48,000 pages of discovery and consult with counsel, Mr. Trabelsi and counsel will not be able to prepare for trial.

The accommodations Mr. Trabelsi is requesting will have limited impact on guards, other inmates, and prison resources, and are readily available. Mr. Trabelsi has caused no disturbance while detained in the United States, he has complied with regulations and been respectful to guards. During meetings with counsel, he is required to wear leg shackles. Permitting him to meet with counsel without handcuffs would endanger no one. Similarly, while using the computer to review discovery, he is required to where leg shackles and is in a small room with armed guards. These measures alone are sufficient to assure the security of the facility, guards and inmates, without interfering with Mr. Trabelsi's right to counsel.

Finally, Mr. Trabelsi requests access to another recreation area readily available within

the prison facility. The officials at the Rappahannock facility have not permitted Mr. Trabelsi to use this recreation area because it abuts another recreation area and may lead Mr. Trabelsi to have contact with another inmate who may be using the adjoining recreation area. Mr. Trabelsi, however, speaks only limited English and would strictly abide by any requirement that he not speak to or communicate with any inmate in the adjoining area.

## Conclusion

For the foregoing reasons, and such other reasons as may be presented at a hearing on this motion, the restrictions placed on Mr. Trabelsi are unconstitutionally interfering with his Sixth Amendment right to counsel. Mr. Trabelsi, therefore, respectfully requests that this Honorable Court compel the government to eliminate: (1) the requirement that he remain handcuffed during legal visits; (2) the requirement that he remain handcuffed while reviewing the more than 48,000 pages of discovery produced by the government; and (3) the restriction limiting his "outside recreation" to a 5 foot by 5 foot by 9 foot triangular area inside 20-foot concrete walls.

Respectfully submitted,

A. J. KRAMER
FEDERAL PUBLIC DEFENDER

/s/
_____
MARY MANNING PETRAS


_____
JONATHAN S. JEFFRESS

Assistant Federal Public Defenders
625 Indiana Avenue, N.W.
Suite 550
Washington, D.C. 20004
(202) 208-7500 ext. 109

SPF JUSTICE [Federal Public Service – Justice]      Attachment LP 118 - B
General Directorate
DGEPI [General Directorate of Penitentiaries]

Ittre Penitentiary Facility

| DECISION OF THE DIRECTOR GENERAL |
| --- |
| SPECIAL INDIVIDUAL SECURITY REGIME PLACEMENT |
| RESUMPTION |

The undersigned, Director General Hans MEURISSE
With regard to specific circumstances or attitudes of the prisoner

### Nizar TRABELSI, DOB 01/22/1970

as detailed hereunder, which suggest that the individual presents a constant security threat.

The concerned party stayed in different facilities where it was observed that, when in contact with other prisoners, he pressured other individuals and engaged in proselytism. For example, he succeeded in creating a protest movement thereby threatening the safety in one of these institutions. This influence on other individuals continues to be observed during the few contacts he was able to establish.
The concerned party also acknowledges that he has, albeit unwillingly, a certain influence over his fellow inmates. However, he refutes the fact that he uses this influence inappropriately.
It is therefore necessary to limit the concerned party's contacts with other prisoners and to take measures aimed at limiting the safety risks within the institution.
The detention of the concerned party is also further complicated by abundant information pertaining to his escape plans.
Mr. TRABELSI arrived in Ittre on 05.29.2013 from the prison at Mons. The end of his detention in this facility did not go well; his behavior deteriorated, to the point of threatening retaliation against members of management.
Mr. TRABELSI's specific situation with respect to judicial proceedings exacerbates this problem. Indeed, an extradition procedure for the concerned party is still ongoing; an extradition which he strongly opposes -
However, since his arrival in Ittre his behavior has stabilized, which is why it was decided to consider a relaxation of the regime, also advocated by Dr. DAILLET in his report of July 24, 2013.

