**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

**UNITED STATES OF AMERICA**              :

               **v.**                    :          **06-CR-089 (RDM)**

**NIZAR TRABELSI**                         :

**MOTION TO COMPEL COMPLIANCE WITH TREATY**
**AND DOCTRINE OF SPECIALITY AND TO EXCLUDE RULE 404(b) EVIDENCE**

Mr. Nizar Trabelsi, through undersigned counsel, pursuant to the Due Process Clause and

the Extradition Treaty between the United States of America and the Kingdom of Belgium

(hereinafter "Treaty"), S. Treaty Doc. No. 104-7, 1987 WL 350379, respectfully moves this

Honorable Court to compel compliance with the Treaty and the doctrine of speciality.   As

required by the Treaty and Belgium's grant of extradition, Mr. Trabelsi requests that the Court

ensure that he is not convicted of the same offenses for which he was convicted in Belgium, that

is, for his actions in Belgium and the alleged conspiracy and attempt to bomb the Kleine Brogel

military base ("Kleine Brogel plot").   In addition, while the doctrine of speciality does not bar

the use of evidence of the Kleine Brogel plot to prove other offenses, Federal Rules of Criminal

Procedure 403 and 404(b) prohibit the use of this other crimes evidence, and therefore, its use

must be excluded at trial.   If, over objection, the Court admits at trial evidence related to the

Kleine Brogel plot, in order to ensure compliance with the doctrine of speciality, the Court

should instruct the jury that Mr. Trabelsi cannot be convicted in this case based on his actions in

Belgium and the alleged Kleine Brogel plot.

**Procedural and Factual Background**

On September 13, 2001, Mr. Trabelsi was arrested in Uccle, Belgium, on suspicion of

plotting a terrorist attack.   Belgian police searched his apartment and allegedly found a list of chemicals used in explosives, along with an Uzi submachine gun.   The police later searched a restaurant in Brussels that was owned by the family of a coconspirator and allegedly found two chemicals used in explosives.   Mr. Trabelsi was charged in Belgium – along with twelve coconspirators – and, on September 30, 2003, was convicted of participating in an al Qaeda plot to bomb the Kleine Brogel military base in Belgium and related offenses.

As set forth in the June 9, 2004 decision of the Brussels Court of Appeal affirming Mr. Trabelsi's convictions, the Belgian convictions included:

A.      [Mr. Trabelsi] on an undetermined date between July 3, 2001, and September 14, 2001, tried to destroy, through an explosion, a building, bridge, levy, roadway, railroad track, lock, warehouse, worksite, hangar, ship, boat, car, truck, aircraft, work of art, construction, motor vehicle, in the case at hand the Kleine-Brogel military base, belonging to the Belgian State represented by the Minister of National Defense, the perpetrators having had to assume that one or more people were present at the time of the explosion, the resolution to commit the crime having been demonstrated by outside acts that form a beginning of performance of that crime and that were only suspended or only failed to achieve their aim due to circumstances outside the will of the perpetrators;

* * *


D.      [Mr. Trabelsi] between May 1, 2001, and October 3, 2001, being the instigator of an association formed for the purpose of attacking people or property, by the perpetration of crimes leading to imprisonment of twenty to thirty years, of fifteen to twenty years, or of ten to fifteen years (in the case at hand, an association of people who, in one manner or another, favored the project to carry out a terrorist attack);

* * *

> Q.    [Mr. Trabelsi] on an undetermined date between May 3, 2001, and
> October 1, 2001 in violation of Articles 1 and 2 of the law dated
> July 29, 1934, prohibited private militias, having created,
> contributed to or been part of a private militia or any other
> organizations of individuals whose purpose is to use force[.]

*Belgium v. Aberkan, et al.*, Nos. FD.21.98.62/03 and FD.35.9859/03, Court of Appeal of

Brussels, 12th Chamber (June 9, 2004) [ECF No. 70-2] at 19-26.   Mr. Trabelsi was charged with

and convicted of having "committed the violations or directly cooperated in the commission

thereof; provided assistance, by any act, in the commission thereof such that without his

assistance, the crimes or offenses could not have been committed; [and] through gifts, promises,

threats, abuse of authority or power, *conspiracy* or criminal deception, directly provoked the

commission of those crimes or offenses[.]"   *Id.* at 18.   As the Brussels Court of Appeal noted,

the acts underlying the charges and convictions were committed between July 14, 1998 and

February 8, 2002, and constituted a "successive and continuous demonstration of the same

criminal intent . . . ."   *Id.* at 28.

On April 7, 2006, the United States government obtained an indictment in this matter.

ECF No. 3.   On November 16, 2007, the government obtained a superseding indictment.   ECF

No. 6.

