UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | |
| v. | : | 06-CR-089 (RDM) |
| **NIZAR TRABELSI** | : | |

**DEFENDANT'S MOTION *IN LIMINE* TO EXCLUDE**
**STATEMENTS MADE IN FURTHERANCE OF PLEA DISCUSSIONS**

Mr. Nizar Trabelsi, through undersigned counsel, pursuant to Federal Rule of Evidence 410, respectfully moves this Honorable Court to exclude the use as evidence of all statements Mr. Trabelsi made to authorities in interviews conducted on or after June 28, 2002, because all such statements were made during plea discussions, which had been initiated and formalized between the government and Mr. Trabelsi's counsel. Mr. Trabelsi requests an evidentiary hearing on this motion. In support of this motion, counsel submits the following.

**Background**

Mr. Trabelsi was arrested in Belgium on September 13, 2001. Between that date and June 25, 2002, Mr. Trabelsi was interviewed by Belgian officials on multiple occasions. On June 25, 2002, Belgian Magistrate Judge De Valkeneer informed the United States that Mr. Trabelsi was seeking an agreement with the United States, whereby Mr. Trabelsi would provide information in exchange for assurances that he would not be prosecuted in the United States. *See* Ex. 1 (Bates No. 0048532). On that date, according to Magistrate De Valkeneer, Mr. Trabelsi provided information to De Valkeneer to be relayed to representatives of the United States as an initial proffer for these negotiations. *Id.*

DOJ attorneys then met with Mr. Trabelsi and at least one of his attorneys on June 28,

2002. Following that meeting, on July 4, 2002, at least one DOJ attorney, Cathleen Corken, met with Mr. Trabelsi's attorneys, including Fernande Motte De Raedt, Mehdi Abbes, and Didier De Quevy. *See* Ex. 2 at 2 (report of July 5, 2002, meeting, noting that attorneys met the previous day "to arrange the parameters and conditions under which Trabelsi would agree to talk with the US authorities"). During this meeting, the attorneys for Mr. Trabelsi and Ms. Corken negotiated the terms and conditions under which Mr. Trabelsi would speak with the U.S. officials. *Id.* The attorneys discussed a possible resolution of any charges the United States could pursue against Mr. Trabelsi. The U.S. officials indicated that they were seeking Mr. Trabelsi's cooperation in the investigation and possible prosecution of other individuals and expressed particular interest in the Kleine Brogel air base. Mr. Trabelsi's attorneys indicated that, on behalf of Mr. Trabelsi, they were seeking immunity from U.S. prosecution in exchange for information. In response, the U.S. officials explained that full immunity may not be possible, but some other negotiated resolution of U.S. charges may be offered. The U.S. officials explained that they needed to speak to Mr. Trabelsi before making any offer, and that his statements would help them determine an appropriate resolution of potential charges. The parties also discussed the provision of financial assistance to Mr. Trabelsi's wife, ▮▮▮▮▮▮▮▮▮▮, and their newborn son. The U.S. officials agreed to provide monetary assistance to ▮▮▮▮▮▮ for one month and that further assistance would be contingent on the government's assessment of the information provided by Mr. Trabelsi.

After the July 4, 2002 meeting between U.S. government attorneys and Mr. Trabelsi's attorneys, Mr. Trabelsi met with U.S. officials. On July 5, 2002, Mr. Trabelsi met with DOJ attorneys, including Cathleen Corken. At least one of Mr. Trabelsi's attorneys was present for this meeting. *See* Ex. 2 at 1.

The report of the July 5, 2002 meeting notes that the parties anticipated that the terms of their agreement regarding these interviews of Mr. Trabelsi would be memorialized "under separate cover." *See* Ex. 2 at 2.  The terms of the agreement were memorialized in a document dated and signed by government officials on July 8, 2002.  *See* Ex. 3 (Bates Nos. 0048760 through 0047763).  The agreement was entitled "Agreement Relating To The Provision of Information," and noted that an evaluation of the information provided by Mr. Trabelsi would be used "in making prosecutive decisions." *Id.* at 2.  The agreement provided that it was "not a cooperation, plea or immunity agreement and the Government [made] no representations about the likelihood that any such agreement will be reached in connection with this proffer." *Id.*

