## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES,<br><br>    v.<br><br>NIZAR TRABELSI,<br><br>       *Defendant.* | No. 06-cr-89 (RDM) |

## <u>MEMORANDUM OPINION AND ORDER</u>

After serving a ten-year prison term in Belgium for related crimes, Defendant Nizar Trabelsi was extradited to the United States to face charges for, among other things, conspiracy to kill U.S. national outside the United States, in violation of 18 U.S.C. §§ 2332(b)(2) and 1111(a), and conspiracy and attempt to use weapons of mass destruction, in violation of 18 U.S.C. §§ 2332a and 2. Among the overt acts, the Indictment alleges that in August 2001, Trabelsi "traveled at night with conspirators to scout the Kleine-Brogel Air Force Base—a facility used by the United States and the United States Department of the Air Force, and at which United States nationals were present—as a target for a suicide bomb attack." Dkt. 6 at 8 (Superseding Indictment). Trial is scheduled to commence on May 8, 2023.

Over the course of nearly a decade, Trabelsi has filed a series of motions and appeals arguing that his extradition was unlawful and that the Indictment should therefore be dismissed. This Court and the D.C. Circuit have—between the two courts—five times considered and rejected Trabelsi's arguments. *See United States v. Trabelsi*, No. 06-cr-89, 2015 WL 13227797 (D.D.C. Nov. 4, 2015) ("*Trabelsi I*"); *United States v. Trabelsi*, 845 F.3d 1181 (D.C. Cir. 2017) ("*Trabelsi II*"); *United States v. Trabelsi*, No. 06-cr-89, 2020 WL 1236652 (D.D.C. Mar. 13,

2020) ("*Trabelsi III*"); *United States v. Trabelsi*, No. 06-cr-89, 2021 WL 430911 (D.D.C. Feb. 5, 2021) ("*Trabelsi IV*"); *United States v. Trabelsi*, 28 F.4th 1291 (D.C. Cir. 2022) ("*Trabelsi V*"). Trabelsi now takes a sixth bite at the apple.  Relying on a September 12, 2022 decision by the Brussels Court of Appeal and a December 13, 2022 Diplomatic Note from the Belgian state, he asks this Court to revisit the issue yet again, to dismiss his indictment, and to conclude that Mr. Trabelsi's prosecution violates Article 5 and 15 of the Extradition Treaty.  Dkt. 507 at 7; Dkt. 517 at 3.  But neither the Brussels Court of Appeal decision nor the Diplomatic Note "constitute significant new evidence that would warrant deviating from the law of the case."  *Trabelsi V*, 28 F.4th at 1300.

The Court will, accordingly, **DENY** Trabelsi's renewed motion to dismiss, Dkt. 507.

## I.  BACKGROUND

This Court and the D.C. Circuit have repeatedly recounted the factual and procedural history of this case in great detail, and the Court incorporates by reference the background provided in those decisions.  *See Trabelsi I*, 2015 WL 13227797, at *1; *Trabelsi II*, 845 F.3d at 1184–85; *Trabelsi III*, 2020 WL 1236652, at *1–7; *Trabelsi IV*, 2021 WL 430911, at *2–10; *Trabelsi V*, 28 F.4th at 1294–97.  As relevant here, these decisions describe a long-running dispute between the Belgian courts and the Belgian state regarding Trabelsi's extradition, beginning with a 2008 decision by the Belgian Court of First Instance.  *See, e.g.*, *Trabelsi V*, 28 F.4th at 1294.  In that decision, which was later affirmed by the Brussels Court of Appeal and the Belgian Court of Cessation, the Court of First Instance concluded that the Extradition Treaty between the U.S. and Belgium permitted Trabelsi's extradition, except as to four "overt acts" referenced in the Indictment in this case.  *Id.* at 1294–95.  In the words of the Brussels Court of First Instance, those overt acts "very precisely correspond to the offenses[] committed on

2

Belgian soil," *Trabelsi IV*, 2021 WL 430911, at *3 (alteration in original) (quoting Dkt. 367-9 at

7), and, thus, in that court's view, Trabelsi's extradition with respect to those overt acts would

violate the *non bis in idem* (meaning, "not twice") provision found in Article 5 of the Extradition

Treaty Between the United States of America and the Kingdom of Belgium, art. 5, Apr. 27,

1987, S. Treaty Doc. No. 104-7 (hereinafter "Extradition Treaty" or "Treaty").  *Id.* at *2.  The

*non bis* principle is "akin to the double jeopardy rule in American law," *id.*, although unlike its

domestic law counterpart, it applies to charges brought by different sovereigns.

