**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

|  |  |
|---|---|
| UNITED STATES,<br><br>            v.<br><br>NIZAR TRABELSI,<br><br>            *Defendant.* | No. 06-cr-89 (RDM) |

## MEMORANDUM OPINION AND ORDER

In April 2006, a federal grand jury returned an indictment against Defendant Nizar Trabelsi containing four counts, including Conspiracy to Kill U.S. Nationals Outside the United States, in violation of 18 U.S.C. §§ 2332(b)(2) and 1111(a), and Conspiracy and Attempt to Use Weapons of Mass Destruction, in violation of 18 U.S.C. §§ 2332a and 2.[1]  Dkt. 3 at 1–8.  Among other overt acts, the superseding indictment alleges that Trabelsi "met with Osama bin Laden" in the Spring of 2001 near Kandahar, Afghanistan "and offered to carry out a suicide bomb attack against United States interests," Dkt. 6 at 6; that he "obtained money from an al Qaeda associate for use in carrying out his mission to bomb a United States target," *id.* at 7; that in July and August 2001, Trabelsi "bought quantities of chemicals" in Belgium "to be used in manufacturing a 1,000-kilogram bomb," *id.* at 8; and that he "traveled at night with conspirators to scout the Kleine-Brogel Air Force Base—a facility used by the United States and the United States

---

[1] The Indictment also charged Trabelsi with Conspiracy to Provide Material Support and Resources to a Foreign Terrorist Organization, in violation of 18 U.S.C. § 2339B and with Providing Material Support and Resources to a Foreign Terrorist Organization, in violation of 18 U.S.C. §§ 2339B and 2.  Dkt. 3 at 9–10.  On the U.S. government's motion and with the consent of Trabelsi, these two counts were subsequently dismissed with prejudice.  *See* Dkt. 231; Min. Order (June 10, 2019).

Department of the Air Force, and at which United States nationals were present—as a target of a suicide bomb attack," *id.* In 2013, after serving a ten-year sentence in Belgium for, among other things, attempting to destroy the Kleine-Brogel Air Force Base, Trabelsi was extradited to the United States on the instant charges.

Now, almost a decade later and a little over three weeks before trial is scheduled to commence, Trabelsi seeks a stay of proceedings. Dkt. 552. This request is nothing new. After years of litigation, Classified Information Protection Act ("CIPA") hearings, extensive motions practice, and an interlocutory appeal to the D.C. Circuit, the case was scheduled to go to trial in September 2019. *See* Min. Order (Apr. 18, 2019). Much of that pretrial litigation and the interlocutory appeal focused on Trabelsi's contention that his extradition was unlawful because he had been tried and convicted on the related charges in Belgium. That argument required this Court and the Court of Appeals to interpret the "non bis" provision of the Extradition Treaty between the United States and Belgium, which provides that "[e]xtradition shall not be granted when the person sought has been found guilty, convicted or acquitted in the Requested State for the offense for which extradition is requested." Extradition Treaty Between the United States of America and the Kingdom of Belgium, art. 5, Apr. 27, 1987, S. Treaty Doc. No. 104-7 (hereinafter "Extradition Treaty" or "Treaty"). Both this Court and the Court of Appeals rejected Trabelsi's argument. *See United States v. Trabelsi*, No. 06-cr-89, 2015 WL 13227797, at *9 (D.D.C. Nov. 4, 2015) ("*Trabelsi I*"); *United States v. Trabelsi*, 845 F.3d 1181, 1183 (D.C. Cir. 2017) ("*Trabelsi II*").

Then, just a few weeks before the September 2019 trial date, Trabelsi (with the government's consent) asked the Court to vacate the trial date to permit him to seek reconsideration of the denial of his motion to dismiss the indictment under the non bis principle

