UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | |
| | | 06-CR-089 (RDM) |
| v. | : | |
| | | |
| **NIZAR TRABELSI** | : | |

**STANDBY COUNSEL'S MOTION TO STRIKE
THE RULE 15 DEPOSITON TESTIMONY OF MS. AMAL**

Ms. Amal is one of the government's most important witnesses. Due, however, to the actions of the U.S. government, the French government, and Ms. Amal, Mr. Trabelsi has not been provided sufficient opportunity to meaningfully confront and cross examine Ms. Amal during her recent Rule 15 deposition in violation of his Sixth and Fifth Amendment rights. For this reason, and the others discussed below, admitting that deposition testimony at trial would be improper. Instead, the Court should bar the use of that testimony at trial. In the alternative, the Court should order that Ms. Amal's deposition be continued, so Mr. Trabelsi has a full and meaningful opportunity to cross examine her.

## BACKGROUND

**Ms. Amal**

As the Court already has recognized, Ms. Amal is a key government witness whose testimony is ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓. *See* April 25, 2023 Order at 4 [ECF Docket No. 578 (SEALED)]. In this regard, Ms. Amal has made extensive statements regarding this matter to officials of various governments. She has met with the FBI and United States Attorney's Office numerous times and

1

testified before the grand jury in 2007, in person, in this district, to help procure the Indictment in this matter. She has made statements to French officials on the following dates: September 15, 2001; September 16, 2001; September 17, 2001; September 18, 2001; April 24, 2001; May 28, 2002; and July 22, 2003. She made statements to Belgian officials on December 19, 2001, and January 14, 2002.  Ms. Amal also purports to be able to testify about alleged interactions with Mr. Trabelsi in Afghanistan and Belgium that, among other things, allegedly corroborate statements Mr. Trabelsi assertedly made in Belgium.

**The Order Governing Ms. Amal's Rule 15 Deposition**

Because Ms. Amal resides in France and is purportedly unavailable to testify at Mr. Trabelsi's trial, the Court ordered that she be deposed pursuant to Rule 15 of the Federal Rules of Criminal Procedure.[1] Mr. Trabelsi continues to object to the Court's grant of a Rule 15 deposition in lieu of in person testimony.

The Rule 15 deposition took place on April 26 and 27, 2023. It was conducted by two-way video conferencing, with Ms. Amal in Paris and Mr. Trabelsi in the District of Columbia. Four French-English translators were used to translate each question and answer, and French government security officials were in the deposition room with Ms. Amal.[2]

Given the Rule 15 deposition's complicated, multi-location, multi-lingual nature, on April 25, 2023, the Court issued a specific Order governing its conduct. *See* April 25, 2023 Order [ECF Docket No. 579] (the "Conduct Order"). Among other things:

- Because of the breadth and importance of the witness's involvement and prior

---

[1] As discussed below, Ms. Amal's deposition testimony contradicted the reasons advanced by the government to this Court that led the Court to tentatively find that Ms. Amal would be unavailable for trial. Given this, the Court should reconsider its tentative finding and order Ms. Amal's to appear and testify at trial. *See* Argument, Point I.

2 Ms. Amal was accompanied by her sister who was not present at the depositions. The government has yet to provide to us with 302s / 3500 material pertaining to the two days Ms. Amal was conferring with the government – both French and American.

2

- statements, the Court ordered two full days of deposition. Specifically, the "deposition will be held on Wednesday, April 26 and Thursday, April 27, 2023, beginning each day at 9:00 a.m. and ending at or around 6:00 p.m. EST." Conduct Order at 1; *see also id.* at 3 (stating that questioning would conclude "by 6 p.m. EST on Thursday, April 27, 2023").

- Ms. Amal, who would be testifying from Paris via video-conferencing technology, was expressly required to acknowledge "the power of the United States District Court for the District of Columbia" and "agree to answer all questions posed to her unless the Court rules that she does not have to answer." *Id.* at 2.

