UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | |
| v. | : | 06-CR-089 (RDM) |
| **NIZAR TRABELSI** | : | |

**NIZAR TRABELSI'S MOTION TO STRIKE
THE REMOTE TRIAL TESTIMONY OF SAAJID BADAT**

Remote testimony by a government witness infringes on a defendant's Sixth Amendment right to confront the witnesses against him face-to-face. *Maryland v. Craig,* 497 U.S. 836, 850 (1990); *United States v. Yates,* 438 F.3d 1307, 1315 (11th Cir. 2006); *United States v. Carter,* 907 F.3d 1199, 1205 (9th Cir. 2018) (same). As the proponent urging remote testimony, it is the government's burden to prove that remote testimony is *necessary* to further an important public policy. *Craig,* 497 U.S. at 850. After oral argument,[1] the Court held that remote testimony was necessary here because (i) Mr. Badat posed a present danger to American lives if permitted into the United States to testify; and (ii) the difficulty of obtaining evidence in terrorism cases.[2] Mr. Badat's consequent remote testimony shows, however, that neither justification is sufficient here. Accordingly, Mr. Badat's testimony should be stricken and an appropriate instruction to that effect issued to the jury.

The government has refused to tell the Court – even *ex parte* and *in camera* – what efforts, if any, it has taken to protect Americans from Mr. Badat, even as it insists Mr. Badat is

---

[1] The transcript of oral argument and the Court's decision is not yet available. Accordingly, defense counsel is relying on their notes and memory in describing the argument and the decision issued orally by the Court.

[2] The Court rejected the government's argument that remote testimony should be allowed because of a purported public policy interest in prosecuting "important" cases.

1

such a severe and abiding threat that he cannot be permitted onto U.S. soil to testify. Testimony by Mr. Badat on cross-examination shows why the government is so reticent in providing that information to the Court -- the United States government has made no efforts to extradite Mr. Badat from the United Kingdom, or taken any other steps commensurate with the government's claim that he is still a threat. Given this testimony, it is now apparent that the government has failed to meet its burden of proving "extreme danger" justifies infringement of Mr. Trabelsi's constitutional and due process rights.

Similarly, there is no difficulty here in obtaining Mr. Badat's testimony. Indeed, he has now testified that he is eager to provide testimony in this matter and considers it part of his duty as a true Muslim. Thus, the only real question here is whether the government can use an indictment it has declined to enforce for 19 years, and the continuing threat to arrest Mr. Badat under that indictment were he to travel to the United States to testify, as a transparent ploy to infringe Mr. Trabelsi's rights.

While the Court cannot prevent the government from misusing "national security" as a fig leaf to bar Mr. Badat from testifying in court, that misuse should bear judicial consequence. It is this Court (and not the Executive branch) that is charged with protecting Mr. Trabelsi's rights as a defendant, and the Court should protect those rights here by striking Mr. Badat's testimony and instructing the jury to disregard that testimony in its entirety.[3]

---

[3] If the Court determines that the jury will be unable to disregard Mr. Badat's testimony, even with a curative instruction, the Court should declare a mistrial and start over with a new jury. *See, e.g., Bruton v. United States,* 391 U.S. 123, 135 (1968); *United States v. Ackerly,* 981 F.3d 70, 81 (1st Cir. 2020); *United* States *v. Maher,* 454 F.3d 13, 23 (1st Cir. 2006) (finding a Confrontation Clause violation even where improper "testimony was immediately followed by a *sua sponte* [curative] instruction").

## **STATEMENT OF RELEVANT FACTS**

On June 7, 2023, Mr. Badat gave testimony in this case while located in the United Kingdom. Present in the room with Mr. Badat was a Special Agent from the Federal Bureau of Investigations who was flown from the United States to the United Kingdom. As relevant to this motion, Mr. Badat testified as follows:

**Testimony Showing Lack of Danger**

- Mr. Badat has renounced Islamic extremism. June 7, 2023 Trial Transcript, Morning Session ("Morning Tr.") 97:9-25. Mr. Badat renouncing of extremism has been public, vocal, and years-long. *Id.*; June 7, 2023 Trial Transcript, Afternoon Session ("PM Tr.") 37:2-9.

- Mr. Badat has "accepted responsibility for" his crime and "served my time for it." PM Tr. 13:10-24; *see also id.* 8:13-17.

