# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

UNITED STATES OF AMERICA

v.                                              06-CR-089 (RDM)

NIZAR TRABELSI

## DEFENDANT'S RENEWED MOTION TO ADMIT DECLARATION OF ABDELCRIM EL-HADDOUTI

Defendant Nizar Trabelsi, through undersigned counsel, respectfully moves the Court to admit the declaration of Abdelcrim el-Haddouti. A copy of the declaration is attached hereto. The Court previously found that the defense "has not carried its burden under Rule 804(b)(3)" in seeking to introduce the declaration of Mr. Haddouti. As further set forth below, Mr. Trabelsi submits that he has met the burden to introduce the statement of Mr. Haddouti.

## STATEMENT OF FACTS

On September 13, 2001, Mr. Trabelsi was arrested in his apartment in Belgium. Mr. Haddouti was also arrested. Approximately one week later, Belgian Federal Police searched Le Nil restaurant in connection with their investigation of Mr. Trabelsi. The restaurant was owned by family members of Mr. Haddouti. Law enforcement found what the government contends is sulfur and acetone in the restaurant.

In 2003, Mr. Trabelsi and Mr. Haddouti were convicted and sentenced to prison in Belgium. Mr. Haddouti was released from prison in approximately 2008 and currently resides in Belgium. In July 2019, Mr. Trabelsi's then defense counsel and an investigator met with Mr. Haddouti in Belgium. Mr. Haddouti refused requests for him to testify at Mr. Trabesli's trial in

the United States or be deposed in Belgium.  However, Mr. Haddouti made a written declaration where he claimed sole responsibility for the purchase, transport, and storage of the sulfur and acetone found in Le Nil restaurant in September 2001.  Mr. Haddouti also declared that he bought the chemicals at the request of his brother, who needed them for his drug business.  Mr. Haddouti signed the declaration under penalty of perjury and expressed his belief that signing it could expose him to further prosecution.  The witness was informed of Mr. Trabelsi's intent to introduce the declaration at his trial in the United States.  If needed, the defense will present testimony from witnesses, including Mr. Trabelsi's former counsel, about the circumstances surrounding the creation of the declaration.

## ARGUMENT

Hearsay is an out-of-court statement offered to prove the truth of the matter asserted.  *See* Fed. R. Evid. 801(c).  Mr. Haddouti's declaration is hearsay because it was made in Belgium and the defense seeks to offer it to prove that "[Mr. Trabelsi] was not present when [Mr. Haddouti] bought the sulfur and acetone, and he had nothing to do with these products."  Declaration of Abdelcrim el-Haddouti ("Declaration") at 2.  Hearsay is admissible if an exception applies.  *See* Fed. R. Evid. 802.  Mr. Trabelsi respectfully submits that two hearsay exceptions permit the introduction of the declaration: (i) statements against penal interest, *see id.* 804(b)(3); and (ii) the residual exception, *id.* 807.

## I.    Mr. Haddouti's Statement is Against Penal Interest

A hearsay statement qualifies as a statement against penal interest if (i) the declarant is unavailable as a witness; (ii) the statement is against the declarant's penal interest; and (iii)

corroborating circumstances clearly indicate the statement's trustworthiness.  *See id.* 804(b)(3).

To qualify under this exception, the Defendant must prove, by a preponderance of the evidence,

that these requirements are met.  *See United States v. Bigesby*, 685 F.3d 1060, 1065 (D.C. Cir.

2012); *United States v. Moore*, 651 F. 3d 30, 82-83 (D.C. Cir. 2011); *United States v. Clark*, 325

F. Supp. 3d 191, 196 (D.D.C. 2018); *United States v. Hsia*, 87 F. Supp. 2d 10, 13 (D.D.C. 2000).

### A. Mr. Haddouti is Unavailable Because He is Beyond the Court's Subpoena Power, the Defense Has Repeatedly Attempted to Secure His Presence and He Has Refused to Testify.

A declarant is unavailable as a witness when he "is absent from the trial or hearing and

the statement's proponent has not been able, by process or other reasonable means, to

procure…the declarant's attendance or testimony."  Fed. R. Evid. 804(a)(5).  Courts consider the

declarant's location beyond the court's subpoena power, proponent's attempts to secure the

declarant's presence at trial, and declarant's refusal to testify.  *See, e.g.*, *United States v. Abu*

*Khatallah*, 282 F. Supp. 3d 279, 282-83 (D.D.C. 2017).

### 1. Mr. Haddouti is beyond the Court's subpoena power.

Mr. Haddouti resides in Belgium and is beyond the Court's subpoena power.  This

supports a finding of unavailability.  *See Khatallah*, 282 F. Supp. 3d at 282; *United States v.*

*Burden*, No. 14-CR-0069 (RMC), 2016 WL 5108010, at *10 (D.D.C. Sept. 20, 2016) (Thai

national living in Thailand unavailable); *Athridge v. Aetna Cas. & Sur. Co.*, 474 F. Supp. 2d 102,

115 (D.D.C. 2007) (out-of-state witnesses unavailable).  In *Khatallah*, the declarant, a Libyan

national residing in Libya, was unavailable for trial in D.C., partly because "there is no subpoena

power over foreign nationals located abroad."  282 F. Supp. 3d at 282; *see also* Fed. R. Crim. P.

