UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | |
| | : | |
| v. | : | **Crim. No.: 06-89 (RDM)** |
| | : | |
| **NIZAR TRABELSI,** | : | |
| | : | |
| **Defendant.** | : | |

**GOVERNMENT OPPOSITION TO DEFENSE'S MOTION IN LIMINE**

The United States of America, by and through its attorney, the United States Attorney for the District of Columbia, respectfully submits this memorandum in opposition to the defendant's motion in limine for permission to testify about the conditions of his confinement and length of his pretrial detention. The government also respectfully moves for permission to late file this memorandum.

**I.   The Probative Value of the Proposed Testimony is Substantially Outweighed by the Risk of Unfair Prejudice.**

The information the defense seeks to elicit is more prejudicial than probative. It is highly unusual for a defendant to testify about his confinement because such information can be prejudicial for both parties. Indeed, the defense has not cited, and the government has not found, a single case in which a defendant was permitted to testify about his confinement to explain his demeanor on the stand. As the government argued on Friday, the defense effort to introduce this information seems intended to stoke unfair prejudice and sympathy for the defendant, resulting in jury nullification. Moreover, the defense's motion fails to identify what information, specifically, the defense seeks to elicit. The defense identifies seven questions but fails to identify the answers that Mr. Trabelsi intends to give, including critically, answers to the questions of how his current confinement impacts his "ability to think" and his "ability to remain calm and interact with others."

(Def. Mot. at 2). Without this information, it is impossible to be assured that the defense will not elicit unfairly prejudicial information.

The information that the defense intends to elicit has only marginal probative value. The defendant could permissibly testify that he is anxious, has trouble thinking, and has trouble remaining calm and interacting with others ***without*** the defendant also testifying about his detention or conditions of confinement. There is little, if any, additional probative value to allowing testimony about his detention and conditions of confinement, especially without expert testimony. The defense has failed to notice an expert witness to testify that the defendant is actually suffering from a condition that makes it difficult for him to think, remain calm, or interact with others. The defense has also failed to notice an expert witness to testify that such a condition is ***caused by*** the defendant's detention and conditions of confinement. The information the defense seeks to elicit about the defendant's detention and confinement is relevant only insofar as it causes some aspect of his demeanor on the stand, and the defendant has failed to provide the expert opinion necessary to make that link.

The probative value of such testimony is further diminished by the fact that, indeed, the defendant does not have any demonstrable difficulty remaining calm, thinking, or interacting with others. The defendant has been calm throughout this long trial. He even served for months as his own counsel, including cross-examining a witness for over six hours. While his questions were not polished or compliant with the rules of evidence, the defendant nonetheless demonstrated his ability to focus, think, and interact with others while he cross-examined Ms. Amal. There is little probative value to allowing testimony to address a problem that does not exist. The Court can take notice of Mr. Trabelsi's demeanor throughout these proceedings and acknowledge the absence of

any demonstrable problem that would warrant the highly unusual and highly prejudicial testimony the defense seeks to introduce.

Moreover, the testimony would be highly prejudicial.  A juror could be easily and unfairly influenced by testimony about solitary confinement, restrictions on communications, "severe psychological damage," and conditions that allegedly "mirror the effects of other forms of torture." (Def. Mot. at 1).  The defense effort to introduce testimony about Mr. Trabelsi's prison conditions appears to be a blatant effort to trigger jury nullification.

Because the probative value of the information the defense seeks to elicit is substantially outweighed by the risk of unfair prejudice, the Court should preclude the testimony.

## II.   There is a Less Prejudicial Alternative.

There is a less prejudicial alternative than allowing the defendant to testify about his detention and conditions of confinement.  The defendant could testify, without mentioning his detention and conditions of confinement, that he feels he has trouble thinking, remaining calm, and interacting with others.  In closing, the defense could argue that any perceived oddity in the defendant's demeanor on the stand is attributable to these feelings.

## III.   The Proposed Testimony Would Warrant a Response from the Government.

If the defendant testifies that he is subject to repressive conditions of confinement, the government should be given an opportunity to mitigate the risk of unfair prejudice by explaining why the restrictive conditions are necessary.  This includes testimony from prison officials that, on several separate occasions, Mr. Trabelsi threatened to cut them, kill them, and take them hostage.  Otherwise, the jury would be left with the false impression that the government as subjecting Mr. Trabelsi to unwarranted conditions of confinement.  The government should be given an opportunity to explain why those conditions are necessary.  \

Allowing the defendant to testify as he pleases could lead to a trial-within-a-trial. The better course is to preclude the defendant from engaging in unnecessary and prejudicial testimony, which would alleviate the need for the government to correct any misimpression that the conditions of confinement are unwarranted.

### IV. The Court Has Limited Control Over Mr. Trabelsi's Testimony and The Court Should Not Put Its Imprimatur on the Proposed Information Sought by the Defense.

Theoretically, the Court could permit the defendant to testify about some, but not all, of the information he seeks about his detention and conditions of confinement. Yet, even assuming arguendo that the Court could fashion appropriate limits, there is no guarantee that Mr. Trabelsi would abide by nuanced limits during his testimony. If the government is right that the defense is seeking to introduce unfairly prejudicial information, then it is likely that the defendant will try to push the bounds of any limits imposed by the Court. Alternatively, if the defense is right that the defendant has trouble controlling himself, then there is little guarantee that he can control himself enough to abide by any nuanced limits the Court may impose on the scope of his testimony. Either way, the risk of the defendant abiding by a nuanced instruction is elevated beyond normal circumstances.

Rather than placing some nuanced limits on the defendant's testimony, the Court could preclude the defendant from testifying about such matters but the Court itself could give an instruction from the bench about Mr. Trabelsi's detentions and conditions of confinement. However, any instruction would improperly give such information the imprimatur of the Court's approval. It would place a finger on the scales of the jury's assessment of the evidence. Furthermore, if the defendant were later to offer inappropriate, inadmissible testimony about his conditions of confinement, it would be harder for the jury to credit any curative instruction given

4

by the Court, including any instruction that the testimony should be stricken, because the testimony would be so closely related to the earlier instruction that came from the presiding judge about the existence of those conditions. Instead, the Court should simply preclude the defendant from offering testimony about his detention and conditions of confinement, as such testimony is highly prejudicial and has minimal probative value, if any.

**V.      The Government Moves the Court to Accept the Belated Filing of This Brief.**

The government respectfully moves the Court to accept the belated filing of this brief. Government counsel inadvertently missed the ECF notification on Friday afternoon imposing a deadline for Sunday evening, and counsel did not realize its mistake until early on Tuesday morning.

Respectfully submitted,

MATTHEW M. GRAVES

United States Attorney
D.C. Bar 481052

By:

*/s/ Thomas N. Saunders*
Thomas N. Saunders
N.Y. Bar No. 4876975
Christopher Tortorice
TX Bar Number 24048912
Assistant United States Attorneys
National Security Section
601 D Street, NW, Room 5-120
Washington, D.C.  20530
Office: 202-252-7790
thomas.saunders@usdoj.gov