Given the fact that the control measures and the special safety measures turned out to be insufficient:

*The situation described above demonstrates that the resumption of the special individual security regime is still necessary to ensure both the internal and external security whilst finding the right balance in planning the detention of the concerned party.*

Inform the warden of the prison of Ittre

it is appropriate to place the detainee Nizar TRABELSI

for a period of two months: from 08.07.2013 to 10.05.2013.

under the following special individual security regime[1] in accordance with Title VI Section III of the Law of January 12, 2005 on prison administration and the legal status of detainees.

X suspension from the following common or individual activities:

*In order to limit the risks to the security of the prison, Mr. TRABELSI will not have access to joint activities. This measure is motivated by the risk of proselytizing within the institution. It has already been noted that the concerned party might have an important influence over other inmates. In addition, the danger that he might trigger a movement or that other inmates might use him for such a purpose is not to be neglected. This has already been observed in facilities where he stayed.*
*He will have access to a personal courtyard and will worship in his cell.*
*However, in order to take into account the interests of the detainee, whilst preserving the security requirements, the detainee will have access to the gym and work-out area with inmates who are selected by management in accordance with the directives determined by management.*

X systematic control of incoming and outgoing correspondence

*Outgoing mail will be delivered open, with the exception of that referred to in Sections 57 and 66 of the Law on Prisons and Section 14 of the Royal Decree of April 8, 2011 while incoming mail will be reviewed by management. The contacts of the individual must be supervised to evaluate and mitigate risks to security and order.*
*Correspondence with other inmates will be banned.*

X limiting visits to a room with a transparent separating wall between visitors and the inmate

*The risk of proselytism is also present in the rooms used for visits. Therefore, there is reason to control access to visits, whilst finding the right balance between the need for order and security, and the interests of the person.*
*Mr. TRABELSI will only receive visits from authorized visitors in accordance with the Prisons Act and only after a thorough screening by management of their identity and quality.*

*Other authorized persons are his companion, Mrs. Asma BERROU, the latter's sister, Mrs. Karima BERROU and their children, and Mr. Claude DEBRULLE and Mrs. CARRERAS of Amnesty International.*

---

[1] Put a cross next to the measure/measures that apply, justifying why they are necessary to ensure safety.

*The interested party may receive visits from them at the table but not in the presence of other inmates.*
*Mr. TRABELSI is also allowed to have non-monitor visits with his companion, Mrs. Asma Berrou and children, in keeping with the VHS regime at Ittre, namely three monthly VHS visits, whether marital or family visits.*
*The interested party may be entitled to supervised visits by Relai Parents-Enfants [Parents-Children Relay] provided that they conform to this plan (visits without the presence of other inmates).*

*All other visits (other potential visitors) will take place in a room equipped with a transparent separation wall between the visitor and the inmate.*

X partial loss of use of the phone,

*The interested party is allowed to call the numbers that were authorized by management. Given the risk of escape, it is imperative to limit the contacts of Mr. TRABELSI which could facilitate an escape or put the security of the institution and staff at risk.*

X mandatory stay in the living area indicated by management;

*The interested party will stay in the cell that was assigned to him by the direction.*

The inmate who is the subject of such a measure retains the right to participate in proposed activities pertaining to worship, training, recreation, and work, and has the right to contacts with the outside world through correspondence, visits and phone calls (including contacts with diplomatic or consular authorities) provided that the exercise of these rights is not incompatible with the safety measure[2].

The inmate must be informed about this decision of which he will sign the original and receive a copy,

Hans MEURISSE
General Director
August 1, 2013
*[Illegible signature]*

The inmate has been informed and has received a copy *(date and signature)*

---

[2] Specify what would motivate the failure to comply with this rule and why it is necessary for reasons of safety

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

UNITED STATES OF AMERICA	:

v.	:	06-CR-089 (RWR)

NIZAR TRABELSI	:

## ORDER

Upon consideration of Nizar Trabelsi's Motion to Compel Modification of Restrictions Interfering with Sixth Amendment right to counsel, and finding good cause shown, it is this __ day of _____, 2014, hereby

ORDERED that the motion is GRANTED.

_____
**CHIEF JUDGE RICHARD W. ROBERTS**