On April 4, 2008, the United States filed a formal request seeking Mr. Trabelsi's

extradition from Belgium based on the superseding indictment.   *See* Ex. 1 (Extradition Package

Sent to Belgium, Apr. 4, 2008).   In response to this request for extradition, on November 19,

2008, the Chamber of the Court of First Instance of Nivelles, in Belgium, issued an order which:

> Render[ed] enforceable the arrest warrant granted on November
> 16, 2007 charged to Nizar TRABELSI, described in more detail
> above, by the federal judge Alan Kay of the United States district
> Court for the District of Columbia (United States of America),

>*except as concerns the acts declared to be 'Overt Acts,' nos. 23,*
>*24, 25, and 26, listed in paragraph 10 of the first count and*
>*expected to be repeated in support of the other three counts.*

*See* Ex. 2 at 7 (Order, Chamber of Court of First Instance of Nivelles, Nov. 19, 2008) (emphasis

added).

Overt Acts 23, 24, 25, and 26 are the acts listed in the superseding indictment that

occurred in Belgium and relate to the alleged conspiracy and attempt to bomb the Kleine Brogel

military base.   Specifically, these portions of superseding indictment provide:

>23)   In or about July 2001, in Uccle, Brussels, Belgium, NIZAR
>TRABELSI rented an apartment.
>
>24)   In or about July and August 2001, in Belgium, NIZAR
>TRABELSI bought quantities of chemicals , including acetone,
>sulfur, nitrate, and glycerine, to be used in manufacturing a 1,000-
>kilogram bomb.
>
>25)   In or about August 2001, in Belgium, NIZAR TRABELSI
>traveled at night with conspirators to scout the Kleine-Brogel Air
>Force Base – a facility used by United States and the United States
>Department of the Air force, and at which United States nationals
>were present – as a target for a suicide bomb attack.
>
>26)   In or about early September 2001, in the vicinity of Brussels,
>Belgium, NIZAR TRABELSI moved, and caused to be moved, a
>quantity of chemicals, including acetone and sulfur, from
>Trabelsi's apartment to a restaurant operated by a conspirator
>known to the Grand Jury, after police had visited the apartment for
>an apparently innocuous purpose.

ECF No. 6 at 8.

The November 19, 2008 Belgian court order explained that the exclusion of these overt

acts was necessary in order to avoid a violation of the *ne bis in idem* rule embodied in Article 5

of the Treaty, which prohibits extradition "when the person sought has been found guilty,

convicted or acquitted in the Requested State for the offense for which extradition is requested."

4

Treaty, Art. 5; Ex. 2 at 6-7.   The court found that because Mr. Trabelsi had been convicted in Belgium based on "the material facts that [he] committed on Belgian soil since the moment he came back from Afghanistan at the end of June or beginning July 2001 until his arrest in Uccle on September 13, 2001[,]" the arrest warrant "cannot be rendered enforceable" with regard to the listed overt acts.   *Id.*

Mr. Trabelsi appealed this ruling authorizing his extradition, but the Belgian government did not appeal the exclusion of the overt acts from the authorization.   *See* Ex. 3 (Decision of the Court of Appeal of Brussels, Indictment Chamber (Feb. 19, 2009)) at 34 (noting that Mr. Trabelsi's appeal does not address exclusion of overt acts).   Thus, the exclusion – uncontested by the Belgian authorities – remained, and Belgian authorities were bound by this order.   *See* Ex. 4 (Letter from Christophe Marchand (Mar. 22, 2019) (describing Belgian extradition law)) at 5.

The subsequent orders of Belgian courts reviewing Mr. Trabelsi's challenges to his extradition repeatedly recognized this exclusion.   On February 19, 2009, Mr. Trabelsi's direct appeal from the November 19, 2008 order was rejected by the Indictment Division of the Court of Appeal of Brussels.   *See* Ex. 3.   In rejecting Mr. Trabelsi's appeal, that court recognized the exclusion of the overt acts and noted that the exclusion was not under review by the court.   *Id.* at 34.   The court then rejected Mr. Trabelsi's appeal, in part, because "*except for*" the excluded overt acts, extradition was not requested for the same acts as those that were committed in

Belgium.[1]  *Id.*  (emphasis added).   Mr. Trabelsi appealed the appellate court ruling to the Belgian Court of Cassation.

On June 24, 2009, the Court of Cassation rejected Mr. Trabelsi's appeal, finding that it did not have the power to review the lower court's factual determinations.   *See* Ex. 5 at 4. When that opinion was rendered, the process of direct appeals from the November 19, 2008 order finding the United States warrant enforceable (with the exclusion of the Kleine Brogel overt acts) was complete.   Thus, pursuant to Belgian law, and "in view of" the courts' rulings regarding enforceability of the warrant, the Belgian prosecutor submitted the matter to the Court of Appeal of Brussels ("Chambre de mise en accusation") for an advisory opinion as to whether extradition should be granted.   *See* Ex. 6 (Legal Opinions of Professor Adrien Masset (Jan. 17, 2015 and Mar. 8, 2015) (explaining Belgian legal process)).   On June 10, 2010, the Court of Appeal issued an opinion that extradition should be granted "in view of" the prior Belgian court rulings.   *See* Ex. 7 (Opinion of Court of Appeal of Brussels (June 10, 2010)).