The agreement specifically noted that the provisions of the agreement applied to the meeting on July 5, 2002, meetings "during the week of July 7, 2002, and to continuation of these meetings on the dates that appear below." *Id.* at 2-3.  The meetings during the week of July 7, 2002 occurred on July 9 and 10, 2002.  The copy of the agreement provided to undersigned counsel does not have continuation dates listed.  However, the meetings between the DOJ attorneys and Mr. Trabelsi, for the purpose of determining an appropriate resolution of potential charges against Mr. Trabelsi, continued on August 29, August 30, September 2, October 3, and October 16, 2002.  Mr. Trabelsi spoke to the DOJ attorneys on each of these occasions as part of discussions regarding the possible resolution of any charges that could be filed in the United

States.[1]

All of Mr. Trabelsi's statements with DOJ personnel from June 28 through October 16, 2002 should be excluded from trial as statements made during and in furtherance of plea discussions.[2] Relatedly, in addition to the interviews at which DOJ attorneys were present, after plea negotiations began, Mr. Trabelsi made statements to Belgian officials in furtherance of those same discussions. Those statements to Belgian officials must also be excluded under Rule 410 because DOJ attorneys and Belgian officials were engaged in a joint venture at that time of the investigation. *Cf. United States v. Abu Ali*, 528 F.3d 210, 228 (4th Cir. 2008) (*Miranda* applies to statements made to foreign official engaged in joint venture with United States law enforcement agents).

## Argument

Mr. Trabelsi's statements to DOJ attorneys in 2002 must be suppressed because they were made in the course of plea negotiations. Federal Rule of Criminal Procedure 410 provides:

> (a) **Prohibited Uses.** In a civil or criminal case, evidence of the following is not admissible against the defendant who made the plea or participated in the plea discussions:
>
> \* \* \*

---

[1] The government wanted Mr. Trabelsi to speak about an alleged conspiracy to attack the Kleine Brogel air base and other allegations, and in the course of interviews, officials endeavored to press him to discuss the air base allegations and other matters. Officials indicated to Mr. Trabelsi that if he did not speak with the government about these matters and if he did not provide the exact information about Kleine Brogel that the government sought, he risked prosecution by the United States and potentially other jurisdictions on various terrorism-related charges and risked loss of contact with his family. Mr. Trabelsi reasonably could have perceived this as a threat.

[2] United States Department of Justice ("DOJ") attorneys were present for interviews of Mr. Trabelsi on June 28, July 5, July 9-10, August 29-30, September 2, October 3, and October 16, 2002. According to the information produced pursuant to Federal Rule of Criminal Procedure 16, apart from statements made during his extradition on October 3, 2013, Mr. Trabelsi made no other statements to any other agent of the United States government.

>> (4)  a statement made during plea discussions with an attorney for the prosecuting authority if the discussions did not result in a guilty plea or they resulted in a later-withdrawn guilty plea.

The purpose of the rule is to encourage plea negotiations. *S.E.C. v. Johnson*, 534 F. Supp. 2d 63, 67 (D.D.C. 2008) ("Rule 410 was created to promote active plea negotiations and pela bargains, which our Supreme Court has acknowledged are 'important components of this country's criminal justice system.'" (quoting *United States v. Davis*, 617 F.2d 677, 683 (D.C. Cir. 1980)). "[A]bsent the protection of Rule 410, 'the possibility of self-incrimination would discourage defendants form being completely candid and open during plea negations.'" *Id.*

Whether parties were engaged in plea discussions is a factual question to be determined on a case-by-case basis. *S.E.C. v. Johnson*, 534 F. Supp. at 67; *United States v. Serna,* 799 F.2d 842, 848 (2d Cir. 1986); *United States v. Grant,* 622 F.2d 308, 312 (8th Cir. 1980).  In the D.C. Circuit, the test is "whether the parties intended to 'dispose of the matter through extraction of information and, possibly a plea.'" *Johnson*, 534 F. Supp. 2d at 67 (quoting *United States v. Wood,* 879 F.2d 927, 936 (D.C. Cir. 1989)).  The government bears the burden of proving that discussions were not plea negotiations.  *United States v. Robertson*, 582 F.2d 1356, 1366 n.21 (5th Cir. 1978) (en banc).

Here, as in *Johnson*, the parties undoubtedly were seeking to dispose of potential charges against Mr. Trabelsi by having Mr. Trabelsi provide information to the government, and possibly enter a plea.  No other interpretation of the meetings is possible.