 Of particular relevance here, the Belgian state took a different view from the Belgian

courts, concluding in its November 23, 2011 Extradition Order that because the Treaty uses the

word "offense," it is "not the facts, but their qualification, *the offenses*, that have to be identical"

for the *non bis* principle to apply.  *Id.* at *3 (emphasis added) (quoting Dkt. 367-17 at 11).  In

other words, because the Treaty bars extradition "when the person sought has been found guilty,

convicted[,] or acquitted in the Requested State for *the offense* for which extradition is" sought,

Treaty, *supra*, art. 5 (emphasis added), the Minister concluded that, "[u]nless all the elements

constituting *an offense* are the same under both U.S. and Belgian law, '[t]he double jeopardy

principle does not exclude the possibility to use these elements,'" *Trabelsi IV*, 2021 WL 430911,

at *3 (emphasis added) (second alteration in original) (quoting Dkt. 367-17 at 12).

 In *Trabelsi II*, the D.C. Circuit took a "deferential approach" to reviewing the Extradition

Order and concluded that "the scope of Article 5 [was] a matter for Belgium."  845 F.3d at 1189.

The Court, accordingly, declined to "second-guess [Belgium's] grant of extradition" absent some

showing of (1) "misconduct on the part of the United States;" (2) "the absence of review of the

extradition request by the requested party;" or (3) "a showing that the requested state or party did

not apply the correct legal standard adopted in the Treaty."  *Id.* (internal quotation marks

omitted).  Because Trabelsi had not shown any of the above, and because "[t]he extradition grant did not exclude any of the offenses included in the request for extradition," the Court "presume[d] that Belgium ha[d] determined that none of the offenses in the indictment violate Article 5 of the Treaty" and deferred to that determination.  *Id.*

Since the D.C. Circuit reached that conclusion in 2017, Trabelsi has continued to challenge his extradition in Belgium.  And, although the Belgian courts have, in the intervening years, reaffirmed their position that Belgian law did not allow for Trabelsi's prosecution "for the facts set out in 'Overt Acts' Nos. 23, 24, 25[,] and 26," Dkt. 373-1 at 72, this Court and the D.C. Circuit have clarified that any reconsideration of their prior decisions would be "limited to the proper interpretation of the *original* 2011 extradition order."  *Trabelsi IV*, 2021 WL 430911, at *6 (emphasis added).  "That is, . . . subsequent judicial decisions from the Belgi[an] court [are] relevant only if they provide[] 'significant, new evidence about the meaning of the Minister's 2011 extradition order.'"  *Id.* (quoting *Trabelsi III*, 2020 WL 1236652, at *9).  Because "the disagreement between the Belgian state and its courts was plain at the time of *Trabelsi II*," *Trabelsi V*, 28 F.4th at 1300, the intervening decisions reiterating that disagreement did not present "significant new evidence" that the Indictment in this case "charges the same offenses as in the Belgian prosecution;" nor did they "detract from the deference this Court owes to the Belgian state," *id.* at 1302.

Trabelsi now moves for reconsideration (or renews his motion to dismiss) once again, this time based on a September 12, 2022 decision by the Brussels Court of Appeal and the resulting Diplomatic Note sent by the Belgian state (at the direction of the Belgian court) on December 13, 2022.  Dkt. 507 at 5–6.  The Brussels Court of Appeal decision recognizes—and merely applies—the prior orders of Belgian courts respecting Article 5 of the Treaty.  Echoing

the prior decisions from the Belgian courts, the Court of Appeal once again opined: "Article 5.1 of the Extradition Treaty of 1987 *concerns the identity of the act and not the identity of the qualification*." *See* Dkt. 509-2 at 54 (emphasis in original) (internal quotation marks omitted). The decision also noted that "the Minister d[id] not respect the exclusion from the exequatur of overt acts 23 to 26," *id.* at 12, and, it "[d]irect[ed] the Belgian state to address to the American authorities a diplomatic note whereby it requests [Trabelsi's] return on Belgian territory by committing to negotiating among them the possible modalities of such repatriation," *id.* at 83.