in light of intervening, and conflicting, Belgian legal developments.  Aug. 15, 2019 Hrg. Tr. (Rough at 4:13–15, 7:22–24).  This Court agreed to this postponement on the eve of trial, Min. Entry (Aug. 15, 2019), set a prompt briefing schedule, Min. Order (Sept. 13, 2019), and issued a decision denying Trabelsi's motion for reconsideration, *see United States v. Trabelsi*, No. 06-cr-89, 2020 WL 1236652 (D.D.C. Mar. 13, 2020) ("*Trabelsi III*").  Trabelsi appealed that decision, but, before briefing was complete in the Court of Appeals, a Belgian court issued yet another decision, *see* Dkt. 401-1, and Trabelsi requested that this Court issue an indicative ruling regarding that decision pursuant to Federal Rule of Criminal Procedure 37(a), *see* Dkt. 401.  In response, the Court again set a briefing scheduling and issued a prompt decision rejecting Trabelsi's non bis argument for a third time.  *See United States v. Trabelsi*, No. 06-cr-89, 2021 WL 430911 (D.D.C. Feb. 5, 2021) ("*Trabelsi IV*").  The Court of Appeals agreed and affirmed this Court's decision denying Trabelsi's request for reconsideration in March 2022.  *United States v. Trabelsi*, 28 F.4th 1291 (D.C. Cir. 2022) ("*Trabelsi V*").  Not content to proceed to trial at that point, Trabelsi then moved to stay issuance of the mandate from the Court of Appeals.  *See* Motion to Withhold Issuance of the Mandate, *Trabelsi*, 28 F.4th 1291 (D.C. Cir. May 11, 2022).  Only after the Court of Appeals denied that motion did jurisdiction return to this Court.

At that point, Trabelsi expressed an interest in representing himself—notwithstanding the able representation that he had received over many years from an array of experienced counsel from the Office of the Federal Defender and the Criminal Justice Act list.  In response to that request, the Court held a lengthy *Faretta* hearing at which the Court repeatedly informed Trabelsi of his rights, stressed that the case had been pending for nine years and that "[w]e are going to try this case in 2023," July 8, 2022 Hrg. Tr. (Rough at 9:4), and informed Trabelsi that, even if allowed to represent himself, he would not be allowed to "start from scratch," *id.* at 9:13.

The Court emphasized that "this case should be tried if possible in 2022 but not later than early 2023," *id.* at 10:21–22, and told Trabelsi:  "I want to make sure you are not going to tell me that you are not ready because you are representing yourself and you need more time to get ready because[,] as I said before, . . . there's been a lot of investigation that's been done."  *Id.* at 11:12–16.  Standby counsel agreed that the case would be ready for trial "maybe sometime in spring 2023," and Trabelsi concurred.  *Id.* at 13:2–5.  Leaving no doubt, the Court added:  "Do you understand that if I authorize you to represent yourself, that we are not going to go back and redo things that have already been done in the case including investigation," and Trabelsi responded, "Absolutely."  *Id.* at 15:11–15.  Relying on this exchange, the Court granted Trabelsi leave to represent himself, appointed standby counsel, and set the case for an 8-week trial commencing May 8, 2023.  *Id.* at 46:14–16.

In February 2023, Trabelsi's standby counsel filed yet another motion to reconsider this Court's and the Court of Appeals' multiple decisions rejecting his non bis argument, this time relying on a September 12, 2022 decision from the Brussels Court of Appeals, which reiterated the longstanding view of the Belgian courts—but not the Belgian state—regarding the lawfulness of Trabelsi's extradition.  Dkt. 507.  The government timely responded to that motion, Trabelsi filed a reply, and, two weeks later, the Court issued its fourth decision rejecting Trabelsi's non bis argument.  *See United States v. Trabelsi*, No. 06-cr-89, 2023 WL 2477961 (D.D.C. Mar. 10, 2023) ("*Trabelsi VI*").  As the Court explained in that opinion:

> The events relevant to this case occurred over twenty-one years ago, and Trabelsi was extradited to the United States almost a decade ago.  Since then, he has litigated and relitigated the precise issues that he raises in his most recent motion, and, since then, the relevant evidence has grown increasingly stale and difficult to obtain.  The Belgian courts will undoubtedly issue additional decisions, and the dispute between the Belgian state and the Belgian judiciary will continue.  None of that makes a difference, however, because both this Court and the D.C. Circuit have held that what matters is what the Belgian

4

Minister did in 2011 when he granted the U.S. government's request to extradite Trabelsi to the United States—and that factual question has been thoroughly vetted in this Court and in the D.C. Circuit, and it will not change with time.