- While French law enforcement, government, and judicial officials were allowed to attend the deposition, they had no substantive role in it. They had to agree "not to speak with the witness regarding her testimony during the pendency of the proceeding," and were also "forbidden from participating in the proceeding in any manner." *Id.*

- Objections were strictly limited to "the grounds of form and foundation or to preserve a privilege or court order." In particular, the Court warned that "[n]o objection will serve to delay or hold up the deposition" and the "Court will not tolerate speaking objections." *Id.* at 3.

- "The Court advise[d] the parties that it will not tolerate any effort to impede, delay, or frustrate the fair examination of Ms. Amal." *Id.* at 4.

**The Deposition Violated the Court's Conduct Order**

Mr. Trabelsi and his counsel arrived early and prepared to proceed well before the 9:00 a.m. start time on April 26 and April 27, 2023. By contrast, the government was late and unprepared to proceed on time on April 26 and 27, and also caused additional delays during and at the end of the deposition days, materially reducing and restricting the time and opporttunity Mr. Trabelsi had to conduct his cross-examination of the witness.

On April 26, 2023, when undersigned counsel had to leave for an appellate argument around 9:35 a.m. (standby counsel Shroff remained at the deposition), the deposition had not yet started because of the government. Likewise, even though the deposition was supposed to go until 6:00 pm, at around 4:40 pm EST standby counsel Ms. Shroff reported "the French prosecutor says they're done for the day." April 26, 2023 PM Tr. 70:15-16. The fact that the

3

deposition was being terminated early because of the French prosecutor (who was there in an observational role only) was recognized by the Magistrate Judge, who noted on the record "my understanding is that the French Prosecutor is ending the deposition now." *Id.* at 70:17-21. By acting in such a manner, the French Prosecutor unilaterally seized authority and control of the deposition from Magistrate Judge Upadhyaya, and thereby violated the Court's Conduct Order and Mr. Trabelsi's right to confrontation. Ms. Amal, and all others appearing remotely from France, then immediately disconnected from the video-conferencing system. Taking note of this and the other delays that took place throughout the day, the Magistrate Judge ordered that the deposition would continue on April 27, 2023 at 9:00 am. April 26, 2023 PM Tr. 86:7-8 (Court: "I'll be sitting here at 9:00 am, and you're going to start at 9:00 am, okay?").

Despite the April 25, 2023 Order, and the Magistrate Judge's clear instruction at the end of the first day of deposition, the government was unprepared to start the deposition at 9:00 am on April 27, 2023. *See* April 27, 2023 AM Tr. at p. 2 (Court: "Counsel, what's going on, it's 9:09"). The government acknowledged that the delay was the "government's problem" because the French representatives apparently were having trouble connecting to the video platform and had not yet signed in. *Id.* at 3-11. By contrast, Mr. Trabelsi and his standby counsel were prepared to proceed at 8:30 am. *Id*. at 18-22.

During the deposition itself, the government continued to impede Mr. Trabelsi's ability to question the witness, and the time he had to do so.  In this regard, despite the Court's Order, the government improperly made speaking objections throughout the deposition. As the Magistrate Judge specifically noted, this government stratagem wrongly wasted Mr. Trabelsi's limited time, telling the parties that "one thing that does eat up time is speaking objections." April 26, 2023 PM Tr. 87:2-6

4

The government's repeated delays, the French government's interference in the deposition, and the speaking objections all violated the Court's April 25, 2023 Order and materially and unfairly prejudiced Mr. Trabelsi. The prejudice to him caused by the government was compounded by the witness's conduct. Ms. Amal was notably hostile to Mr. Trabelsi throughout his questioning. At times, she yelled at him. Despite her promise to cooperate and "answer all questions posed to her unless the Court rules that she does not have to answer," Conduct Order at 2, Ms. Amal often chose to waste time and obstruct matters instead. *See, e.g.,* April 26, 2023 Tr. PM 55:13-14, 21-22 (Ms. Amal contending certain questions were "out of bounds," commenting that Mr. Trabelsi's questions "don't interest me," and otherwise being uncooperative and non-responsive).