- There are no legal restrictions/supervisions on Mr. Badat. PM Tr. 15:15-16. He is not under the supervision of any law enforcement agency. *Id.* 17:15-18.

- There are no restrictions on Mr. Badat's ability to travel either within or outside the United Kingdom of Great Britain and Northern Ireland. He has a valid British/U.K. passport, and he is "free to come and go as [he] please[s]." PM Tr. 15:6-18.

- Mr. Badat has used his passport to travel outside of the U.K. in the last ten years. PM Tr. 38:9-13.

- Mr. Badat has never been arrested in connection with the 2004 Indictment in the District of Massachusetts (the "2004 Indictment"). PM Tr. 7:16-18.

- The government has known where Mr. Badat is at all times from 2004 to 2023. In all that time, "nobody came and fetched you [Badat] and extradited you to America." PM Tr. 7:19-8:7. Nor has anyone from the government attempted to convince Mr. Badat to voluntarily surrender himself to the United States. *Id.* 8:8-10.

- Mr. Badat has met with government prosecutors from the United States and other law enforcement persons including the FBI, lawyers from the National Security Division at the Department of Justice multiple times. PM Tr. 11:3-19. Indeed, an FBI agent appeared during Mr. Badat's testimony in this case to support Mr. Badat. *Id.* She remained present for the entirety of Mr. Badat's testimony, showed no concern of fear of attack from Mr. Badat and allowed Mr. Badat to have access to electronics within the room from which

testimony was being given. Mr. Badat was not frisked or searched before his entry into the room from which he gave testimony. Nor were his shoes examined.

- Mr. Badat was assigned a lawyer, pursuant to the Criminal Justice Act, and chose to testify without a grant of immunity. A.M Tr. 1.

- The Department of Justice, through government counsel Hughes, asked the Court to limit assignment of counsel just to the proceeding before this Court and not have it extend to other matters, including the 2004 Indictment.

- Mr. Badat is hoping to get the 2004 Indictment resolved. PM Tr. 7:13-15.

**Testimony Showing Willingness to Testify**

- Mr. Badat is willing to cooperate and provide testimony in return for less prison time and other accommodations. *See, e.g.,* Morning Tr. 79:7-21; 80:12-14; 85:8-10, 17-23; 85:7-11. PM Tr. 7:10-12. Mr. Badat received substantial benefits as a result of his cooperation. *Id.* 15:19-21; 17:11-24.

- Mr. Badat is not providing testimony because he is bound to do so by a cooperation agreement. PM Tr. 7:1-7. Rather, Badat has "decided to cooperate further" and "wanted to cooperate further" (Morning Tr. 86:3-5) for personal and religious reasons. Specifically, in providing testimony for the government, Mr. Badat's "main motivation was because it was part of my renouncing of Islamic extremist ideology." *Id.* 87:7-13; 88:1-2; *see also* PM Tr. 12:15-21; 34:5-9 ("Q: On direct, you testified about how you wanted to get out the true word of Islam; correct? A: Correct. Q: And that is your motivation for continued cooperation? A: Correct."); 34:12-25.

- Mr. Badat's reason for not coming to the United States and testifying in the courtroom is his fear of being arrested for the 2004 Indictment. PM Tr. 14:5-15:3; 37:14-19.

## **ARGUMENT**

The Court's previous decision permitting remote testimony was materially based on the government's consistent refusal to provide the Court with the necessary facts. Enough facts are now before the Court to establish that neither one of the two justifications previously accepted by the Court is sufficient here.

As to his supposed dangerousness, the undisputed facts show that the government has accepted that Mr. Badat has renounced violent extremism and poses no danger to anyone. In fact,

4

it is the Department of Justice who chose Mr. Badat as a witness and presented his testimony to the jury as true. In turn, it is Mr. Badat's testimony that he is no danger, and that he has "decided to cooperate further" and "wanted to cooperate further" (Morning Tr. 86:3-5) as part of his "renouncing of Islamic extremist ideology." *Id.* 87:7-13; 88:1-2; *see also* PM Tr. 12:15-21; 34:5-9 ("Q: On direct, you testified about how you wanted to get out the true word of Islam; correct? A: Correct. Q: And that is your motivation for continued cooperation? A: Correct."); 34:12-25. Mr. Badat's testimony – elicited by the government – is now part of the record before the Court, and it shows that Mr. Badat need not, and should not, have testified remotely.