17(e) (permitting subpoena service within U.S.); 28 U.S.C. § 1783 (permitting subpoena of U.S.

national or resident in foreign country).  As a result of his location, Mr. Trabelsi cannot use legal process to compel Mr. Haddouti's attendance at trial.

### 2. *The Defense has made repeated attempts to secure Mr. Haddouti's presence at trial.*

A finding of unavailability is supported by repeated and in-person attempts at procuring a declarant's presence at trial.  *See Khatallah*, 282 F. Supp. 3d at 282-83 (repeated, but unsuccessful, attempts at securing the declarant's presence at trial supports a finding of unavailability); *Burden*, 2016 WL 5108010, at *10 (in-person, but unsuccessful, attempts to secure a declarant's presence at trial supports a finding of unavailability). Counsel for Mr. Trabelsi have made repeated attempts to get Mr. Haddouti to appear at trial, including in-person attempts.  Most recently, Mr. Trabelsi's counsel and an investigator attempted to meet Mr. Haddouti in Belgium.  Mr. Haddouti refused to speak directly with Mr. Trabelsi's counsel or investigator.  Instead, he passed messages through third parties and scheduled times and dates to meet.  Mr. Haddouti failed to appear.  Rather than merely enlisting personnel stationed abroad to contact Mr. Haddouti on their behalf, Mr. Trabelsi's counsel and investigator traveled to Belgium to try to meet with Mr. Haddouti. Mr. Trabelsi's repeated attempts at procuring Mr. Haddouti's presence support a finding of unavailability.

### 3. *Mr. Haddouti has refused to testify.*

Mr. Haddouti's refusal to testify renders him unavailable.  *See Amobi v. Brown*, 317 F. Supp. 3d 29, 38-39 (D.D.C. 2018) (declarant unavailable where family members indicated her refusal to come to D.C. to testify); *Khatallah*, 282 F. Supp. 3d at 283; *Burden*, 2016 WL 5108010, at *10 (declarant, who "clearly refused" to return to U.S. for trial, unavailable); *cf. United States v. Warren*, 713 F. Supp. 2d 1, 4 (D.D.C. 2010) ("Evidence that a witness

4

specifically refuses to testify at trial is potent proof of unavailability required for purposes of Rule 15(a).") (internal quotation marks omitted).  In *Khatallah*, the declarant declined to attend trial, citing security concerns for himself and his family, the confidentiality of his cooperation with the FBI, and his duties to the Libyan National Army.  282 F. Supp. 3d at 283.  Finding "no indication that these concerns [were] not genuine," the court deemed the declarant unavailable. *Id.*  Much like the declarant in *Khatallah*, Mr. Haddouti has declined to testify at trial or by deposition in Belgium, citing concerns that: (1) the United States government may try to charge him as it has charged Mr. Trabelsi; and (2) any connection to the Defendant will bring more pressure on him by Belgian authorities.  Declaration at 2-3.  Just as the court found in *Khatallah*, there is no indication that these concerns are insincere.[1]  Mr. Haddouti's refusal to testify renders him unavailable.

Given Mr. Haddouti's location beyond the Court's subpoena power, Mr. Trabelsi's repeated and in-person attempts to procure Mr. Haddouti's trial attendance, and Mr. Haddouti's refusal to testify, Mr. Trabelsi submits that Mr. Haddouti is unavailable.

### B.  Mr. Haddouti's Statements Are Against His Penal Interest

A statement is against the declarant's penal interest if "a reasonable person in the declarant's position would have made [the statement] only if the person believed it to be true because, when made, it…had so great a tendency…to expose the declarant to…criminal liability."  Fed. R. Evid. 804(b)(3)(A).  In determining whether a statement is against penal

---

[1] In fact, Mr. Haddouti's concern that the U.S. government may try to charge him as it has charged the Defendant is plausible.  Although the alleged crimes occurred eighteen years ago, there is no statute of limitations for federal crimes of terrorism that pose a risk of death or serious bodily injury.  *See* 18 U.S.C. § 3286(b) ("an indictment may be found or an information instituted at any time without limitation for any offense listed in section 2332b(g)(5)(B), if the commission of such offense resulted in, or created a foreseeable risk of death or serious bodily injury to another person.").  The government referred to Mr. Haddouti as a co-conspirator during the trial.

interest, courts consider: (1) the declarant's awareness of potential prosecution; (2) whether the statement shifts blame; (3) whether the statement takes credit for a terrorist attack; and (4) the declarant's prison sentences for related conduct. *See, e.g.*, *Chambers v. Mississippi*, 410 U.S. 284, 301-02 (1973) (awareness); *United States v. Coachman*, 727 F.2d 1293, 1296-97 (D.C. Cir. 1984) (blame-shifting); *Shatsky v. Palestine Liberation Org.*, 292 F. Supp. 3d 188, 193-95 (D.D.C. 2017) (terrorist attack, prison sentence).

Because Mr. Haddouti has articulated his awareness of potential prosecution, his declaration does not shift blame onto others, and his statement does not seek public attribution for his actions, his declaration is against his penal interests.