On November 23, 2011, the Belgian Minister of Justice[2]  granted the extradition of Mr. Trabelsi to the United States, but in doing so, recognized that the Kleine Brogel-related overt acts charged in the superseding indictment were excluded from the offenses for which Mr. Trabelsi can be convicted in the United States.   *See* Ex. 8 (Minister of Justice Opinion (Nov. 23, 2011)).   The Minister of Justice noted that his extradition decision was:

---

[1] In defense of the lower court's grant of extradition, the Belgian prosecutor argued that Mr. Trabelsi's double jeopardy claim was unfounded because the offenses charged in the United States "have nothing to do with the Belgian file (but in particular the declarations of Djamel Beghal, Richard Ried, etc.)."  Ex. 3 at 19.

[2] The Belgian Minister of Justice is the Belgian equivalent of the United States Attorney General.

> [p]ursuant to the enforcement order of 19 November, 2008 of the
> court in chambers of Brussels which rendered enforceable the
> arrest warrant issued on 7 April, 2006 by the Federal Court of the
> District of Columbia, "(. . .) except with respect to 'overt acts' no.
> 23, 24, 25 and 26, listed under paragraph 10 of count 1 and deemed
> to be included by reference in support of the other three counts."

*Id.* at 2.   And the Minister of Justice again recognized this limitation when rejecting

Mr. Trabelsi's double jeopardy claim, beginning the discussion of the issue with:

> Given that the enforcement order of 19 November, 2008 of the
> Court in Chambers of Nivelles made enforceable the arrest warrant
> of 7 April, 2006 issued by the Federal Court of the District of
> Columbia, "(. . .) except with respect to over acts no. 23, 24, 25
> and 26, mentioned in paragraph 10 of Count 1 and deemed to be
> incorporated by reference in support of the other three counts."

*Id.* at 9.   The Minister of Justice explained that the excluded overt acts were not the offenses for

which the extradition was sought, and recognized that if these acts were "hidden" charges in the

United States, the doctrine of speciality in Article 15 of the Treaty would be violated.   *Id.* at 12.

Mr. Trabelsi filed a petition seeking the annulment of the Minister of Justice's decision,

and a Belgian court denied that petition on September 23, 2013.   *See* Ex. 9 (Council of State,

Division of Administrative Litigation (Sept. 23, 2013)).   In doing so, like the other Belgian

courts and the Minister of Justice, the court recognized that extradition was *not* granted with

respect to the overt acts in paragraphs 23 through 26 of the United States indictment.   *Id.* at 4.

In discussing Mr. Trabelsi's double jeopardy claim, the court specifically listed the overt acts

"for which the extradition is granted to U.S. authorities," quoting each of the overt acts listed in

the superseding indictment, with the exception of overt acts 23, 24, 25, and 26.   *Id.* at 26-27.

The court rejected Mr. Trabelsi's double jeopardy claim based on a comparison of "the whole of

the 'overt acts' *for which extradition was granted* to the American authorities and the whole of

the Belgian charges," finding that the Belgian charges took place in Belgium while the charges in the superseding indictment "have no territorial connection to the Kingdom of Belgium[.]"  *Id.* at 27 (emphasis added).

On October 3, 2013, the Belgian government extradited Mr. Trabelsi to the United States. The Belgium law enforcement officials did so in violation of an order issued the same date from the Court of First Instances in Brussels, which directed the Belgian government to stop the extradition, and also in violation of an interim order dated December 6, 2011, from the European Court of Human Rights ("ECHR"), which directed Belgium not to extradite Mr. Trabelsi while his petition was pending before the ECHR.

On September 4, 2014, the ECHR issued a judgment on Mr. Trabelsi's petition challenging his extradition under the Convention for the Protection of Human Rights and Fundamental Freedoms.  *See* Ex. 10 (*Case of Trabelsi v. Belgium* (ECHR Sept. 4, 2014)).  The ECHR opinion describes the Belgian extradition proceedings and also recognizes that the overt acts were expressly excluded from the order authorizing enforcement of the warrant.  *Id.* at 4.

On September 15, 2014, Mr. Trabelsi moved this Court to dismiss the indictment because his extradition violated Articles 5 and 15 of the Treaty.[3]  ECF No. 70.  Article 5, the "Prior Prosecution" provision, prohibits extradition "when the person sought has been found guilty, convicted or acquitted in the Requested State for the offense for which extradition is requested."