In *Johnson*, the court held that a corporate executive's statements to prosecutors and FBI agents were made in the course of plea discussions and thus were inadmissible under Rule 410. 534 F. Supp. 2d at 66.  The court noted two key indicators that the government "was seeking discussions with [the defendant] in order to extract information and possibly reach a plea," *id.* at

67, both of which are present in Mr. Trabelsi's case.  First, the statements were made during meetings pursuant to a proffer agreement.  "Although the existence of a signed proffer agreement may not automatically turn any subsequent discussion into plea bargaining *per se,* it is indicative of that conclusion.  As the Second Circuit has held, '[o]rdinarily, statements made by a defendant during plea negotiations, including proffer sessions, are inadmissible at trial.'"  *Id.* at 67-68 (citing *United States v. Velez,* 354 F.3d 190, 194 (2d Cir. 2004); *United States v. Barrow,* 400 F.3d 109, 116 (2d Cir. 2005) ("[s]tatements made by defendants in proffer sessions are covered by Rule 410")).  Like the statements in *Johnson*, Mr. Trabelsi's statements were made during meetings with U.S. officials pursuant to a proffer agreement.  *See* Ex. 3.

Second, the meetings in *Johnson* occurred with both the Assistant United States Attorney and defense counsel present, which "provide[d] strong evidence that the meetings involved more than a mere 'offer of cooperation.'"  534 F. Supp. 2d at 68 (citing *Serna,* 799 F.2d at 848 (noting participation of retained counsel and AUSA in discussions as evidence that plea negotiations had taken place)).  Like the meetings in *Johnson*, the meetings here occurred in the presence of both a Department of Justice attorney and Mr. Trabelsi's Belgian defense counsel.  *See* Ex. 3 at 1 ("During consultations with Trabelsi's defense counsel an agreement was worked out for the purpose of gaining access to and debriefing Trabelsi relative to his information.").  Moreover, the meetings began when Judge De Valkeneer notified U.S. officials that Mr. Trabelsi was seeking an agreement of immunity from prosecution, *i.e.*, the resolution of potential criminal charges, in exchange for information.  *See* Ex. 1 at 1.

The D.C. Circuit's holding in *Wood* further demonstrates that Mr. Trabelsi's statements were made during plea discussions.  In that case, the defendant and her attorney met with the prosecutor and two government investigators pursuant to a letter that referenced "the procedures

which will be followed as we continue our negotiations concerning the possible disposition of the above-captioned case." 879 F.2d at 936. The Court found that the meeting constituted a plea negotiation and that the letter's "reference indicate[d] that the government perceived the discussion to be part of their efforts to dispose of the matter—through extraction of information from [the defendant] and, possibly, a plea." *Id.*

Much like the letter's reference in *Wood*, language in the proffer agreement here indicates that the government viewed the discussions as part of its efforts to extract information and potentially reach a plea agreement. The proffer agreement states: "The Witness has agreed to provide the Government with information, and to respond to questions posed by the Government, *so that the Government may evaluate Witness's information and responses in making prosecutive decisions*." Ex. 3 at 2 (emphasis added). This provision of the agreement and the agreement's title ("Agreement Relating To The Provision of Information") both clearly signal the government's intent to elicit information from Mr. Trabelsi. The above-italicized phrase indicates that the government would consider this information in deciding whether and how to pursue prosecution of Mr. Trabelsi in the United States or to dispose of the prosecution, possibly by offering him a plea. Because the proffer agreement makes plain the government's intention to obtain information from Mr. Trabelsi in order to potentially resolve his case, discussions pursuant to that agreement qualify as plea negotiations and are not admissible at trial.

**Conclusion**

For the foregoing reasons, and such other reasons as may be presented at a hearing on this motion, Mr. Trabelsi respectfully moves this Honorable Court, pursuant to Rule 410, to exclude the use as evidence of all statements made to U.S. and Belgian officials conducting the criminal investigation in furtherance of plea discussions from June 28, 2002 through October 16, 2002.

Respectfully submitted,

| | |
|---|---|
| A. J. KRAMER | EDWARD J. UNGVARSKY |
| FEDERAL PUBLIC DEFENDER | UNGVARSKY LAW, PLLC |
| /s/ | /s/ |
| _____ | _____ |
| SANDRA ROLAND | EDWARD J. UNGVARSKY |
| | Ungvarsky Law, PLLC |
| /s/ | 114 North Alfred Street |
| _____ | Alexandria, VA 22314 |
| CELIA GOETZL | (571) 207-9710 |
| Assistant Federal Public Defenders | |
| 625 Indiana Avenue, N.W., Suite 550 | |
| Washington, D.C. 20004 | |
| (202) 208-7500 | |