The Belgian state complied with that direction on December 13, 2022, writing the following in a Diplomatic Note:

> On September 12, 2022, the Brussels Court of Appeals ordered the Belgian Government to request by diplomatic note the return of Nizar Trabelsi and to discuss the conditions of his return. The Government of Belgium transmits this Diplomatic Note, with the abovementioned request, in fulfillment of the order.

Dkt. 507-2 at 2. On January 19, 2023, the government informed this Court that, "[h]aving considered the Belgian diplomatic note, the United States government does not intend to abandon this prosecution or [to] return defendant Trabelsi to Belgium." Dkt. 500 at 1.

Drawing on the Diplomatic Note, Trabelsi once again asks the Court to reconsider its prior decisions and to dismiss the Indictment on the ground that the prosecution is barred by Articles 5 and 15 of the Treaty.

## II.  ANALYSIS

As the Court observed in *Trabelsi IV*, Trabelsi does not merely request that this Court reconsider its prior decisions, but he also asks the Court, in effect, to reconsider a prior decision (now, two prior decisions) rendered by the D.C. Circuit. *Trabelsi IV*, 2021 WL 430911, at *6. It is, if anything, an understatement to say that Trabelsi faces a "heavy burden" in seeking that exceptional relief. *Id.* (quoting *Trabelsi III*, 2020 WL 1236652, at *8). Although a district court

may reconsider a question previously resolved in an appellate decision in "extraordinary circumstances," including where significant new evidence has come to light, those exceptions should be applied "only in very special situations" in light of the "respect for the proper roles of trial and appellate courts and the importance of judicial economy." *Id.* (quoting same). The "mandate rule," which is "an even more powerful version" of the law-of-the-case doctrine, "*requires* a lower court to honor the decisions of a superior court in the same judicial system." *Trabelsi III*, 2020 WL 1236652, at *8 (emphasis in original) (quoting *LaShawn A. v. Barry*, 87 F.3d 1389, 1393 n.3 (D.C. Cir. 1996)). Because Trabelsi seeks reconsideration of a question already decided not once, but twice, by the D.C. Circuit, he bears the burden of "demonstrating that the evidence is new, and not merely cumulative; that it would lead to a different result; and that the evidence could not have been previously adduced through reasonable diligence." *Id.*

As in *Trabelsi IV*, "the Court's focus is on 'the breadth and effect of the Minister of Justice's extradition order' of November 23, 2011." 2021 WL 430911, at *12 (quoting *Trabelsi III*, 2020 WL 1236652, at *7). For Trabelsi to succeed, then, "he must present new evidence that would alter the Court's interpretation of that [extradition] order, which issued [more than] a decade ago;" any new evidence would, to be relevant, have to "undermine[] the [D.C. Circuit's] reading of the extradition order itself." *Id.*; *see also Trabelsi V*, 28 F.4th at 1300 ("Under the text of the Treaty and the act of state doctrine, this Court should defer to the Belgian state's Extradition Order and its explanations of it in subsequent diplomatic notes, rather than to the Belgian court's interpretation."). The Court sees nothing in the Brussels Court of Appeal

decision or in the December 13, 2022 Diplomatic Note that alters—or even speaks to—the Court's understanding of the extradition order relied upon in *Trabelsi I*, *II*, *III*, *IV*, and *V*.[1]

First, as with the previous Belgian court decisions, the Brussels Court of Appeal decision "adds nothing new to the analysis and merely reiterates the Belgian court's view that the exequatur prohibits the prosecution of the four Overt Acts." *Trabelsi V*, 28 F.4th at 1300; *see* Dkt. 509-2 at 54 (noting that the Court of Cassation "issued two rulings" as to the "*ne-bis-idem* principle" incorporated in Article 5 of the Treaty, "which have the force of res judicata with respect to the Parties and the Court"). Although the decision concludes that the prior Belgian court decisions "do[] not grant exequatur for acts for which [Trabelsi] had been sentenced in Belgium," Dkt. 509-2 at 56 (emphasis removed), the Brussels Court of Appeal does not assert that the Minister of Justice excluded those overt acts from his extradition order. To the contrary, the decision recognizes that "the Minister d[id] not respect the exclusion from the exequatur of overt acts 23 to 26" in its 2011 Extradition Order. *Id.* at 12. That assertion confirms the D.C. Circuit's conclusions in *Trabelsi V* "that the Minister of Justice abstained from excluding the four Overt Acts" and that the Belgian Minister and the Belgian courts advanced "conflicting interpretation[s]" of Article 5. *Trabelsi V*, 28 F.4th at 1300–01. Like the decision of the Belgian court addressed in *Trabelsi V*, the most recent decision "does not reflect a change in the Belgian courts' or government's position from those originally considered in *Trabelsi II*." *Id.* at 1301.