At some point, this delay must come to an end, and this case must proceed to trial. Because Trabelsi offers no new evidence that is even remotely material under the law of the case—and because any argument to the contrary is frivolous—that time is now.

*Id.* at *5.

Having litigated, re-relitigated, and re-re-litigated the same issue, Trabelsi now maintains that by noticing his third interlocutory appeal in this case, he has divested this Court of jurisdiction to proceed to trial. Dkt. 552 at 2. He accordingly requests that this Court vacate the long-scheduled pretrial motions hearings (which require that witnesses travel to the United States from Belgium) and "stay[] all non-ministerial proceedings [in] this matter until the mandate is issued from the appellate court," *id.* at 3. And, beyond that, citing "[r]ecent developments with [his] physical and mental health," Dkt. 552 at 2, Trabelsi's standby counsel contend that he is not ready to go to trial and that he requires a competency examination.

Because Trabelsi's appeal is both frivolous and dilatory, because neither Trabelsi nor his standby counsel has presented any evidence of mental illness sufficient to raise concerns about his competence, and because any further delay will substantially prejudice the government and the public interest in resolving this long pending case, this Court will **DENY** the pending motion to stay, Dkt. 552.

## I.  ANALYSIS

### A.    Jurisdiction

The Court begins, as it must, with Trabelsi's jurisdictional argument. Relying on the general proposition that "[t]he filing of a notice of appeal, including an interlocutory appeal, 'confers jurisdiction on the court of appeals and divests the district court of control over those

aspects of the case involved in the appeal,'" *United States v. DeFries*, 129 F.3d 1293, 1302 (D.C. Cir. 1997) (quoting *Griggs v. Provident Consumer Disc. Co.*, 459 U.S. 56, 58 (1982) (per curiam)), Trabelsi argues that "[n]othing short of a mandate from the appellate court will return jurisdiction to this Court," Dkt. 552 at 2.  The government acknowledges that an interlocutory appeal of a double jeopardy claim typically divests the district court of jurisdiction but contends that there is an "exception[] to this rule" where "the defendant frivolously appeals."  Dkt. 554 at 1–2 (citing *United States v. LaMere*, 951 F.2d 1106, 1109 (9th Cir. 1991) (per curiam)).

The D.C. Circuit has yet squarely to address the question of whether a criminal defendant may unilaterally divest a district court of jurisdiction by filing successive interlocutory appeals raising the same double jeopardy (or non bis) argument.  But the Court of Appeals has itself declined to grant a stay of a criminal trial where the defendant's "claim of violation of the double jeopardy clause [was] 'wholly lacking in merit.'"  *United States v. Black*, 759 F.2d 71, 73 (D.C. Cir. 1985) (quoting *United States v. Head*, 697 F.2d 1200, 1204 (4th Cir. 1983), *cert. denied*, 462 U.S. 1132 (1983)).  Moreover, the D.C. Circuit has also observed (with apparent approval) that "[c]ourts have carved out a few narrow exceptions to [the general] rule [divesting district courts of jurisdiction upon the filing of a notice of appeal], such as where the defendant frivolously appeals . . . or takes an interlocutory appeal from a non-appealable order."  *DeFries*, 129 F.3d at 1302–03 (internal citations omitted).  That view accords, moreover, with the Supreme Court's recognition that "the appealability of a double jeopardy claim depends upon its being at least 'colorable[]' and that 'frivolous claims of former jeopardy' may be weeded out by summary procedures."  *Richardson v. United States*, 468 U.S. 317, 322 (1984) (first quoting *United States v. MacDonald*, 435 U.S. 850, 862 (1978); then quoting *Abney v. United States*, 431 U.S. 651, 662 n.8 (1977)).