**Under the Specific Circumstances Here, the Rule 15 Deposition Did Not Give Mr. Trabelsi a Real and Meaningful Opportunity to Cross Examine Ms. Amal**

The wasteful actions of the government, the French government and Ms. Amal discussed above unfairly and improperly truncated Mr. Trabelsi's cross examination of Ms. Amal and, if not addressed and cured, violated his Sixth Amendment right to confront her, and his Fifth Amendment right to procedural due process. But even if, *arguendo*, the Court were to ignore these improper actions, the Rule 15 deposition remains constitutionally inadequate because it did not provide Mr. Trabelsi with a real and meaningful opportunity to cross examine Ms. Amal.

Under the specific circumstances of this case, the Rule 15 deposition did not give Mr. Trabelsi enough opportunity to meaningfully examine Ms. Amal. *First*, as previously discussed, Ms. Amal is a key government witness whose testimony covers a wide variety of events and issues. Accordingly, her biases, and the reliability of her prior statements and testimony, deserve to be carefully probed. Importantly, at her deposition, Ms. Amal admitted that many of her prior statements were lies, but claimed that she lied because she was "very scared." April 26, 2023

5

AM Tr. 52:11-12. Plainly, this admission entitled Mr. Trabelsi not only to question Ms. Amal as to all her prior statements, to determine which statements were false and in what way they were false, to uncover the truth hidden by her prior lies, and to explore her claimed justification for her prior lies.

*Second*, the questioning was conducted by Mr. Trabelsi, who is proceeding *pro se*, rather than a skilled and experienced attorney. Questioning by a *pro se* generally takes longer and counsels giving the defendant more – not less – latitude, patience, and time for the examination.

*Third*, Mr. Trabelsi has been imprisoned for ten years under extremely harsh conditions of confinement that has negatively affected his mental state and ability to concentrate and focus on his questions and her answers. Indeed, at times during the deposition, Mr. Trabelsi appeared entirely overwhelmed and dazed by his surroundings, once remarking that this was the most people he had interacted with in a decade.

*Fourth*, every question and answer at the deposition had to be translated from French to English and from English to French. See Conduct Order [ECF Docket No. 579] at 3-4. This meant that each question and each answer (and each speaking objection by the government) took far longer to make than in a typical deposition, further preventing any real opportunity for Mr. Trabelsi to complete his deposition in the time allotted.

*Fifth*, the deposition was not conducted in the same manner (both in terms of time and opportunity in terms of bias and inconsistency) had Ms. Amal been in a United States Court Room in the District of Columbia. This is especially the case where the defendant is pro se.

**The Topics that Must Still be Covered**

Unsurprisingly, Mr. Trabelsi did not receive a fair opportunity to conduct a meaningful examination of Ms. Amal and was only able to cover a few portions of Ms. Amal's many

voluminous prior statements in the time that he had. The topics Mr. Trabelsi will seek to cover in additional testimony include: statements Ms. Amal made about her lack of knowledge of Mr. Trabelsi's activities in Afghanistan; her extensive cooperation in investigations in Europe related to individuals allegedly associated with Mr. Trabelsi; statements about the purpose of their time in Afghanistan; the status of their relationship between 2000 and 2002, including her referring to Mr. Trabelsi as her husband more than 150 times; statements Ms. Amal made about a religious marriage with Mr. Trabelsi in 2000; statements made about Ms. Amal's prior relationships; illegal conduct by Ms. Amal before she met Mr. Trabelsi; interactions between Ms. Amal and Belgian, French, and U.S. law enforcement and judicial officials; Ms. Amal's contact with Mr. Trabelsi after his arrest; statements about Mr. Trabelsi's alleged abuse of Ms. Amal; promises made to Ms. Amal; benefits conferred on Ms. Amal by foreign government officials; the current relationship between her and the French security services and whether their presence at the deposition intimidated her, or otherwise affected her testimony (an issue given urgency by the way the French officials unexpectedly and improperly obstructed the questioning of Ms. Amal); and Ms. Amal's availability to travel to the United States for trial.