Proving the lack of danger is Mr. Badat's testimony that he has lived without restriction or supervision for years. Given this, the U.K. cannot possibly Mr. Badat a danger because, *a fortiori*, a dangerous "shoe bomber" terrorist would not be allowed to have a passport and travel unsupervised and without restriction.

Likewise, Mr. Badat's testimonial evidence shows the U.S. government does not actually consider Mr. Badat to still be a dangerous terrorist. If the U.S. government truly believed that allowing Mr. Badat to board a plane threatened both American lives and the entire global transportation system – as the government has specifically and repeatedly argued to the Court, both orally and in writing, in this case – it would have acted to prevent Mr. Badat from using his passport. The (lack of) action – no extradition,[4] no Interpol "red notice,"[5] no effort to enforce an

---

[4] Extraditing Mr. Badat's to the United States is not difficult. The United States and the United Kingdom are signatories to an extradition treaty that would allow Mr. Badat to be sent to the United States in connection with his outstanding criminal charges. *See Extradition Treaty Between the United States of America and the United Kingdom of Great Britain and Northern Ireland* (available at https://www.congress.gov/108/cdoc/tdoc23/CDOC-108tdoc23.pdf). The treaty is in active use by the United States, as demonstrated by the recent efforts by the United States to extradite Julian Assange from the U.K. in connection with criminal charges filed against him in Virginia. *See* https://edition.cnn.com/2022/06/17/ulduk-julian-assange-extradition-ptiti-patel-intl-gbeindex.html.

indictment against Mr. Badat for 19 years and counting – speaks volumes. Just as telling is the presence of an FBI agent in a room with Mr. Badat during the deposition. There was no fear from any government attendees that Mr. Badat would appear with a bomb strapped to himself. Plainly, the government's "danger" concern does not extend to its own agents or member of the DOJ staff which provides further proof it is hollow and meritless.

As to the difficulty of obtaining evidence in terrorism cases, that difficulty is not present in the instant situation. Mr. Badat, who was presented to the jury by the Department of Justice as a religious man, testified that he viewed his testimony as a religious duty incumbent upon him – that his motivation for testifying in these cases is to "get out the true word of Islam." PM Tr. 34:5-9. He was eager to testify here, and the only thing preventing him from testifying in the courtroom was the government's improper machinations. Under these circumstances, where the only "difficulty" is one wholly created by the government, the infringement of Mr. Trabelsi's rights as a defendant is neither necessary nor justified.

It is now beyond cavil that remote testimony is not justified here. Accordingly, Mr. Trabelsi's Confrontation Clause rights under the Sixth Amendment have been improperly infringed, and the Court must impose a remedy. *Craig,* 497 U.S. at 850; *Carter,* 907 F.3d at 1205; *Yates,* 438 F.3d at 1315; *United States v. Ackerly,* 981 F.3d 70, 81 (1st Cir. 2020).

---

[5] Had the government submitted a "Red Notice" request to the INTERPOL's National Central Bureau, MR. Badat would not have been able to fly on his U.K. passport. Instead, he would have been placed on a Red Notice list informing and asking law enforcement worldwide to locate and provisionally arrest Mr. Badat pending extradition, surrender, or similar legal action. *See* https://www.interpol.int/en/How-we-work/Notices/View-Red-Notices.

**CONCLUSION**

For the foregoing reasons, the Court should grant Mr. Trabelsi's motion and (i) strike Mr. Badat's remote trial testimony and issue a curative instruction; or (ii) grant Mr. Trabelsi a mistrial; and (iii) grant Mr. Trabelsi such other and further relief as the Court deems just and proper.

Dated: June 12, 2023

Respectfully Submitted,

Marc Eisenstein
Coburn & Greenbaum, PLLC
1710 Rhode Island Avenue, N.W.
Second Floor
Washington, DC 20036
(202) 470-2695
marc@coburngreenbaum.com

/s/ Sabrina P. Shroff
80 Broad Street, 19th Floor
New York, New York 10007
(646) 763-1490
sabrinashroff@gmail.com

*Counsel for Nizar Trabelsi*

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that on June 12, 2023, a copy of the foregoing was filed with the Clerk of the Court and served on all counsel of record via e-mail.

/s/
Sabrina Shroff