### 1. *Mr. Haddouti is aware of a potential prosecution.*

The declarant's awareness that the statement could lead to prosecution bolsters the statement's tendency to expose the declarant to criminal liability. *See, e.g.*, *Chambers*, 410 U.S. at 301-02. Courts consider whether the declarant articulates awareness of potential prosecution, believes that he has immunity and believes that the statement is privileged. *See id.* (articulation); *United States v. Slatten*, 865 F.3d 767, 805 (D.C. Cir. 2017) (immunity); *Hsia*, 87 F. Supp. 2d at 16 (same); *United States v. Skinner*, 796 F. Supp. 31, 35 (D.D.C. 1992), *aff'd*, 10 F.3d 13 (D.C. Cir. 1993) (privilege).

Articulating awareness of potential prosecution strengthens the statement's tendency to expose the declarant to criminal liability. *See Chambers*, 410 U.S. at 301-02. In *Chambers*, the declarant's murder confession "was well within the basic rationale of the exception for declarations against interest," partly because the declarant urged the friend to whom he confessed "not to 'mess him up,'" showing that "he must have been aware of the possibility that disclosure

6

would lead to criminal prosecution." *Id.* Like the declarant in *Chambers*, Mr. Haddouti has articulated his awareness that his declaration could lead to prosecution: "I believe that just by signing this declaration I am putting myself in jeopardy and at risk of further prosecution by the Belgian government and perhaps the United States government because I am admitting that I bought the sulfur and acetone." Declaration at 3.

On the other hand, statements made under a belief of immunity are less likely to expose the declarant to criminal liability. *See Slatten*, 865 F.3d at 805 (co-defendant's immunized statements that he, rather than defendant, fired first shots at vehicle inadmissible as statements against interest); *Hsia*, 87 F. Supp. 2d at 16 (finding grand jury testimony inadmissible because the declarants "believed that they had full and unqualified immunity" and their only knowledge of potential liability was a boilerplate provision in their immunity agreement). Mr. Haddouti's declaration indicates no belief that he has immunity and Mr. Haddouti's knowledge of potential liability is a personal acknowledgment in his declaration that signing it could expose him to prosecution. Because Mr. Haddouti's declaration was not made under a belief of immunity, his statements further expose him to criminal liability.

Similarly, statements made under a belief of privilege are less likely to expose the declarant to criminal liability. *See Skinner*, 796 F. Supp. at 35. In *Skinner*, the declarant's statement claiming ownership of drugs found in his mother's home was inadmissible as a statement against interest, partly because it was "unclear that the declarant even understood that by speaking to his mother's agent, namely her attorney's investigator, he could subject himself to liability at all." *Id.* The court reasoned:

> The declarant could have believed that the discussion was privileged in some way, in light of the investigator's connection to his mother's attorney. The declarant did

> not have counsel present at the interview and there were no police or other
> government representatives present who would be likely to make him cautious.

*Id.*   As in *Skinner*, Mr. Haddouti had no counsel at the interview at which he signed his

declaration, nor were police or other government representatives present.  However, unlike the

declarant in *Skinner*, Mr. Haddouti had no basis for believing that his conversation with the

Defendant's counsel and investigator was privileged.   In fact, the Mr. Trabelsi's counsel

expressly informed Mr. Haddouti of her intent to introduce his declaration at trial.

Because Mr. Haddouti articulated awareness of potential prosecution and displayed no

belief of immunity or privilege, his declaration is more likely to expose him to criminal liability.

### 2.  Mr. Haddouti's declaration lacks blame-shifting.

A statement that does not shift blame onto others is more likely to expose the declarant to

criminal liability, further supporting a finding that the statement is against penal interest.  *See*

*Coachman*, 727 F.2d at 1296-97.   In *Coachman*, an accomplice's confession qualified as a

declaration against penal interest, partly because the confession did not attempt to trivialize the

accomplice's involvement in the conspiracy "by shifting responsibility to his cohorts; rather, it

frankly disclosed the extent of his own participation without any effort to demonstrate that others

were really the ones to blame."   *Id.*   Like the confession in *Coachman*, Mr. Haddouti's

declaration explicitly discloses the extent of his participation in the conspiracy: "I knew that the

sulfur and acetone were at Le Nil because I bought these items and put them in the back area of

the restaurant."  Declaration at 2.  Furthermore, like the confession in *Coachman*, Mr. Haddouti's

declaration does not seek to minimize his involvement by inculpating his coconspirators; rather,

it emphatically exculpates the Defendant: "I take responsibility for all these products…[Mr.

Trabelsi] was not present when I bought the sulfur and acetone, and he had nothing to do with

8

these products." *Id.* Because Mr. Haddouti's declaration does not shift blame onto others, it is more likely to expose Mr. Haddouti to criminal liability, further supporting a finding that the declaration is against his penal interest.