---

[3] The motion also was based on a violation of Article 6, the "Humanitarian Considerations" provision, which provides:  "Notwithstanding the provisions of the present Treaty, the executive authority of the Requested State may refuse extradition for humanitarian reasons pursuant to its domestic law."  1987 WL 350379 at *7.  Judge Roberts denied that claim because this provision is discretionary and creates "no binding obligation."  ECF No. 124 at 27.

1987 WL 350379 at *7.   Article 15, the "Rule of Speciality" provision, provides, that "[a]

person extradited under this Treaty may not be detained, tried or punished in the Requesting

State except for . . . the offense for which extradition has been granted . . . ."   *Id.* at *10.   Judge

Roberts denied the motion to dismiss.   ECF No. 124.

 Mr. Trabelsi filed an interlocutory appeal of Judge Roberts's Order regarding Article 5 of

the Treaty.   *See United States v. Trabelsi*, 845 F.3d 1181 (D.C. Cir. 2017).   On appeal, the D.C.

Circuit held that the review of a foreign government's grant of an extradition request is "highly

deferential," and that the Belgian decision to extradite Mr. Trabelsi created "a rebuttable

presumption" that the extradition comported with the terms of the Treaty.   *Id.* at 1186, 1189.

The court agreed that the Treaty did not require a *Blockburger* analysis to determine if

prosecution was barred.   *Id.* at 1191; *see Blockburger v. United States*, 284 U.S. 299 (1932).

However, the court did not set out the appropriate test for determining whether the Treaty's Prior

Prosecution provision (Article 5) applies and did not compare the offenses charged in the United

States with the offenses of conviction in Belgium.   Instead, the court found merely that the

Belgians had used "an offense-based analysis" as required by the Treaty and "had a reasoned

basis for concluding that Trabelsi could be extradited."   *Trabelsi*, 845 F.3d at 1192.   The court

deferred to the Belgian decisions with regard to the comparison between United States and

Belgian law.[4]  *Id.*

Mr. Trabelsi did not appeal Judge Roberts's ruling on his motion to dismiss regarding Article 15 and the doctrine of speciality because that issue was not subject to interlocutory appeal.  *Id.* at 1185-86 & n.1.  Judge Roberts denied the motion to dismiss on doctrine of speciality grounds because the Court found that Belgium consented to Mr. Trabelsi's prosecution for the charges in the superseding indictment.  ECF No. 124 at 29-30.  Judge Roberts was not asked to decide, and therefore did not address, whether the government could use the evidence of the Kleine Brogel plot at trial or whether a jury instruction was necessary to ensure compliance with the Treaty and the doctrine of speciality.

In 2015, while the motion to dismiss was pending, Mr. Trabelsi also filed a petition in Belgium, seeking, in part, an order prohibiting the Belgian government from further cooperating with the United States in its prosecution of Mr. Trabelsi.  The Belgian court denied the petition, reasoning:

---

[4] The D.C. Circuit noted that the presumption afforded Belgium's decision under Article 5 "is not irrebuttable."  *Id.* at 1189.  Specifically, the court explained that "[e]vidence that might rebut the presumption would include misconduct on the part of the United States in procuring an extradition."  *Id.*  The court noted that Mr. Trabelsi had not offered such evidence.  *Id.*  Mr. Trabelsi was denied the opportunity to present such evidence.  In 2015, Mr. Trabelsi filed a motion to compel the government to produce copies of all correspondence and documents sent between the United States government and the government of Belgium in relation to the extradition of Mr. Trabelsi.  ECF No. 89.  Following a hearing held on February 24, 2015, Judge Roberts granted the motion, ECF No. 109, but the government moved for reconsideration, ECF No. 112.  Judge Roberts granted the government's motion for reconsideration, in part, and ordered the government to produce the documents to the Court for *in camera ex parte* review.  ECF No. 116.  Pursuant to that Order, the government submitted documents *in camera* on September 11, 2015, and although it is not docketed, at the request of Judge Roberts, submitted a supplement on September 14, 2015.  ECF No. 117; *see* ECF No. 118 at 2.  Judge Roberts reviewed the documents, and on September 14, 2015, denied Mr. Trabelsi's motion to compel.  ECF No. 118.  Currently pending before this Court is Mr. Trabelsi's *Motion to Reconsider Motion to Compel Discovery*.  ECF No. 179.

> assuming that Mr. Trabelsi is prosecuted in the United States for the exact same acts as those for which he was convicted in Belgium, the requested cooperation – the purpose of which is taking the elements of proof for the prosecution and the defense – will contribute to shed light on this situation and is not likely to contribute to violating the *non bis in idem* [double jeopardy] principle.