---

[1] In a concurring opinion in *Trabelsi V*, Judge Rao challenged Trabelsi's premise that Article 5 of the Treaty "place[s] [a] bar on a U.S. prosecution after extradition by Belgium." 28 F.4th at 1304 (Rao, J., concurring). "[O]n its face," Judge Rao explained, "Article 5 says nothing about whether, *after* extradition has occurred, the United States may prosecute [Trabelsi] for the same offense he was convicted of in Belgium." *Id.* (emphasis in original). Although Judge Rao's concurring opinion is persuasive, the Court need not reach the question of whether Article 5 can bar post-extradition prosecutions because, in any event, the law-of-the-case doctrine and the D.C. Circuit's decisions conclusively bar Trabelsi's renewed motion to dismiss.

Nor does the December 13, 2022 Diplomatic Note constitute significant (or even material) new evidence that would warrant revisiting the law of the case. The substance of the Diplomatic Note is concise and can be quoted in whole:

> On September 12, 2022, the Brussels Court of Appeals ordered the Belgian Government to request by diplomatic note the return of Nizar Trabelsi and to discuss the conditions of his return. The Government of Belgian transmits this Diplomatic Note, with the abovementioned request, in fulfillment of the order.

Dkt. 507-2 at 2. As with previous communications from the Belgian state, *see Trabelsi V*, 28 F.4th at 1301–02, the Diplomatic Note's language suggests "that the Ministry only transmitted the judgment because it was obligated to do so, not because it represented the Belgian state's position," *id.* at 1301; *see also id.* at 1302 (concluding that an "expla[nation] that [the state] was ordered to transmit . . . [a notice] of [a] Court's order to the proper U.S. authorities" was "not the same as adopting the Belgian court's position on the Extradition Order as its own"). Perhaps more notably, the language of the December 13, 2022 Diplomatic Note—even if it were taken as the official position of the Belgian government—does not itself call into question this Court's (or the D.C. Circuit's) prior understanding of the 2011 Extradition Order. "[R]equest[ing] . . . the return of Nizar Trabelsi" ten years after his extradition, Dkt. 507-2 at 2, does not in itself suggest that the Justice Minister's 2011 Extradition Order interpreted Article 5 to bar the prosecution of the four Overt Acts. As before, then, neither the Belgian court's decision nor the resulting diplomatic note "present[s] significant new evidence or detract from the deference this Court owes to the Belgian state" as to the interpretation of Article 5. *Trabelsi V*, 28 F.4th at 1302.

The Court would say that the present motion is on all fours with the arguments made— and rejected—in *Trabelsi V*, but, in fact, the argument he presses here is weaker. In his earlier appeal, Trabelsi asked the D.C. Circuit to conclude that his extradition was unlawful because the Belgian state sent the United States a letter stating:

On February 26th, 2020, the First Instance (Civil) Court for Brussel has ordered the Belgian Government to formally notify its judgment, including the following wording as translated into English:

"In accordance with the analysis that prevails in Belgium, the extradition of Mr. Trabelsi does not make possible to prosecute him in the United States so that he can be tried for the facts stated in Overt Acts nos. 23, 24, 25[,] and 26 . . . of the U.S. warrant of arrest that is at the root of the extradition . . . , i.e. the facts related to the planned attack on Kleine Brogel military base."