This Court agrees with the government that the ability of a defendant unilaterally to delay a trial or other court proceedings by merely filing a notice of appeal is not limitless.  As the Tenth Circuit has observed, the rule that an appeal divests the trial court of jurisdiction "should not leave the trial court powerless to prevent intentional dilatory tactics by enabling a defendant unilaterally to obtain a continuance at any time prior to trial by merely filing a motion, however frivolous, and appealing the trial court's denial thereof."  *United States v. Hines*, 689 F.2d 934, 936–37 (10th Cir. 1982); *see also United States v. Bobo*, 419 F.3d 1264, 1267 (11th Cir. 2005) ("[F]rivolous claims and arguments that have already been squarely decided by precedent do not afford appellate courts jurisdiction to review interlocutory orders."); *United States v. Dunbar*, 611 F.2d 985, 987 (5th Cir. 1980) (en banc) ("[A]n appeal from the denial of a frivolous double jeopardy motion does not divest the district court of jurisdiction to proceed with trial[] if the district court has found the motion to be frivolous."); *United States v. Leppo*, 634 F.2d 101, 104–05 (3d Cir. 1980); *Head*, 697 F.2d 1200, 1204 & n.4; *United States v. Lanci*, 669 F.2d 391, 394 (6th Cir. 1983); *United States v. Cannon*, 715 F.2d 1228, 1231 (7th Cir. 1983); *United States v. Grabinski*, 674 F.2d 677, 679 (8th Cir. 1982) (en banc).

As this Court explained in greater detail in *Trabelsi VI*, the present appeal is frivolous and dilatory.  2023 WL 2477961, at *5.  The arguments Trabelsi belatedly raised in his most recent motion for reconsideration—relying on a September 2022 decision by the Brussels Court of Appeals and a December 2022 Diplomatic Note from the Belgian state—are squarely foreclosed by the law of the case.  In considering the scope and validity of Trabelsi's extradition, the D.C. Circuit held that "this Court should defer to the Belgian state's [2011] Extradition Order and its explanations of it in subsequent diplomatic notes, rather than to the Belgian courts' interpretation" of the Treaty between the United States and Belgium.  *Trabelsi V*, 28 F.4th at

1300.  Because the September 2022 decision by the Brussels Court of Appeal "add[ed] nothing new to the analysis and merely reiterate[d] the Belgian court's" interpretation of the Treaty, it "does not reflect a change in the Belgian courts' or government's position from those originally considered in *Trabelsi II*" and in *Trabelsi V*.  *Trabelsi VI*, 2023 WL 2477961, at *4 (quoting *Trabelsi V*, 28 F.4th at 1300–01).[2]  The Diplomatic Note on which Trabelsi relies, moreover, is no different than those that the D.C. Circuit rejected in *Trabelsi V*—indeed, "the argument he presse[d]" in his most recent motion "is [even] weaker" than that previously presented to the D.C. Circuit in *Trabelsi V*.  *Id.*  The December 2022 Diplomatic Note "merely informs the United States government" of the Belgian court's view; it "says nothing about this 'prosecution'" and is, accordingly, "immaterial."  *Id.*

In short, Trabelsi's most recent motion for reconsideration "offer[ed] no new evidence that [was] even remotely material under the law of the case" and "any argument to the contrary [was] frivolous."  *Id.* at *5.  Such "frivolous claims and arguments that have already been squarely decided by precedent" do not deprive this Court of jurisdiction.  *Bobo*, 419 F.3d at 1267.  To hold otherwise would invite interminable delay and abuse of process.  Every decision by this Court and the Court of Appeals can be met with a new decision from a Belgian court, prompting a new motion for reconsideration and a further decision from this Court, followed by

---

[2] Although this Court previously granted Trabelsi's motion to stay pending appeal on a similar issue, that prior appeal was "not frivolous" because the relevant double-jeopardy motion "presented the substantial legal question of how to resolve the ongoing conflict between the Belgian courts and the Belgian executive—a question that the D.C. Circuit did not fully address in *Trabelsi II*."  *Trabelsi IV*, 2021 WL 430911, at *11.  But the same cannot be said here because the D.C. Circuit has since clearly resolved that "conflict" in favor of the Belgian executive.  *See Trabelsi V*, 28 F.4th at 1300.  And in light of the D.C. Circuit's resolution of that conflict, the September 2022 decision by the Brussels Court of Appeal cannot plausibly constitute "new evidence that would alter th[is] Court's [or the D.C. Circuit's] interpretation of th[e] [2011 extradition] order."  *Trabelsi VI*, 2023 WL 2477961, at *3 (quoting *Trabelsi IV*, 2021 WL 430911, at *12).

yet another notice of appeal.  If the pending notice of appeal, which raises no issue not previously decided by the Court of Appeals, were to divest this Court of jurisdiction, the same reasoning would presumably apply to a fourth, fifth, or tenth notice of appeal.