     Mr. Trabelsi may have begun to ask questions about a few of these topics, but significant more detail is required. As just one example, Ms. Amal denied receiving anything of value from the United States related to the prosecution of Mr. Trabelsi. April 27, 2023 PM Tr. 63:11-64:12, 66:22-25. Yet, Defense Exhibit 110, attached hereto, shows she was paid $2,000.00 by the FBI in 2005. The Magistrate Judge also had to intervene and ask Ms. Amal to answer a question that related to any benefits she received from the French government related to Mr. Trabelsi. *Id.* at 68:2-14. While this critical question was pending, Ms. Amal spoke with a French Official who was present in the room and seated across from her. *Id.* at 68:20-69:4. This interaction between

the witness and the French Official was noticed by the Court and by both standby counsel, in Washington and in Paris. The Court was concerned by the conferring and immediately questioned the witness. When asked by the Court who she was conferring with, and what was said, Ms. Amal stated that she was discussing hitting the mute button on the speaker. Stand by counsel in Paris noted in the briefest of terms that the witness's statement was false. The government made no attempt to have the French Official state on the record what statement he had made to the witness.[3]

Mr. Trabelsi intends to – and should be given the opportunity to – further explore the payment of money by the United States government, benefits from the French government, and other things of value provided to Ms. Amal, because her receipt of such payments, and false denial of same, strongly undermines her personal credibility and the credibility of her testimony.

## ARGUMENT

The Court should strike Ms. Amal's Rule 15 deposition for each of the following six independent reasons: (i) because Ms. Amal can and should appear and testify at trial in a United States Courtroom instead; (ii) because its admission would violate, both facially and as applied, Mr. Trabelsi's Sixth Amendment right under the United States Constitution to confront Ms. Amal; (iii) because the Conduct Order was violated to Mr. Trabelsi's material prejudice; (iv)

---

3 The government refuses to provide the name of the French Official. During the questioning, the French Official in question was seated across from the witness Amal and the witness Amal was able to maintain direct eye contact with him. In fact, the French Official was the only person who was allowed to sit at the table with witness Amal while all others were seated further down the tables or were seated off the table completely. When being questioned about an exhibit that showed a Money Gram transfer of $2,000 from the United States to witness Amal, the witness denied its receipt. The witness Amal had the exhibit on its second page, and inched the document toward the French official. Witness Amal and the French spoke to each other in French --- a conversation noticed by standby counsel in both France and D.C. and by Magistrate Judge Upadhyaya, who interjected to inquire about the exchange. When the Judge inquired, the French Official who speaks and understands both English and French, and before the Magistrate's question was translated, pushed down on the mute button on the microphone all the while maintaining eye contact with and signaling to the witness Amal the answer she should provide to the Court's question. The witness Amal did just that. Standby counsel in Paris noted her objection and did not elaborate.

because its admission would violate both the letter and the spirit of Rule 15; (v) because it constitutes inadmissible hearsay under Rule 804; and (vi) because its admission would violate the Fifth Amendment's guarantee of procedural due process provided by the United States Constitution.

I.   **THE COURT SHOULD STRIKE MS. AMAL'S RULE 15 DEPOSITION BECAUSE HER TESTIMONY SHOWS SHE IS NOT UNAVAILABLE FOR TRIAL**

The Court previously held that the parties should proceed with a Rule 15 deposition because there was a ███████████████████████████████████████ April 25, 2023 Order [ECF Docket No. 578 (SEALED)] (citing *United States v. Drogoul*, 1 F.3d 1546, 1553 (11th Cir. 1993)). This tentative finding was based on representations from the government ████████████████████████████████████████████████████████████████ ████████████████████████████████████████ April 25 Order [ECF Docket No. 578 (SEALED)] at 5-6.