### 3. Mr. Haddouti received no credit for a terrorist attack.

A statement that takes credit for a terrorist attack is less likely to be against the declarant's penal interest. *See Shatsky*, 292 F. Supp. 3d at 193-95; *Gilmore v. Palestinian Interim Self-Gov't Auth.*, 53 F. Supp. 3d 191, 205 (D.D.C. 2014), *aff'd on other grounds*, 843 F.3d 958 (D.C. Cir. 2016). "[U]nder the perverse assumptions of terrorists, an armed attack on civilians reflects glory. 'Taking credit' for such an attack is deemed a benefit, not a detriment[.]" *Gilmore*, 53 F. Supp. 3d at 205 (internal quotation marks omitted) (quoting *Gill v. Arab Bank, PLC*, 893 F. Supp. 2d 542, 569 (E.D.N.Y. 2012)). In *Gilmore*, an alleged gunman's statement that he wanted to announce to the media that he assumed responsibility for a shooting was inadmissible as a statement against interest. *Id.* The alleged gunman's "very desire to 'assume responsibility' for the [shooting] suggests that he perceived public attribution for the attack to be *in* his interest, not contrary to it." *Id.* Similarly, in *Shatsky*, a Foreign Terrorist Organization member's statement in a livestreamed interview, indicating that one of the organization's leaders executed a bombing, was inadmissible as a statement against interest. 292 F. Supp. 3d at 195.

Although Mr. Haddouti's declaration assumes responsibility for chemicals that the United States government alleges were to be used in building a bomb, *Shatsky* and *Gilmore* are inapposite for three reasons. First, Mr. Haddouti's declaration does not take credit for the suspected terrorist plot. Mr. Haddouti maintains that the chemicals were for manufacturing drugs, not explosives: "[My brother] was involved in drug dealing, and I understood that he

needed these products as part of his drug business." Declaration at 2. Second, his declaration was not publicly broadcasted; rather, it was made privately to the Mr. Trabelsi's counsel and investigator. Thus, Mr. Haddouti could not have reasonably expected "public attribution" for purchasing and storing the chemicals. *Gilmore*, 53 F. Supp. 3d at 205. Third, unlike the shooting in *Gilmore* and the bombing in *Shatsky*, the bombing that Mr. Haddouti was suspected of planning never occurred. Even in the "warped reality" of terrorism, a thwarted plot would hardly reflect the same degree of "glory" as an executed attack. *See Shatsky*, 292 F. Supp. 3d at 194. Thus the declaration is squarely against Mr. Haddouti's penal interest.

### C. There Are Corroborating Circumstances That Support the Trustworthiness of Mr. Haddouti's Declaration

A statement "offered in a criminal case as one that tends to expose the declarant to criminal liability" must be "supported by corroborating circumstances that clearly indicate its trustworthiness." Fed. R. Evid. 804(b)(3)(B). Courts consider the statement's timing, the party or parties to whom the statement was made, the declarant's repetition of the statement, the declarant's relation to the defendant; and the existence or absence of corroborating evidence. *See, e.g.*, *United States v. Wilson*, 160 F.3d 732, 739-41 (D.C. Cir. 1998); *United States v. Edelin*, 996 F.2d 1238, 1242 (D.C. Cir. 1993).

#### 1. The timing of Mr. Haddouti's declaration is appropriate under the circumstances.

Statements made soon after the crime are more trustworthy than those made shortly before trial. *Compare Chambers*, 410 U.S. at 302 (confessions made on night of and morning after murder "bore persuasive assurances of trustworthiness"), *and Wilson*, 160 F.3d at 739 (statements made on day after murder admissible as statements against interest), *with Edelin*, 996 F.2d at 1242 (signed written statement obtained on day of trial inadmissible as statement against

interest).  Mr. Haddouti's declaration was made two months before the original trial date—nearly eighteen years after the Mr. Trabelsi's arrest in Belgium and nearly six years after the Defendant's extradition to the United States.[2]   Mr. Trabelsi was extradited to the United States 12 years after his arrest without notice.  He did not have United States defense counsel until 2013.  Given the unique procedural history of Mr. Trabelsi's prosecution in Belgium and extradition to the United States, the delay does not undermine the trustworthiness of the declaration.

### 2.   *The parties to whom Mr. Haddouti's declaration was given does not undermine its trustworthiness*

A statement to a defense investigator may be admissible under Rule 804(b)(3) where other corroborating circumstances clearly indicate its trustworthiness.  *See Clark*, 325 F. Supp. 3d at 197-98.  In *Clark*, an affidavit that a defense investigator drafted in the declarant's presence was admissible as a statement against interest.  *Id.*  It was undisputed that the declarant met with the investigator and signed the affidavit and that the affidavit was notarized.  *Id.* at 197.  Furthermore, the circumstances under which the declarant signed the affidavit were corroborated by the investigator's evidentiary hearing testimony and by a review of the affidavit itself, which showed handwritten corrections initialed by the declarant and the declarant's signature at the bottom of each page.  *Id.*  Mr. Trabelsi will present testimony from his prior counsel to corroborate the circumstances under which Mr. Haddouti signed the declaration.  The fact that Mr. Haddouti provided his declaration to Mr. Trabelsi's attorney and investigator does not preclude its admissibility as a statement against interest.

---

[2] Mr. Haddouti claims that he told Belgian police in 2001 that he bought the sulfur and acetone.  Declaration at 2. That statement would have been made soon after his arrest.  However, Mr. Trabelsi seeks to introduce Mr. Haddouti's declaration, the appropriate consideration is the declaration's timing.