*See* Ex. 11 at 10.

The most recent order from a Belgian court reiterates that overt acts 23 through 26 are excluded from Belgium's grant of extradition.   In 2018, Mr. Trabelsi obtained new counsel in Belgium, and counsel filed a new petition with the Belgian courts seeking to prevent the Belgian government from cooperating with Mr. Trabelsi's prosecution in this case.   Counsel also sought interim relief, requesting that Belgium be required to cease its cooperation with the United States while the petition was pending.   The initial decision from the Court of First Instance of Brussels on the request for interim relief was issued on January 23, 2019.   *See* Ex. 12 (Court of First Instance of Brussels (Jan. 23, 2019)).   Although the court denied Mr. Trabelsi's request based on a *res judicata* argument – a decision that currently is on appeal – the court, like every other Belgian court, again recognized the exclusion of overt acts 23 through 26.   *Id.* at 11.   The court stated:

> [L]imits to Mr. TRABELSI's extradition were given both by the Indictment Court in its judgment of February 19, 2009 (exclusion of the "reported acts" 23 to 26) and by the ministerial order of extradition of November 23, 2011.

*Id.*

## **Argument**

As the foregoing description of the Belgian court decisions demonstrates, Belgium authorized Mr. Trabelsi's extradition for the offenses charged in the superseding indictment only

11

on the condition that Mr. Trabelsi would not be convicted in the United States for the Kleine

Brogel plot.   Belgium expressly excluded from the extradition authorization the overt acts

related to Kleine Brogel in order to ensure that he is not convicted in the United States based on

this same plot.   Accordingly, the Treaty and the doctrine of speciality encompassed in Article 15

of the Treaty require that Mr. Trabelsi not be prosecuted for or convicted of the Kleine Brogel

plot.

## I.        DOCTRINE OF SPECIALITY

The doctrine of speciality provides that "once extradited, a person can be prosecuted only

for those charges on which he was extradited."   *United States v. Sensi*, 879 F.2d 888, 892 (D.C.

Cir. 1989); *see also United States v. Alvarez-Machain*, 504 U.S. 655, 659-60 (1992) (citing

*United States v. Rauscher*, 119 U.S. 407, 430 (1886)).   This principle is specifically

incorporated into the Treaty between the United States and the Kingdom of Belgium.   Treaty,

Art. 15 ("A person extradited under this Treaty may not be detained, tried, or punished in the

Requesting State except for . . . the offense for which extradition has been granted.").   Limits on

the prosecution set by the requested state (Belgium) are binding on the requesting state (the

United States).

While the Belgian court found that the warrant for Mr. Trabelsi was enforceable, it placed

a very specific and enforceable limit on the prosecution of Mr. Trabelsi by the United States

government.   That limitation has been repeatedly recognized by the Belgian courts and was

included in the order granting Mr. Trabelsi's extradition issued by the Belgian Minister of

Justice.   Belgium authorized Mr. Trabelsi's extradition for the charged offenses *with the*

*exclusion of the Kleine Brogel overt acts* as alleged in paragraphs 23 through 26 of the

12

indictment, and that exclusion was ordered to prevent Mr. Trabelsi from being convicted for the same offenses for which he was convicted in Belgium in violation of Article 5 of the Treaty.

Specifically, in the November 19, 2008 order, the Belgian court reviewed the charges against Mr. Trabelsi and found:

> It does not seem reasonable to consider that these offenses are distinguishable from the offenses for which Nizar TRABELSI was convicted in Belgium for the only reason that his bombing project was aiming for the Kleine-Brogel American military facilities and the United States nationals that might have been inside, while these facilities are integrated in the Belgian military base which established in it and that the interested party had already been convicted for all of the acts that he committed on Belgian soil regarding this project, for the damage that he already could have caused to the nearby Belgian military infrastructures and the fatal injuries or not that he could have caused to Belgian or other non-American victims.

> In virtue of the *ne bis in idem* principle, the arrest warrant for the purpose of extradition granted on November 16, 2007, by the competent legal authority of the United States of America therefore cannot be rendered enforceable with regard to the above mentioned 'Overt Acts' [relating to the Kleine Brogel plot].

Ex. 2 at 7.   The Belgian court imposed the limitation (excluding the Kleine Brogel overt acts) to ensure that Mr. Trabelsi was not convicted twice for the same offenses in violation of the double jeopardy (*non bis in idem*) provision in the Treaty.   The decisions from the Belgian courts and the opinions of Professor Masset, Ex. 6, and Mr. Marchand, Ex. 4, demonstrate that this exclusion was, and remains, binding on the United States.