Dkt. 375-1 at 1 (emphasis removed). In response, the D.C. Circuit observed that Trabelsi's "argument strain[ed] credulity;" that "[t]he letter does not purport to stake out Belgium's official position on the scope of Trabelsi's extradition;" and that, "[t]o the contrary, it opens with the stipulation that the Court of First Instance 'has ordered the Belgian Government to formally notify its judgment.'" 28 F.4th at 1301. Nothing has changed in the most recent Diplomatic Note, which also opens with the stipulation that the Belgian state is acting in response to an order from the Brussels Court of Appeal. Dkt. 507-2 at 2. But beyond that, the most recent Diplomatic Note says nothing about this "prosecution" and, instead, merely informs the United States government that, at least in the view of the Belgian courts, Trabelsi should be returned to Belgium. *Id.* On any reading, that is a request directed at the executive branch; it is not a question for the courts. In short, in light of binding D.C. Circuit precedent, the most recent Diplomatic Note does not constitute significant new evidence; to the contrary, it is immaterial.[2]

The Court will, accordingly, deny Trabelsi's motion to reconsider as to Article 5.

---

[2] Trabelsi also alludes to the possibility that the grand jury instructions in this case might support his contention that the Indictment was issued based on the grand jury's finding of probable cause regarding the alleged attempt to bomb the Klein Brogel military base, thus supporting his argument that this case and his prosecution in Belgium overlap. Dkt. 507 at 7. But that argument ignores the fact that the D.C. Circuit has already held that what matters is whether the Belgian Minister limited the scope of the extradition and that the Minister looked to the *elements of the offense*, rather than the *acts* encompassed within the prosecution. *Trabelsi II*, 845 F.3d at 1189.

Finally, Trabelsi also renews his motion to dismiss the Indictment pursuant to Article 15 of the Treaty. Dkt. 507 at 7. Article 15 provides that "[a] person extradited under this Treaty may not be detained, tried, or punished in the Requesting State except for . . . the offense for which extradition has been granted." Treaty, *supra*, art. 15. This provision codifies the doctrine of specialty, which provides that, "once extradited, a person can be prosecuted only for those charges on which he was extradited." *United States v. Sensi*, 879 F.2d 888, 892 (D.C. Cir. 1989). This is the third time Trabelsi raises a specialty argument. And here, as in *Trabelsi I* and *Trabelsi III*, the Court concludes that his "motion fails because it turns on the scope of Belgium's grant of extradition;" the D.C. Circuit and this Court have already "concluded that the Minister of Justice rejected the Belgian courts' overt act exclusion and that Belgium extradited Trabelsi without that exclusion." *Trabelsi III*, 2020 WL 1236652, at *14 (citing *Trabelsi II*, 845 F.3d at 1184–85). As already explained, the facts relating to the extradition decision have not changed since the D.C. Circuit reached that conclusion. *See supra* at 7–9. Nor has Trabelsi offered any evidence to suggest that "the record of communications between the two nations" since Trabelsi's extradition demonstrates that the Indictment or prosecution runs afoul the terms of the 2011 extradition. *Trabelsi III*, 2020 WL 1236652, at *14 (quoting *United States v. Campbell*, 300 F.3d 202, 211–12 (2d Cir. 2002)). The most recent Diplomatic Note—which does not address the 2011 Extradition Order and, like those before it, "merely provided, without adopting, the conclusion of the [Brussels Court of Appeal] to the U.S. government"—certainly does not evidence a change in the Belgian state's views. *Id.*

The Court, accordingly, for the third time "rejects the premise at the core of Trabelsi's motion." *Id.* at *15.

## CONCLUSION

The events relevant to this case occurred over twenty-one years ago, and Trabelsi was extradited to the United States almost a decade ago.  Since then, he has litigated and relitigated the precise issues that he raises in his most recent motion, and, since then, the relevant evidence has grown increasingly stale and difficult to obtain.  The Belgian courts will undoubtedly issue additional decisions, and the dispute between the Belgian state and the Belgian judiciary will continue.  None of that makes a difference, however, because both this Court and the D.C. Circuit have held that what matters is what the Belgian Minister did in 2011 when he granted the U.S. government's request to extradite Trabelsi to the United States—and that factual question has been thoroughly vetted in this Court and in the D.C. Circuit, and it will not change with time.

At some point, this delay must come to an end, and this case must proceed to trial. Because Trabelsi offers no new evidence that is even remotely material under the law of the case—and because any argument to the contrary is frivolous—that time is now.  The Court, accordingly, hereby **DENIES** the defendant's motion to dismiss, Dkt. 507, on the ground that it seeks to relitigate (for the third time) settled issues of law and fact.

**SO ORDERED**.

/s/ Randolph D. Moss
RANDOLPH D. MOSS
United States District Judge

Date:  March 10, 2023

11