More generally, the Court continues to share the government's concern about Trabelsi's dilatory conduct in this case.  The events relevant to this case occurred over twenty-one years ago, and Trabelsi was extradited to the United States almost a decade ago.  *Trabelsi II*, 845 F.3d at 1184–85.  While Trabelsi litigates and relitigates the exact issues that have now been addressed in six separate opinions by this Court and by the D.C. Circuit, the relevant evidence in this case has grown increasingly stale, and the foreign witnesses have been repeatedly burdened by the concomitant delays.  *See, e.g.*, Dkt. 509 at 1 n.1 ("The essential witnesses in this case are outside the subpoena power of the United States, and multiple witnesses have expressed growing reluctance to testify as this matter has dragged on.").  Indeed, the government now reports that it has heard from two overseas witnesses, who have indicated that they will "refuse" to appear at trial if the trial is delayed yet again.  Dkt. 559 at 1–2.

Trabelsi should not be permitted to postpone his trial indefinitely and to deprive the government of witnesses by filing an unending stream of litigation in the Belgian courts and then—again and again, and now twice on the eve of trial—asking this Court to bring the case to a grinding halt while the D.C. Circuit addresses the same factual and legal questions that have been thoroughly vetted by that very court.  This dilatory effort, which supplements Trabelsi's myriad other tactics to delay trial, must fail.

## B.    Competency

In addition to the pending D.C. Circuit appeal, standby counsel argues that "[r]ecent developments with Mr. Trabelsi's physical and mental health also weigh in favor of the

requested stay." Dkt. 552 at 2.  They contend that "[s]ince the Court granted Mr. Trabelsi's

request to represent himself, [they have] noticed a deterioration in his cognitive ability to

withstand" trial.  *Id.* at 3.  And "[r]ecently appointed second standby counsel, who ha[d]

previously represented Mr. Trabelsi" reports "a deterioration in his cognitive thinking since

2020." *Id.*  Standby counsel, accordingly, maintains that "[a]n evaluation is imperative

and . . . requests a stay to seek an evaluation of Mr. Trabelsi's capacity[] to determine whether

he has the requisite physical and mental health to represent himself at trial." *Id.*  In a later status

report, standby counsel adds:  "For reasons standby counsel can present *ex parte*, [Trabelsi's]

ability to speak at length to the Court and attempt to respond to questions is not an indication of

his competency or ability to properly prepare for trial and proceed as his own counsel." Dkt. 556

at 3.  Standby counsel further informed the Court that their chosen psychological examiner "is

not available to conduct the interview until April 24, 2023," *id.* at 3–4, just two weeks before the

May 8 trial start date.

     Trabelsi's standby counsel have failed to make the requisite showing for staying the trial

pending a competency determination.  Trabelsi himself has not asked the Court to reconsider its

decision granting him leave to represent himself, as is his constitutional right.  The Supreme

Court and the D.C. Circuit have explained that "a court may insist on representation by counsel

only in instances where a defendant 'suffer[s] from severe mental illness to the point where [he

is] not competent to conduct trial proceedings by [himself].'" *United States v. McKinney*, 737

F.3d 773, 775 (D.C. Cir. 2013) (alterations in original) (quoting *Indiana v. Edwards*, 554 U.S.

164, 178 (2008)); *see also United States v. Rosebar*, 800 F. App'x 1, 3 (D.C. Cir. 2019); *United

States v. McKinney*, 373 F. App'x 74, 75 (D.C. Cir. 2010) ("Only [after finding that the

defendant suffers from severe mental illness] may [the Court] exercise discretion and decide whether to limit that defendant's right to self-representation.").