While Mr. Trabelsi was only able to briefly inquire into the issue of Ms. Amal's availability during the Rule 15 deposition, the reason she proffered under oath was materially different from the prior representations by the government that was the basis on which the Court granted the request to conduct a Rule 15 deposition. Specifically, Ms. Amal testified that she was unwilling to come to the United States to testify at trial because of family obligations. She testified that she has "several sick children who need [her] 24 hours a day" and a "22-year-old son who is pursuing his studies and needs her." April 27, 2023 PM Tr. 58:6-9. Mr. Trabelsi is the father of Ms. Amal's adult son. No other excuse, including the ones proffered by the government to this Court, was given by Ms. Amal. Ms. Amal's claimed justification is inadequate on its face. Moreover, it is squarely contradicted by the fact that Ms. Amal's children were all at home, and ably cared for by an individual paid by the U.S. government, while Ms.

9

Amal was at her Rule 15 deposition. In short, Ms. Amal is not unavailable, and the government should act to have her appear and testify at Mr. Trabelsi's trial. The government has failed to carry its burden of showing Ms. Amal's unavailability for trial.

## II. THE COURT SHOULD STRIKE MS. AMAL'S RULE 15 DEPOSITION BECAUSE, BOTH FACIALLY AND AS APPLIED, ITS ADMISSION WOULD VIOLATE MR. TRABELSI'S SIXTH AMENDMENT RIGHT TO CONFRONT MS. AMAL AT TRIAL

Taking Ms. Amal's deposition through two-way video conferencing violated Mr. Trabelsi's Sixth Amendment confrontation clause right, which mandates that an accused shall "be confronted with the witnesses against him." United States Const. amend VI. "Simply as a matter of English," the term "confront" requires "at least 'a right to meet face to face all those who appear and give evidence at trial.'" *Coy v. Iowa*, 487 U.S. 1012, 1016 (19880 (quoting *California v. Green*, 399 U.S. 149, 175 (Harlan, J., concurring)). "The simple truth is that confrontation through a video monitor is not the same as physical face-to-face confrontation," and a defendant's confrontation right "is most certainly compromised when the confrontation occurs through an electronic medium." *United States v. Yates*, 438 F.3d 1307, 1315 (11th Cir. 2006) (having Australia-based witnesses testify at trial via two-way video conferencing violated defendant's confrontation rights). The video deposition here should not have been permitted, and its use at trial would violate Mr. Trabelsi's Sixth Amendment rights. Indeed, this issue – whether video taped testimony is ever constitutionally proper is now before the United States Supreme case. See, *Akhavan v. United States*, petition for cert pending, No. 22-844 (filed March 6, 2023).

Even if a Rule 15 deposition via two-way video passed constitutional muster in certain narrow circumstances, it does not do so here. As applied, it fails to comply with the Confrontation Clause. The "'face-to-face confrontation requirement' should not 'easily be dispensed with.'" *United States v. Carter*, 907 F.3d 1199, 1205 (9th Cir. 2018) (citing and

10

quoting *Maryland v. Craig*, 497 U.S. 836, 850 (1990)). At most, that right may only be compromised where "denial of such confrontation is necessary to further an important public policy and only where the reliability of the testimony is otherwise assured." *Craig*, 497 U.S. at 850.[4] *Craig* held that the reliability requirement may be met where "the presence of the other elements of confrontation – oath, cross-examination, and observation of the witness' demeanor – adequately ensures that the testimony is both reliable and subject to rigorous adversarial testing in a manner functionally equivalent to that accorded live, in-person testimony." *Id.* at 851. Here, Ms. Amal's Rule 15 deposition does not fall within the extremely narrow *Craig* exception.