11

### 3. Mr. Haddouti has repeated the statements in his declaration.

A statement that the declarant repeats is more trustworthy than one that the declarant contradicts. *Compare Chambers*, 410 U.S. at 300 (declarant thrice orally confessed to murder; "sheer number of independent confessions provided additional corroboration for each"), *and Wilson*, 160 F.3d at 739 (codefendant's two post-murder statements that he informed defendants of murder victim's whereabouts admissible as statements against interest), *with Moore*, 651 F.3d at 83 (murder confession that declarant contradicted on three separate occasions inadmissible as statement against interest).

Mr. Haddouti has both repeated *and* contradicted his admission to buying the sulfur and acetone. As his declaration notes, Mr. Haddouti confessed to the chemicals purchase when he was arrested eighteen years ago: "I told the [Foreign Country's] police in 2001 that I bought these products, and that was the truth." Declaration at 2. The voluminous discovery, including the records of the Belgian trial, contain both repetitions and contradictions of the information contained in the declaration. Thus, this factor neither supports nor undermines the admissibility of Mr. Haddouti's statements.

### 4. Mr. Haddouti's relation to Mr. Trabelsi is weak

Statements exculpating a relative or close friend are less trustworthy because the declarant may have an incentive to lie on the defendant's behalf. *See Bigesby*, 685 F.3d at 1065 (statement exculpating mother of declarant's children inadmissible as statement against interest); *Davis*, 6 F. App'x at 19 (statement exculpating brother inadmissible); *United States v. Simmons*, 431 F. Supp.

2d 38, 71-72 (D.D.C. 2006) (same); *Edelin*, 996 F.2d at 1242 (statements exculpating uncle inadmissible); *Skinner*, 796 F. Supp. at 34 (statement exculpating mother inadmissible).

There are facts that suggest Mr. Haddouti and Mr. Trabelsi were no longer friends—or, at the very least, no longer close friends—when Mr. Haddouti made his declaration. First, Mr. Haddouti was arrested at Mr. Trabelsi's apartment, convicted of being his coconspirator, and sentenced to five years' imprisonment. The consequences that Mr. Haddouti suffered as a direct result of his association with Mr. Trabelsi have strained, if not destroyed, their friendship. Second, given the Special Administrative Measures imposed on Mr. Trabelsi, Mr. Haddouti and Mr. Trabelsi have not seen or spoken with each other in at least 10 years. Third, Mr. Haddouti refers to their friendship in the past tense. *See* Declaration at 1 ("we *were* friends") (emphasis added). Therefore, Mr. Haddouti's statements are more trustworthy given his weak relationship with Mr. Trabelsi at the time of his declaration.

### 5.   *There is corroborating evidence to support Mr. Haddouti's declaration.*

Statements corroborated by other evidence in the case are more trustworthy than those that lack credible corroborating evidence. *Chambers*, 410 U.S. at 300, 302 (oral murder confessions, which were corroborated by sworn written confession, eyewitness testimony to shooting, testimony that declarant was seen with gun immediately after shooting, and proof of declarant's prior gun ownership and subsequent gun purchase, "bore persuasive assurances of trustworthiness"). Mr. Haddouti's admission to purchasing the sulfur and acetone is corroborated by a statement of the shopkeeper who sold him the chemicals, Erol Genc, to Belgian authorities in 2001: "Upon interrogation, GENC acknowledges to have sold the sulfur and acetone…on request by [Mr. Haddiuti]." T 0036790-082.

Because Mr. Haddouti is unavailable as a witness, his declaration is against his penal interest, and corroborating circumstances indicate the declaration's trustworthiness, it is admissible as a hearsay exception.

## II.     Mr. Haddouti's Declaration Falls Under the Residual Exception

Under the residual exception, a statement "is not excluded by the rule against hearsay even if the statement is not specifically covered by a hearsay exception in Rule 803 or 804" if (1) "the statement has equivalent circumstantial guarantees of trustworthiness;" (2) "it is offered as evidence of a material fact;" (3) "it is more probative on the point for which it is offered than any other evidence that the proponent can obtain through reasonable efforts;" (4) "admitting it will best serve the purposes of [the Federal Rules of Evidence] and the interests of justice"; and (5) "before the trial or hearing, the proponent gives an adverse party reasonable notice of the intent to offer the statement and its particulars, including the declarant's name and address, so that the party has a fair opportunity to meet it." *Id.* 807.  The residual exception is narrow but applicable if the testimony is "very important and very reliable."  *United States v. Washington*, 106 F.3d 983, 1001 (D.C. Cir. 1997) (per curiam) (quoting *United States v. Kim*, 595 F.2d 755, 766 (D.C. Cir. 1979)).    The trial court enjoys "broad discretion…in assessing the probity and trustworthiness of documents."  *S.E.C. v. First City Fin. Corp.*, 890 F.2d 1215, 1225 (D.C. Cir. 1989).