In fact, the government has conceded that this limitation is binding on the United States. *See United States' Opposition to the Defendant's Motion to Reconsider*, ECF No. 184 at 8.   The government stated:

> the defense correctly notes that Belgian Courts upheld the
> defendant's extradition, but held that the *non bis in idem* principle
> would bar the United States from relying on overt acts 23-26 in its
> prosecution of the defendant.   *See* ECF No. 179-4.   Such
> limitations are based on the doctrine of specialty, which provides
> that generally a receiving country can only prosecute an extradited
> defendant on charges identified by the sending country in their
> extradition order.   In other words, before extraditing a defendant,
> the country granting extradition can place limits on the charges the
> defendant will face following extradition.   *See generally Trabelsi*,
> 845 F. 3d at 1186-88.

*Id.*

Nonetheless, the government has previously argued that the Belgian Minister of Justice's

decision did not include the limitation in the extradition authorization and somehow vacated the

Belgian court's order.   As explained in Mr. Trabelsi's *Reply to United States' Opposition to*

*Motion to Reconsider Motion to Compel Discovery*, ECF No. 199 at 8-9, that was not possible

under Belgian law.   Thus, the government's previous argument was factually incorrect.

Nothing in the Minster of Justice's opinion "rejects" the exclusion, nor could it.   *See* Ex.

4 at 6 ("[T]he Minster of Justice has no authority to grant extradition in connection with (a

portion of) a foreign arrest warrant that has not been judicially endorsed through the requisite

exequatur decisions.").   The Belgian Minister of Justice – associated with Belgium's executive

branch – did not have the authority to overrule or modify the Belgian court's order regarding the

enforceability of the United States warrant.   *Id.*

Just as the United States Attorney General could not ignore a restriction imposed on an

extradition request by a neutral magistrate court, the Belgian Minister of Justice could not ignore

the restriction imposed by the Belgian court.   The extradition process in Belgium is very similar

to the extradition process in the United States.   In the United States, as in Belgium, "[t]he

14

ultimate decision to extradite is a matter within the exclusive prerogative of the Executive

[branch] in the exercise of its powers to conduct foreign affairs." *Escobedo v. United States*,

623 F.2d 1098, 1105 (5th Cir. 1980).   However, "[u]nder 18 U.S.C. § 3186, the Secretary of

State may not surrender any person to a foreign government unless the person has been found

extraditable by a magistrate at a hearing held under 18 U.S.C. § 3184.   Executive discretion

arises only if the magistrate determines that there is 'evidence sufficient to sustain the charge

under the provisions of the proper treaty.'" *Id.* (quoting 18 U.S.C. § 3184).   Thus, in the United

States, the Attorney General decides whether or not to extradite someone, but can do so only

consistent with a magistrate's order regarding the enforceability of the warrant seeking

extradition.   Likewise, the Belgian Minister of Justice had the authority and discretion to

determine whether or not to extradite Mr. Trabelsi, but only to the extent the Belgian court

deemed the warrant enforceable.   *See* Ex. 4, 6.

The error in the government's argument that the Belgian Minister of Justice somehow

overrode the exclusion of the Kleine Brogel overt acts is evident in the Belgian court opinion

rejecting Mr. Trabelsi's petition to vacate the Minister of Justice's decision granting extradition.

*See* Ex. 9.   After the Minister of Justice issued his decision on November 23, 2011, the Belgian

court, on September 23, 2013, issued the opinion specifically listing the overt acts "for which

extradition is granted," and that list excludes overt acts 23, 24, 25, and 26.   *See* Ex. 9 at 26-27.

In addition, most recently, a Belgian court again affirmatively recognized the exclusion

of the overt acts.   In the Belgian court's order issued on January 23, 2019, the court stated:

> [L]imits to Mr. TRABELSI's extradition were given both by the
> Indictment Court in its judgment of February 19, 2009 (exclusion
> of the "reported acts" 23 to 26) and by the ministerial order of
> extradition of November 23, 2011.

*See* Ex. 12 at 11.

Thus, it cannot be disputed that Belgium extradited Mr. Trabelsi on the condition that he not be convicted in the United States for the acts that occurred in Belgium between June 2001 and the date of Mr. Trabelsi's arrest in September 2001.   *See* Ex. 2 at 6-7 (excluding the overt acts 23 through 26 because Mr. Trabelsi had been convicted in Belgium based on "the material facts that [he] committed on Belgian soil since the moment he came back from Afghanistan at the end of June or beginning July 2001 until his arrest in Uccle on September 13, 2001").

## II.    OTHER CRIMES EVIDENCE

The government may seek to use evidence of the Kleine Brogel plot against Mr. Trabelsi to prove the offenses for which extradition was authorized.   However, because Mr. Trabelsi cannot be convicted based on the Kleine Brogel evidence, this evidence effectively constitutes evidence of uncharged misconduct.