As of today, standby counsel have failed to produce any evidence that Trabelsi suffers from a "severe mental illness," rendering him incompetent to conduct the trial on his own. Although counsel claims that there are "reasons [they] can present *ex parte*," Dkt. 556 at 3, they have neither made *ex parte* submissions on this issue nor requested an *ex parte* hearing. And, notably, over the course of many lengthy hearings held over the last several months, the Court has observed Trabelsi speak intelligently—often in English, which is not his first language—about his case, the impending trial, and the relevant legal issues. Over the course of those interactions, the Court has not observed any behavior—or change in behavior—that would cause it *sua sponte* to question Trabelsi's competence to represent himself.

In their response to the Government's opposition to delaying trial, Dkt. 557, standby counsel again point to no evidence that Trabelsi suffers from a severe mental illness. Rather, they merely state that he "is not prepared for trial and [that] standby counsel do not believe he is capable of becoming prepared by May 8, 2023." Dkt. 558 at 1. Feeling unprepared is, of course, not the standard for competency to represent oneself at trial. Moreover, as noted above, when the Court asked Trabelsi at the July 8, 2022 *Faretta* hearing whether he "underst[ood] that if [the Court] authorize[d him] to represent [himself], that we are not going to do back and redo[ing] things that have already been done in the case[,] including investigation," he responded, "Absolutely." Hrg. Tr. (Rough at 15:11–15). And when asked whether he would be ready to go to trial in the spring of 2023, he said, "Judge, I am ready." *Id.* at 13:2–19.

The courts of appeals, including the D.C. Circuit, have held that a district court need not postpone proceedings for a competency examination without a sufficient factual predicate for

doing so.  *See, e.g.*, *United States v. Perkins*, 787 F.3d 1329, 1339–40 (11th Cir. 2015) (affirming district court's decision to not hold competency hearing where defendant's "disruptive conduct was studied, contrived, and manipulative"); *United States v. Benabe*, 436 F. App'x 639, 649–50 (7th Cir. 2011) (affirming district court's decision not to hold a competency hearing requested the day of jury selection because "[t]he record show[ed] that [the defendant] was deliberately trying to block the proceedings"); *United States v. Gonzalez-Ramirez*, 561 F.3d 22, 27–28 (1st Cir. 2009) (affirming district court's decision to deny eve-of-trial competency hearing where "the stress [the defendant] was under [was] due to the charges against him," and where "his apparent suicide attempt alone, without any other indicia of a mental disease or defect, was insufficient to warrant a competency evaluation"); *United States v. Bruck*, 152 F.3d 40, 46 (1st Cir. 1998) ("So too do we leave intact the court's decision not to award [the defendant] an eve-of-trial continuance to develop further psychological evidence."); *Epperson v. United States*, 371 F.2d 956, 958 (D.C. Cir. 1967) ("We have also considered appellant's contention that he was entitled to the mental examination requested on the eve of trial.  We see no basis for reversal of the ruling denying his application for lack of sufficient showing or predicate.").

Here, standby counsel's references to unspecified issues fail to convince the Court that postponing the trial or the scheduled motions hearings is warranted.  Without any evidence of severe mental illness, the request for a competency hearing—like the others made by Trabelsi on the eve of trial—appears to be dilatory.  *Cf. United States v. Burton*, 584 F.2d 485, 490–91 (D.C. Cir. 1978).  If Trabelsi would prefer that his standby counsel step in to try the case in his stead, the Court will, of course, consider that request.  But a last-minute desire to change his representation will not constitute grounds to delay the long-scheduled trial in this long-pending case.  Over the years, Trabelsi has rejected representation from an array of very able and

experienced counsel.  Those decisions were his alone, and any regret that he may now have about the decisions he has made does not justify postponing trial yet again, particularly given the risk that any such continuance will substantially prejudice the government in its ability to present a case regarding facts that allegedly occurred over two decades ago.

**CONCLUSION**

For the foregoing reasons, Defendant's motion to stay proceedings, Dkt. 552, is hereby **DENIED**.  Absent a directive from the D.C. Circuit to the contrary, the parties should be prepared to proceed with the scheduled motions hearings beginning on April 17, 2023 and trial on May 8, 2023.

**SO ORDERED**.

<u>/s/ Randolph D. Moss</u>
RANDOLPH D. MOSS
United States District Judge

Date:  April 13, 2023