*First*, denial of a face-to-face confrontation is not "necessary to further an important public policy" *Craig*, 497 U.S. at 850. Ms. Amal came to the United States and met with the government for several days and then testified before the grand jury in this matter, and there is no real impediment or public policy preventing her from testifying at trial. Being available to her adult child (as Ms. Amal asserted at her deposition) or a past incident involving two of her minor children (as the government claimed to the Court) are insufficient to meet the requirement under Craig. In *Carter*, for example, the Ninth Circuit found the necessity requirement was not met when a witness was unable to travel due to a pregnancy. 907 F.3d at 1208. The court found "[t]here were alternatives available to preserve [the defendant's] right to physical fact-to-face confrontation . . . the most obvious . . . would have been to continue the trial in anticipation of

---

[4] *Craig* is the single, narrow exception to a defendant's right to physically confront his or her accuser recognized by the United States Supreme Court. In *Craig*, the Supreme Court held, in a five-to-four decision, that a state procedural provision allowing a court "to receive, by one-way closed circuit television, the testimony of a child witness who is alleged to be a victim of child abuse" was constitutional. 497 U.S. at 840. The state permitted such video testimony only upon a finding that "testimony by the child victim in the courtroom will result in the child suffering serious emotional distress such that the child cannot reasonably communicate." *Id.* at 841 (citation omitted). When such a finding was made, "the child witness, prosecutor, and defense counsel [would] withdraw to a separate room," where the child could be "examined and cross-examined"—in person—by counsel, while "the judge, jury, and defendant" watched from the courtroom via video monitor. *Id.*

11

[the witnesses'] recovery. *Id*. Likewise here, the injuries to the minor children were not represented as permanent, or so serious that no alternative could be found that addressed both Ms. Amal's concerns and Mr. Trabelsi's constitutional rights.

*Second*, the "reliability" of Ms. Amal's testimony was not assured because she was not "subject to rigorous adversarial testing in a manner functionally equivalent to that accorded live, in-person testimony." *Craig*, 497 U.S. at 851. Specifically, as detailed in the Background section above, Mr. Trabelsi was not given sufficient time to cross-examine the witness. Nor were many of Mr. Trabelsi's questions answered by the witness. To elucidate, Mr. Trabelsi at the start of the deposition asked for the witness to list the individuals present at the deposition. Should the deposition be played for the jury, it would lead the juror to conclude that Ms. Amal appeared by herself for questioning leaving the jury with a false impression. Throughout the deposition, Ms. Amal was supported at counsel table by two French policeman – Johaan and Michael – and a French "Commander" who not only took copious notes of her testimony but assisted her during the questioning, and was seated opposite the witness during her questioning. Despite repeated requests to the government, his name has not been provided to the defense and is entirely absent from the record. The Court should order the government to provide the names as these are public officials who appeared in an official capacity in an official proceeding.5   See, *United States v. Abu Ali*, 528 F.3d 210 (4th Cir. 2008)(upheld Rule 15 deposition as it allowed for full opportunity to cross examine the witness).

---

5 As noted infra, it was this same French Official who prompted Ms. Amal's response to an exhibit shown to the witness. At another point in the deposition the magistrate judge instructed the witness to step out of the room while she spoke to the defendant. The French Official remained in the room, heard what the magistrate stated to the defendant, and then proceeded to the adjacent room to which the witness hd been removed and was told to remain until the Court had finished instructing the defendant. Standby counsel followed the French Official out and into the adjacent room, to reiterate the Magistrate Judge Upadhaya's instructions, and preempt the French Official from telling the witness Amal of the Court's colloquy with the defendant.