14

### A. Mr. Haddouti's Declaration has Equivalent Circumstantial Guarantees of Trustworthiness

The statement must have "circumstantial guarantees of trustworthiness" equivalent to those found in Rules 803 and 804.  Fed. R. Evid. 807(a)(1).  Trustworthiness is based on the totality of the circumstances, however, relevant factors include: (1) whether the statement was made under threat of prosecution for false statements; (2) whether the statement is ambiguous; (3) the consistency of the declarant's statements; (4) whether the declarant had a motive to lie; and (5) the existence or absence of corroborating evidence.  *See, Slatten*, 865 F.3d at 807–09; *S.E.C. v. Prince*, No. CV 09-1423 (GK), 2012 WL 13076352, at *1 (D.D.C. Dec. 6, 2012).

The threat of prosecution for false statements increases trustworthiness.  *See Slatten*, 865 F.3d at 808 (statement admissible under residual exception where declarant faced prosecution for materially false statements under 18 U.S.C. § 1001).  Mr. Haddouti's declaration was given under penalty of perjury: "I, Abdelcrim el-Haddouti, pursuant to 28 U.S.C. § 1746, declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct."  Declaration at 3.  The threat of prosecution for perjury bolsters the trustworthiness of Mr. Haddouti's declaration.

Unambiguous statements are more trustworthy than ambiguous ones.  *Dang v. Inn at Foggy Bottom*, 85 F. Supp. 2d 39, 44 n.4 (D.D.C. 2000) (translation of plaintiff's letter admissible under residual exception where circumstances, including clarity of translation, "provide[d] sufficient guarantees of trustworthiness").  Mr. Haddouti's declaration unambiguously accepts responsibility for the sulfur and acetone:

> I knew that the sulfur and acetone were at Le Nil because I bought these items and put them in the back area of the restaurant.  I told the [Foreign Country's] police in

2001 that I bought these products, and that was the truth.  I take responsibility for
all of these products.

Declaration at 2.  It also unequivocally exculpates Mr. Trabelsi: "[Mr. Trabelsi] was not present
when I bought the sulfur and the acetone, and he had nothing to do with these products."  *Id.*  The
clarity of Mr. Haddouti's declaration augments its trustworthiness.

The consistency of the declarant's statements also indicates trustworthiness.  *Slatten*, 865
F.3d at 808 (co-defendant's statements that he, rather than defendant, fired first shots at vehicle
admissible under residual exception where co-defendant consistently reported essential details of
his story over course of multiple interviews).  Mr. Haddouti's declaration is consistent with two
prior statements he gave to Belgian police in which he admitted to buying the sulfur and acetone.[3]
While there are other prior inconsistent statements to Belgian authorities by Mr. Haddouti, the
facts and circumstances do not render the declaration untrustworthy.

A motive to lie reduces the declarant's trustworthiness.  *Sabre Int'l Sec. v. Torres
Advanced Enter. Sols., LLC*, 72 F. Supp. 3d 131, 151 (D.D.C. 2014) ("self-serving" declarations
claiming outstanding sums of money from plaintiff and defendant inadmissible under residual
exception).  While Mr. Haddouti and Mr. Trabelsi were once close friends, their friendship has
fallen apart after a decade of no contact.  This does not establish a motive for Mr. Haddouti to lie
and the fact that he may be at risk of criminal prosecution for the content of his declaration rebut
any perceived motive to lie.

---

[3] "I would still like to add that [the Defendant] is lying when he says that I allegedly purchased chemical products for
him.  I repeat that I purchased those products for someone whose identity I cannot reveal to you."  T_0010425.
"[The Defendant] states that the products were at his place in his residence and that following a visit by a local
officer he transferred the products to the restaurant Le Nil.  I hereby state that, on the one hand, I do not know how
he could have brought those products and, on the other—the products found in the restaurant—I'm the one who put
them there[The Defendant] states that he was in my company when he bought the chemical products, which is totally
false.  The seller never said that I was accompanied by [the Defendant].  I was alone when I went to buy the chemical
products.  The seller can confirm my statements to you."  Process-Verbal – Hearing Sheet, [The Defendant]
Translated 57-006.

Statements corroborated by other evidence in the case are more trustworthy than those that lack credible corroborating evidence.  *Chambers*, 410 U.S. at 300, 302 (oral murder confessions, which were corroborated by sworn written confession, eyewitness testimony to shooting, testimony that declarant was seen with gun immediately after shooting, and proof of declarant's prior gun ownership and subsequent gun purchase, "bore persuasive assurances of trustworthiness").  Mr. Haddouti's admission to purchasing the sulfur and acetone is corroborated by a statement of the shopkeeper who sold him the chemicals, Erol Genc, to Belgian authorities in 2001: "Upon interrogation, GENC acknowledges to have sold the sulfur and acetone…on request by [Mr. Haddiuti]."  T 0036790-082.

Thus, the statements in Mr. Haddouti's declaration have sufficient "circumstantial guarantees of trustworthiness" to support their admissibility.

### B.  Mr. Haddouti's Declaration is Evidence of Material Fact

The statement must be "offered as evidence of a material fact."  Fed. R. Evid. 807(a)(2).  That is, it must "make the existence of a fact in issue 'more probative or less probative than it would be without the evidence.'"  *Prince*, 2012 WL 13076352, at *2.  A statement that is relevant to a criminal charge, *see, e.g.*, *id.*, and/or bolsters a defense, *see Slatten*, 865 F.3d at 809, meets this requirement.