Under Rule 404(b), such "other acts" evidence "is *not* admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character."   Fed. R. Evid. 404(b)(1) (emphasis added).   Evidence of uncharged crimes may only be admitted for another valid purpose "such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident."   Fed. R. Evid. 404(b)(2).   "The threshold inquiry a court must make before admitting similar acts evidence under Rule 404(b) is whether that evidence is probative of a material issue other than character." *Huddleston v. United States*, 485 U.S. 681, 686 (1988).   This rule is based on the presumption of innocence and the recognition that "[i]t is fundamental to American jurisprudence that 'a defendant must be tried for what he did, not for who he is.'"   *United States v. Foskey*, 636 F.2d

517, 523 (D.C. Cir. 1980) (citation omitted).   "The exclusion of bad acts evidence is founded

not on a belief that the evidence is irrelevant, but rather on a fear that juries will tend to give it

excessive weight, and on a fundamental sense that no one should be convicted of a crime based

on his or her previous misdeeds."   *United States v. Daniels*, 770 F.2d 1111, 1116 (D.C. Cir.

1985).

Although the D.C. Circuit has described Rule 404(b) as a rule of inclusion rather than

exclusion, *United States v. Bowie*, 232 F.3d 923, 926, 930 (D.C. Cir. 2000), the D.C. Circuit also

has "repeatedly emphasized the narrow scope of the 'bad acts' evidence exceptions under Rule

404(b) . . . and the continuing applicability of the Rule 403 limitation on unduly prejudicial

evidence even if an exception is satisfied."   *United States v. Nicely*, 922 F.2d 850, 856 (D.C.

Cir. 1991).   To satisfy Rule 404(b), the evidence of other crimes or acts must be (a) relevant

under Federal Rule of Evidence 401, (b) related to "a matter in issue other than the defendant's

character or propensity to commit crime," and (c) "sufficient to support a jury finding that the

defendant committed the other crime or act."   *Bowie*, 232 F.3d at 930.   "[S]uch evidence is

*never* admissible unless it is 'necessary' to establish a material fact such as 'motive, opportunity,

intent, preparation, plan, knowledge, identity, or absence of mistake or accident.'"   *United*

*States v. Shelton*, 628 F.2d 54, 56 (D.C. Cir. 1980) (emphasis added) (footnote omitted).

Rule 404(b)(2) requires the government to provide pretrial notice of any intent to seek to

admit evidence of other crimes, and the government bears the burden of demonstrating the

relevance of the "prior bad acts" it seeks to have admitted.   *See United States v. Hudson*, 843

F.2d 1062, 1066 (7th Cir. 1988); *United States v. Hogue*, 827 F.2d 660, 662 (10th Cir. 1987).

The government has not provided notice or met its burden here, and therefore, any evidence of

the Kleine Brogel plot charged in Belgium must be excluded pursuant to Rule 404(b).

Even if evidence of Mr. Trabelsi's actions in Belgium were offered for a legitimate, non-propensity purpose under Rule 404(b), this evidence should be excluded pursuant to Rule 403 because its probative value is "substantially outweighed by the danger of . . . unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting of time, or needlessly presenting cumulative evidence."   Fed. R. Evid. 403.   For the purposes of Rule 403, "[t]he term 'unfair prejudice,' as to a criminal defendant, speaks to the capacity of some concededly relevant evidence to lure the factfinder into declaring guilt on a ground different from proof specific to the offense charged."   *Old Chief v. United States*, 519 U.S. 172, 180 (1997).   Courts should also exclude "other acts" evidence pursuant to Rule 403 if its introduction will create a "trial within a trial," *United States v. Aboumoussallem*, 726 F.2d 906, 912 (2d Cir. 1984), or if the government is likely to spend more time "dealing with alleged wrongful conduct not covered by the indictment than . . . dealing with the incidents" for which the defendant is charged, *United States v. Jones*, 570 F.2d 765, 769 (8th Cir. 1978); *see also United States v. Dennis*, 625 F.2d 782, 796-97 (8th Cir. 1980) ("Confusion of the issues warrants exclusion of relevant evidence if admission of the evidence would lead to litigation of collateral issues.").

The D.C. Circuit has recognized that there are "unique dangers of unfair prejudice associated with evidence of other bad acts," *United States v. Lavelle*, 751 F.2d 1266, 1275 (D.C. Cir. 1985), *abrogated on other grounds by Huddleston v. United States*, 485 U.S. 681 (1988), and that such evidence creates "enormous danger of prejudice to the defendant" because "juries are prone to draw illogical and incorrect inferences from such evidence," *Shelton*, 628 F.2d at 56; *see also Bowie*, 232 F.3d at 931 ("Evidence of other crimes or acts

18

having a legitimate nonpropensity purpose undoubtedly may contain the seeds of a forbidden

propensity inference" and thus may be barred under Rule 403).