12

The Confrontation clause includes cross-examination of a witness to probe a witnesses' "reliability and bias, which includes a right to impeach with inconsistent statements." *Blackston v. Rapelje*, 780 F.3d 340, 348 (6th Cir. 2015). And, the more crucial a government witness's testimony, the closer scrutiny and protection a court should give to a defendant's Confrontation Clause rights. *United States v. A & S Council Oil, Co.*, 947 F.2d 1128, 1133 (4th Cir. 1991) (citing *Dorsey v. Parke*, 872 F.2d 163, 166 (6th Cir. 1989)). Here, Ms. Amal was not only a crucial witness, but she had made a large number of lengthy statements to various governments and agencies, some of which she now conceded were false. Mr. Trabelsi had every right and need to probe both those prior statements and explore the various biases (like the FBI payments and her ties to French security agencies) that likely colored her statements and certainly reduced her credibility. At trial, the Court would have ensured that Mr. Trabelsi was given sufficient time to meaningfully cross-examine her on these topics. By contrast, at the Rule 15 deposition. Mr. Trabelsi did not receive sufficient time to conduct a meaningful examination of Ms. Amal, a fatal flaw that was compounded by the improper actions of the government, the French government, and Ms. Amal.

The right, guaranteed by the Sixth Amendment, to confront the witnesses against you serves as the "greatest legal engine ever invented for the discovery of truth." *Kentucky v. Stincer*, 482 U.S. 730, 736 (1987) (internal citation omitted). Here, both facially and as applied, Ms. Amal's Rule 15 deposition violated this fundamental confrontation right. As a result, the Court should strike it from the trial.

### III. THE COURT SHOULD STRIKE MS. AMAL'S RULE 15 DEPOSITION BECAUSE THE CONDUCT ORDER WAS MATERIALLY VIOLATED

As detailed above, the government (by repeated delays and speaking objections), the French government (by unilaterally closing the deposition in violation of its purely observer

13

status), and Ms. Amal (by her obstreperous and time-wasting conduct) each violated the Conduct Order governing the Rule 15 deposition. Their actions materially and unfairly prejudiced Mr. Trabelsi and made it impossible for him to fully cross examine Ms. Amal in the time allotted.

As part of the Conduct Order, the Court expressly "advise[d] the parties that it will not tolerate any effort to impede, delay, or frustrate the fair examination of Ms. Amal." Conduct Order at 4. Yet, that is exactly what the government, its witness, and the French did here. The only remedy that will cure the resulting prejudice to Mr. Trabelsi is to strike the Rule 15 deposition.

**IV.     THE COURT SHOULD STRIKE MS. AMAL'S RULE 15 DEPOSITION BECAUSE IT VIOLATES FEDERAL RULE OF CRIMINAL PROCEDURE 15**

Rule 15 allows testimony outside the United States without the defendant's presence only if "the defendant can meaningfully participate in the deposition through reasonable means." Fed. R. Crim. P 15(c)(3)(e). The serial and material violations of the Conduct Order detailed above, together with the overarching fact that Mr. Trabelsi was not permitted to complete his deposition of this key witness against him, means that he did not receive a real chance to "meaningfully participate" in the deposition. Accordingly, the deposition here does not meet the strict requirements of Rule 15, rendering it a nullity. Had the testimony been taken in a courtroom, a French Official would not have been permitted to end testimony by stating under French Law, no witness may be questioned for more than 4 hours.

V. **THE COURT SHOULD STRIKE MS. AMAL'S RULE 15 DEPOSITION BECAUSE IT IS INADMISSIBLE HEARSAY**

An out of court statement by a declarant introduced for the truth of the matter asserted is inadmissible hearsay. Fed. R. Evid. 802. A statement in the form of a prior statement that is hearsay may be admissible if the government proves the declarant is unavailable and it is offered "against a party who had . . . an opportunity and similar motive to develop it by direct, cross-, or redirect examination. Fed. R. Evid. 804(b)(1)(B).