A statement that is relevant to a criminal charge is evidence of a material fact.  *See Prince*, 2012 WL 13076352, at *2 (accounting firm letters relevant to charge that defendant violated Bar Order against his appearing or practicing before Securities and Exchange Commission as an accountant were evidence of material fact); *United States v. Esquivel*, 755 F. Supp. 434, 442 (D.D.C. 1990) (in prosecution for murder by use of explosives, prior testimony

that defendant received blasting cap near date of crime "clearly material" and thus admissible under residual exception).  Mr. Haddouti's declaration is relevant to the charges against Mr. Trabelsi. A statement that bolsters a defense is evidence of a material fact.  *See Slatten*, 865 F.3d at 809 (co-defendant's statements, offered by defendant to prove that co-defendant fired first shots at vehicle, were evidence of material fact).  By taking responsibility for the sulfur and acetone, Mr. Haddouti's declaration bolsters the defense that Mr. Trabelsi had nothing to do with these products.

### C.  Mr. Haddouti's Declaration is More Probative Than Any Other Evidence

The statement must be "more probative on the point for which it is offered than any other evidence that the proponent can obtain through reasonable efforts."  Fed. R. Evid. 807(a)(3). Courts consider: (1) the declarant's availability; (2) the availability of other evidence to prove the point; (3) the proponent's diligence in seeking other evidence; and (4) whether the statement contradicts the crux of the government's case.  *See, e.g.*, *Slatten*, 865 F.3d at 809 (contradicts crux of government's case); *Partido*, 311 F. Supp. 2d at 20 (declarant's availability); *Alexander*, 198 F.R.D. at 320 (availability of other evidence, proponent's diligence).

#### 1.  Mr. Haddouti is Unavailable.

The declarant's unavailability supports a finding that the statement is more probative on the point for which it is offered than any other evidence that the proponent can reasonably obtain. *Compare Prince*, 2012 WL 13076352, at *2 (letters admissible under residual exception where authors unavailable to testify at trial), *and Dang*, 85 F. Supp. 2d at 44 n.4 (translation of plaintiff's letter admissible under residual exception where translator's whereabouts unknown), *with United States v. Wilkerson*, 656 F. Supp. 2d 22, 37 n.8 (D.D.C. 2009) (police report of

eyewitness' statement inadmissible under residual exception where eyewitness' live testimony "was readily available"), *Barry v. Trs. of Int'l Ass'n Full-Time Salaried Officers*, 467 F. Supp. 2d 91, 104 (D.D.C. 2006) (memoranda chronicling interviews inadmissible under residual exception, given interviewee's "potential live testimony"), *and Partido*, 311 F. Supp. 2d at 20 (neither handwritten notation nor certified statement admissible under residual exception where "no indication" that declarant unavailable to testify in person or by deposition).  Mr. Haddouti is unavailable because he is beyond the court's subpoena power and has refused defense counsel's repeated requests for him to testify at trial or by deposition.  *See supra* pp. 6-9.  Mr. Haddouti's unavailability supports a finding that his declaration is more probative of Mr. Trabelsi's innocence of the chemicals purchase than any other reasonably obtainable evidence.

### 2.   There is no other evidence other than the statement offered.

A statement is more likely to satisfy Rule 807(a)(3) when no other evidence is available to prove the point for which the statement is offered.  *Compare Alexander*, 198 F.R.D. at 320 (statement, which was only source that could "conclusively demonstrate" point for which it was offered, admissible under residual exception), *and Esquivel*, 755 F. Supp. at 442 (prior testimony admissible under residual exception where "[n]o other evidence [was] available to establish the point"), *with Kim*, 595 F.2d at 765-66 (exculpatory telex message inadmissible under residual exception where defendant "failed to demonstrate that other, more probative evidence…could not reasonably be obtained"), *Barry*, 467 F. Supp. 2d at 104 (memoranda inadmissible under residual exception where information in memoranda was available from admissible Senate Report), *Bell v. Gonzales*, No. CIV.A. 03-163 (JDB), 2005 WL 3555490, at *7 (D.D.C. Dec. 23, 2005) (statements about meeting inadmissible under residual exception, given "availability of other

witnesses with personal knowledge" of meeting), *and Partido*, 311 F. Supp. 2d at 19 (handwritten notation indicating approval of application inadmissible under residual exception absent showing that more probative evidence of approval was unavailable).

No evidence other than Mr. Haddouti's declaration is available to prove that Mr. Haddouti—not Mr. Trabelsi—purchased the sulfur and acetone. To defense counsel's knowledge, no invoice, receipt, or other record of the transaction exists. The unavailability of other evidence supports a finding that Mr. Haddouti's declaration is more probative of the Defendant's innocence of the chemicals purchase than any other reasonably obtainable evidence.