Even with a limiting instruction, there exists a grave danger that jurors in Mr. Trabelsi's

case will lower the bar for conviction or scrutinize the facts less searchingly because they do not

fear convicting an "innocent" man.   Moreover, jurors will have a difficult time resisting the

natural human impulse to make the impermissible inference that someone who previously

committed a terrorism crime must have also committed other terrorism offenses.   That inference

is the very inference Rule 404(b) was intended to prevent.   Given the nature of evidence of the

Kleine Brogel plot and the fact that Mr. Trabelsi may not, consistent with the terms of his

extradition, be convicted for the Kleine Brogel plot, the inevitable prejudicial impact

substantially outweighs any probative value the evidence might have regarding the charged

offenses.   Thus, the Court should exclude evidence of the Kleine Brogel plot under Rule 403.

## III.  JURY INSTRUCTION

If the Court allows the government to introduce any portion of the Kleine Brogel

evidence, in order to ensure compliance with the doctrine of speciality, Mr. Trabelsi respectfully

requests that the Court instruction the jury as follows:

> You have heard evidence that Mr. Trabelsi participated in a
> conspiracy and attempt to kill United States nationals and use a
> weapon of mass destruction at the Kleine Brogel military based in
> Belgium.   This evidence includes evidence that:
>
> (1)   In or about July 2001, in Uccle, Brussels, Belgium, Mr.
> Trabelsi rented an apartment;
>
> (2)   In or about July and August 2001, in Belgium, Mr. Trabelsi
> bought quantities of chemicals , including acetone, sulfur, nitrate,
> and glycerine, to be used in manufacturing a 1,000-kilogram
> bomb;

(3)   In or about August 2001, in Belgium, Mr. Trabelsi traveled at night with conspirators to scout the Kleine-Brogel Air Force Base – a facility used by United States and the United States Department of the Air force, and at which United States nationals were present – as a target for a suicide bomb attack; and

(4)   In or about early September 2001, in the vicinity of Brussels, Belgium, Mr. Trabelsi moved, and caused to be moved, a quantity of chemicals, including acetone and sulfur, from Trabelsi's apartment to a restaurant operated by a conspirator known to the Grand Jury, after police had visited the apartment for an apparently innocuous purpose.

It is up to you to decide whether to accept any of that evidence.

However, Mr. Trabelsi is not on trial for participating in any conspiracy or attempt related to the Kleine Brogel military base or for his actions in Belgium. You may not convict Mr. Trabelsi of any count based on evidence of Mr. Trabelsi's conduct in Belgium.

You may not convict Mr. Trabelsi of Count One, unless you find that the government has proven beyond a reasonable doubt each and every element of that offense and has done so with regard to a location outside the United States, other than Kleine Brogel.

You may not convict Mr. Trabelsi of Count Two unless you find that the government has proven beyond a reasonable doubt each and every element of that offense, and has done so with regard to United States nationals and property other than persons and property located at Kleine Brogel.   You also may not convict Mr. Trabelsi of Count Two unless you find that the government has proven beyond a reasonable doubt that he conspired and attempted to use a weapon of mass destruction other than a weapon based on the chemicals that were found at Le Nil.

You may not convict Mr. Trabelsi of Count Three unless you find that the government has proven beyond a reasonable doubt each and every element of that offense, and has done so with regard to material support other than any support provided in connection with the alleged conspiracy and attempt to bomb

Kleine Brogel.

And you may not convict Mr. Trabelsi of Count Four, unless you find that the government has proven beyond a reasonable doubt each and every element of that offense, and has done so with regard to material support other than any support provided in relation to the alleged conspiracy or attempt to bomb Kleine Brogel.

If Rule 404(b) evidence is admitted, in addition to this proposed instruction, Mr. Trabelsi requests that the Court give Instruction 2.321 (Other Crimes Evidence) of the Criminal Jury Instructions for the District of Columbia (The Redbook), regarding the specific purpose for which the evidence is admitted.

## **Conclusion**

For the foregoing reasons, Mr. Trabelsi respectfully moves this Honorable Court to exclude the use of all evidence related to Mr. Trabelsi's actions in Belgium and the alleged conspiracy and attempt to bomb the Kleine Brogel military base.   Alternatively, if any portion of that evidence is admitted, Mr. Trabelsi requests that the Court instruct the jury that he cannot be convicted based solely on the evidence of the Kleine Brogel conspiracy or his actions in Belgium.

21

Respectfully submitted,

A. J. KRAMER
FEDERAL PUBLIC DEFENDER


        /s/
_____
MARY MANNING PETRAS
CELIA GOETZL

Assistant Federal Public Defenders
625 Indiana Avenue, N.W.
Suite 550
Washington, D.C.   20004
(202) 208-7500 ext. 109