The lack of adequate time afforded Mr. Trabelsi under the specific circumstances here, together with the improper conduct of the government, the French officials, and Ms. Amal (*see* Background), prevented Mr. Trabelsi from meaningfully participating in the deposition and having an adequate opportunity to cross-examine the witness. Because Mr. Trabelsi did not have a meaningful opportunity to develop his testimony of Ms. Amal through cross examination, the Rule 804 exception does not apply, and Ms. Amal's deposition testimony remains inadmissible hearsay that cannot be admitted at trial.

VI. **THE COURT SHOULD STRIKE MS. AMAL'S RULE 15 DEPOSITION BECAUSE MR. TRABELSI WAS NOT AFFORDED THE PROCEDURAL DUE PROCESS GUARANTEED BY THE FIFTH AMENDMENT. AT THE LEAST, THE FIFTH AMENDMENT REQUIRES THAT THE DEPOSITION BE CONTINUED UNTIL MR. TRABELSI COMPLETES HIS CROSS EXAMINATION OF MS. AMAL**

The Fifth Amendment's procedural due process right ensures that Mr. Trabelsi "cannot incur the loss of liberty for an offense without notice and a meaningful opportunity to defend." *Jackson v. Virgina*, 443 U.S. 307, 314 (1979). What constitutes a meaningful opportunity to defend "is flexible and calls for such procedural protections as the particular situation demands." *Mathews v. Eldridge*, 424 U.S. 319, 334 (1976) (quoting *Morrissey v. Brewer,* 408 U.S. 471, 481 (1972)). *Mathews*, the leading authority for deciding what procedural protections are required to comport with the Due Process Clause, provides a three factor balancing test for

deciding when sufficient procedural protection has been provided to a defendant:

> First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.

424 U.S. at 335; *Al-Hela v. Biden*, 2023 U.S. App. LEXIS 8238, *24-25 (D.C. Cir. April 4, 2023)(en banc). In other words, the Court must consider "the private interest that will be affected, the risk of an erroneous deprivation of such interest, and the government's interest." *Heller v. Doe*, 509 U.S. 312, 313 (1993). The *Mathews* test shows that Mr. Trabelsi was not afforded procedural due process at Ms. Amal's Rule 15 deposition. Accordingly, the Court should strike it. At the least, the Court should continue Ms. Amal's deposition until Mr. Trabelsi has completed his cross examination of her.

*First*, Mr. Trabelsi's interest is essential: the right to a fair trial in which he risks spending the rest of his life in prison. *Second*, given the importance of Ms. Amal to the government's case-in-chief, the risk to Mr. Trabelsi if he is not afforded a real and meaningful opportunity to cross examine her, is significant. *Third*, while the government has an interest in prosecuting Mr. Trabelsi, that interest would not have been burdened or materially affected by allowing Mr. Trabelsi additional time and opportunity to complete his cross examination. Hence, Mr. Trabelsi did not receive sufficient procedural due process, in violation of the Fifth Amendment, and the Court should strike the Rule 15 deposition as a consequence. At the least, the Court should cure this Fifth Amendment violation by continuing the deposition so Mr. Trabelsi may complete his cross examination of Ms. Amal.

Finally, Mr. Trabelsi has a substantial liberty interest that should be protected by the Court, a balancing of which would impose a comparatively minimal burden on the witness and

the parties.

## CONCLUSION

For each of the foregoing reasons, the Court should (i) bar the introduction and use at trial of any of Ms. Amal's Rule 15 testimony and out-of-court statements; (ii) in the alternative, order the continuation of Ms. Amal's deposition; and (iii) grant Mr. Trabelsi such other and further relief as the Court deems just and proper.

Respectfully Submitted,

Marc Eisenstein
Coburn & Greenbaum, PLLC
1710 Rhode Island Avenue, N.W.
Second Floor
Washington, DC 20036
(202) 470-2695
marc@coburngreenbaum.com

/s/Sabrina P. Shroff
80 Broad Street, 19th Floor
New York, New York 10007
(646) 763-1490
sabrinashroff@gmail.com

Counsel *for Nizar Trabelsi*