### *3.   Proponent diligently sought other evidence.*

Rule 807(a)(3) requires the statement's proponent to have diligently sought admissible evidence on the point for which the statement is offered. *Compare Alexander*, 198 F.R.D. at 320 (statement admissible under residual exception where proponents "exhaustively searched for other evidence" on point for which it was offered), *with Barry*, 467 F. Supp. 2d at 104 (memoranda chronicling interviews inadmissible under residual exception where proponent failed to depose interviewees or seek through discovery other sources for information contained in memoranda), *and Bortell v. Eli Lilly & Co.*, 406 F. Supp. 2d 1, 10 (D.D.C. 2005) (affidavits inadmissible under residual exception where proponent knew affiants, who became unavailable, were elderly but failed to depose them). The Defendant's counsel and investigator traveled to Belgium in an attempt to procure the testimony of Mr. Haddouti. Thus, the Defendant has diligently sought admissible evidence on the point for which Mr. Haddouti's declaration is offered.

### 4.   *The statement contradicts crux of the Government's case.*

In a criminal prosecution, a statement that contradicts the crux of the government's case is more likely to satisfy Rule 807(a)(3).   *Compare Slatten*, 865 F.3d at 809 (co-defendant's statements, which "contradict[ed] the core of the homicide count against" defendant, admissible under residual exception), *with Washington*, 106 F.3d at 1002 (defendant's prior consistent statement, which "was too vague to be inconsistent with the prosecution's theory," inadmissible under residual exception).   Mr. Haddouti's declaration refutes two key allegations set forth in the Indictment—namely, that the Defendant "bought quantities of chemicals, including acetone, sulfur, nitrate, and glycerine, to be used in manufacturing a 1,000-kilogram bomb" and "moved, and caused to be moved, a quantity of chemicals, including acetone and sulfur, from [his] apartment to a restaurant operated by a conspirator."   Superseding Indictment at 8.   Because it contradicts critical elements of the government's case against the Defendant, the declaration is more likely to satisfy Rule 807(a)(3).

Mr. Haddouti's declaration is more probative of the Defendant's innocence of the chemicals purchase than any other reasonably obtainable evidence because Mr. Haddouti is unavailable, other evidence to prove the point is unavailable, the Defendant has diligently sought other evidence, and the declaration contradicts critical elements of the government's case.

### D.  The Admission Serves Purposes of Federal Rules of Evidence and Interests of Justice

Admitting the statement must "best serve the purposes of [the Federal Rules of Evidence] and the interests of justice."   Fed. R. Evid. 807(a)(4).   In *Slatten*, admitting the co-defendant's statements that he—not the defendant—fired the first shots at the vehicle served the purposes of the Federal Rules of Evidence and the interests of justice.   865 F.3d at 809.   The court reasoned

that "[a]llowing the jury to weigh the statements—to determine their weight, if any, as against the evidence incriminating [the defendant]—advances the Federal Rules of Evidence's goal of 'ascertaining the truth and securing a just determination.'"  *Id.* (quoting Fed. R. Evid. 102); *see also Prince*, 2012 WL 13076352, at *2 (admission of letters under residual exception "will have an impact, one way or the other, on the Court's final factual determinations and will, therefore, serve the interests of justice"); *Am. Tel.*, 516 F. Supp. at 1240 (admission of third-party documents under residual exception "would contribute to the ultimate goal of the determination of the truth through the adversary process, and would thereby serve the interests of justice").  As in *Slatten*, allowing the jury to weigh Mr. Haddouti's declaration against any evidence of the Defendant's involvement with the chemicals would advance the Federal Rules of Evidence's goal of ascertaining the truth and securing a just determination.  Thus, admitting the declaration would best serve the purposes of the Federal Rules of Evidence and the interests of justice.

### E.  There was Sufficient Notice

A statement is admissible under the residual exception "only if, before the trial or hearing, the proponent gives an adverse party reasonable notice of the intent to offer the statement and its particulars, including the declarant's name and address, so that the party has a fair opportunity to meet it."  Fed. R. Evid. 807(b).  Notice three days before trial is sufficient.  *See United States v. Cooper*, 91 F. Supp. 2d 79, 81 (D.D.C. 2000). The Government has had ample notice of Mr. Haddouti's statements and the declaration was identified on May 17, 2023.

Mr. Haddouti's declaration is sufficiently supported by circumstantial guarantees of trustworthiness, is offered as evidence of a material fact, and is more probative on the point for which it is offered than any other reasonably obtainable evidence.  Its admission would serve the

purposes of the Federal Rules of Evidence and the interests of justice.  Accordingly, it is subject to the residual exception to hearsay and should be admitted.

## **CONCLUSION**

For the foregoing reasons, the Court should grant Mr. Trabelsi's Motion and allow Mr. Haddouti's declaration to be admitted into evidence.


Dated: June 20, 2023                                 Respectfully Submitted,

                                                     Marc Eisenstein
                                                     Coburn & Greenbaum, PLLC
                                                     1710 Rhode Island Avenue, N.W.
                                                     Second Floor
                                                     Washington, DC 20036
                                                     (202) 470-2695
                                                     marc@coburngreenbaum.com

                                                     *Counsel for Nizar Trabelsi*

<u>**CERTIFICATE OF SERVICE**</u>

**I HEREBY CERTIFY** that on June 20, 2023, a copy of the foregoing was filed with the

Clerk of the Court and served on all counsel of record via e-mail.


/ s /

Marc Eisenstein